IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Sean DeCrane,<br><br>             Plaintiff,<br><br>    v.<br><br>Edward J. Eckart, *et al.*,<br><br>             Defendants. | Case No. 1:16-cv-02647<br><br>Judge Christopher A. Boyko<br><br>Magistrate Judge William H. Baughman, Jr. |

**PLAINTIFF SEAN DECRANE'S OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY AND REQUEST FOR EVIDENTIARY HEARING**

## TABLE OF CONTENTS

Table of Authorities.................................................................................................................ii

I.      Issues Presented .......................................................................................................1

II.     Introduction and Summary of Argument.................................................................2

III.    Facts .........................................................................................................................3

        A.      The evidence Defendants seek to suppress shatters their defenses ...............3

        B.      DeCrane's counsel, using summer-law-clerk Brian Bardwell, obtained
                declarations following Rule 4.2 and giving witnesses recommended
                warnings ........................................................................................................4

        C.      Defense counsel treat the contested declarants as non-clients and admit
                Kelly is not their client..................................................................................6

        D.      As early as September 14, 2017, defense counsel began floating amorphous
                objections to Bardwell—but never specified why...........................................6

        E.      In his 45 days with the City, Bardwell did not work on the *DeCrane* matter
                or gain confidential government information regarding it.................................7

IV.     Law and Argument....................................................................................................8

        A.      Defendants bear the burden of proving by clear and convincing evidence that
                disqualification is warranted—which they cannot meet here...........................8

        B.      Chandra Law's contact with current and former City employees was proper
                and authorized under Rule 4.2.......................................................................9

                1.      Rule 4.2 prohibits *ex parte* contact with represented parties. But
                        organization constituents are subject to special rules...........................9

                2.      *Former*-employee interviews are permissible, subject to certain
                        best-practice precautions—which Bardwell indisputably took............9

                3.      Contact is proper with employees who do not supervise, direct, or
                        regularly consult with the organization's lawyer about the matter;
                        who lack authority to obligate the organization regarding the matter;
                        and whose acts or omissions in connection with the matter may not be
                        imputed to the organization for liability. Declarants did not fall into
                        these categories.......................................................................................10

                4.      The City relies on obsolete standards and fails to cite governing
                        Rule 4.2 law............................................................................................11

C.  The City fails to cite the law or allege relevant facts for disqualifying DeCrane's lawyers based on Bardwell's prior City internship ....................................13

  1.  The City ignores the three-part test used to identify conflicts when nonattorneys like Bardwell transition from the public to private sector......................................................................................................................13

      a.  No "substantial relationship" exists between *DeCrane* and Bardwell's City internship .......................................................................14

      b.  The City presents no evidence that Bardwell, in his former City employment, was exposed to confidential government information regarding *DeCrane* ..............................................................14

  2.  Rule 10.11 provides that government lawyers who move to the private sector are only disqualified from matters in which the lawyer participated "personally and substantially." The City makes no such allegation here.........................................................................................................15

D.  If breaches had occurred here—which they have not—the Court should fashion a remedy more appropriate than disqualification .............................................17

E.  Rule 3.3 requires defense counsel to withdraw Kelly's and Roberson's false declarations.............................................................................................................................18

F.  Defendants' motion is untimely because they were aware of interviews since May 2017, and Bardwell's involvement since September—or least November 2017; never specified the basis for objections; and waited until February 2018—after discovery closed—to seek the drastic remedy of disqualification ......................................................................................................................18

G.  The Court may not grant a disqualification motion without holding a hearing, and if a hearing is set, DeCrane will request discovery to prepare ................................19

V.  Conclusion..............................................................................................................................................20

Certificate of service and compliance ......................................................................................................20

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Anderson v. Hale*, 202 F.R.D. 548 (N.D. Ill. 2001) ........................................................................................5

*Barberton Rescue Mission v. Hawthorn*,
No. 21220, 2003 WL 1039706 (Ohio Ct. App. Mar. 12, 2003) ................................................................18

*Centimark Corp.*, 85 Ohio App. 3d .................................................................................................17

*City of Cleveland v. Cleveland Elec. Illuminating Co.*,
440 F. Supp. 193, 209 (N.D. Ohio 1976) ......................................................................................17

*City of Maple Heights v. Redi Car Wash*, 51 Ohio App. 3d 60 (1988) .............................................12

*Dickens v. J & E Custom Homes, Inc.*, 187 Ohio App. 3d 627 (2010) ....................................17, 19

*Disciplinary Counsel v. Lapine*, 128 Ohio St. 3d 87 (2010) ..............................................................8

*Estate of Grilli v. Smith*, No. 07-CA-51, 2008 WL 2571413 (Ohio Ct. App. June 23, 2008) .....................8

*Fordeley v. Fordeley*, No. 2014-T-0079, 2015 WL 3964878 (Ohio Ct. App. June 30, 2015) ....................8

*Gisslen v. Gisslen*, No. 24414, 2011 WL 2520208 (Ohio Ct. App. June 24, 2011) ...................................17

*Gordon v. Dadante*, No. 1:05-CV-2726, 2009 WL 10689678 (N.D. Ohio June 30, 2009) ......................17

*Green v. Toledo Hosp.*, 94 Ohio St. 3d 480 (2002) .............................................................8, 13, 19

*H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.*, 108 F.R.D. 686 (S.D.N.Y. 1985) .........................5

*Haigh v. Matsushita Elec. Corp. of Am.*, 676 F. Supp. 1332 (E.D. Va. 1987) ...................................5

*Hollis v. Hollis*, 124 Ohio App. 3d 481 (1997) ..............................................................................17

*In re Antitrust Grand Jury*, 805 F.2d 155 (6th Cir. 1986) ..............................................................19

*In re Grand Jury Subpoena to Johnson, Grusin, Key & May*, 947 F.2d 945 (6th Cir. 1991) .........................15

*In re Valley-Vulcan Mold Co.*, 237 B.R. 322 (B.A.P. 6th Cir. 1999) ..............................................18

*Insituform of N. Am., Inc. v. Midwest Pipeliners, Inc.*, 139 F.R.D. 622 (S.D. Ohio 1991) ..................12, 17

*Johnson v. Ohio Dep't of Youth Servs.*, 231 F. Supp. 2d 690 (N.D. Ohio 2002) .............................12, 17

*Kitchen v. Aristech Chem.*, 769 F. Supp. 254 (S.D. Ohio 1991) ......................................................12

*Meat Price Investigators Ass'n v. Spencer Foods, Inc.*, 572 F.2d 163 (8th Cir. 1978) .........................12

*Milone v. English*, 306 F.2d 814 (D.C. Cir. 1962) ..........................................................................18

*Murray v. Metro. Life Ins. Co.*, 583 F.3d 173 (2d Cir. 2009) ..............................................................8

*Pearce v. E.F. Hutton Group, Inc.*, 1987 U.S. Dist. LEXIS 13236 (D.D.C. 1987) .............................12

*Phillips v. Haidet*, 119 Ohio App. 3d 322 (1997) ............................................................................17

*Popa Land Co. v. Fragnoli,*
No. 08CA0062-M, 2009 WL 735969 (Ohio Ct. App. Mar. 23, 2009) ...................................................... 19

*Richards v. Jain,* 168 F. Supp. 2d 1195, 1204 (W.D. Wash. 2001) .............................................................. 13

*Rosenblum v. Robbins,* No. 15171, 1992 WL 15960 (Ohio Ct. App. Jan. 29, 1992) .................................... 15

*Shoney's, Inc. v. Lewis,* 75 S.W.2d 514 (Ky. 1994) ...................................................................................... 11

*Spivey v. Bender,* 77 Ohio App. 3d 17 (1991) .............................................................................................. 12

*SST Castings, Inc. v. Amana Appliances, Inc.,* 250 F. Supp. 2d 863 (S.D. Ohio 2002) ................................ 17

*Stanley v. Bobeck,* No. 92630, 2009 WL 3490668 (Ohio Ct. App. Oct. 29, 2009) ...................................... 19

*State v. Byrd,* No. L-12-1276, 2013 WL 5210674 (Ohio Ct. App. Sept. 13, 2013) ............................ 12, 13

*State v. Richardson,* 17 N.E.3d 644 (Ohio Ct. App. 2014) ............................................................................. 8

*Stewart v. Bee-Dee Neon & Signs, Inc.,* 751 So. 2d 196, 208 (Fla. Dist. Ct. App. 2000) ............................... 13

*United States v. Bartone,* 400 F.2d 459, 461 (6th Cir. 1968) ......................................................................... 15

*United States v. Clem,* 210 F.3d 373 (6th Cir. 2000) ..................................................................................... 15

*United States v. Suarez,* No. 5:13 CR 420, 2014 WL 1898582 (N.D. Ohio May 8, 2014) ......................... 15

*WFG Nat'l Title Ins. Co. v. Meehan,*
No. 105677, 2018 WL 777122 (Ohio Ct. App. Feb. 8, 2018) ...................................................................... 8

*Wilson v. Lamb,* 125 F.R.D. 142 (E.D. Ky. 1989) ........................................................................................ 5

## Rules

Ohio Prof. Cond. R. 1.6 ................................................................................................................................ 16

Ohio Prof. Cond. R. 1.7 ................................................................................................................................ 11

Ohio Prof. Cond. R. 1.9 .................................................................................................................................. 1

Ohio Prof. Cond. R. 1.10 .............................................................................................................................. 17

Ohio Prof. Cond. R. 1.11 ........................................................................................................... 1, 14, 16, 19

Ohio Prof. Cond. R. 3.3 ................................................................................................................................ 18

Ohio Prof. Cond. R. 4.2 ........................................................................................................................ *passim*

**Other**

Chief Justice Herbert P. Wilkins, *The New Massachusetts Rules of Professional Conduct: An Overview*, 82 Mass. L. Rev. 261, 264 (1997) ........................................................................................................11

Ernest F. Lidge III, *The Ethics of Communicating with an Organization's Employees: An Analysis of the Unworkable "Hybrid" or "Multifactor" Managing-Speaking Agent, ABA, and Niesig Tests and A Proposal for A "Supervisor" Standard*, 45 Ark. L. Rev. 801, 882 (1993) ...........................................................11

Garrett Hodes, *Ex Parte Contacts with Organizational Employees in Missouri*, 54 J. Mo. B. 83, 87 (1998) ...............................................................................................................11

*Lawyer Examining a Client as an Adverse Witness, or Conducting Third Party Discovery of the Client*, ABA Formal Op. 92-367 ........................................................................................................................11

Ohio Adv. Op. 2013-4, The Supreme Court of Ohio Board of Commissioners on Grievances and Discipline, 2013 WL 5826956 .........................................................................................................11

Ohio Adv. Op. 92-7, the Supreme Court of Ohio Board of Commissioners on Grievances and Discipline, 1992 WL 739409 .............................................................................................................12

Ohio Bd. of Prof. Cond. Adv. Op. 2016-5 .................................................................................2, 5, 9, 10

Report on the Model Rules of Professional Conduct, Am. Bar Ass'n Ethics 2000 Commission .........................................................................................11

Plaintiff Sean DeCrane respectfully opposes Defendants' motion. Defendants are using the wrong legal standards and applying incorrect facts. There is no basis, and no presented evidence, supporting Defendants' claim for DeCrane's counsel's disqualification and suppression of his evidence. The Court will see here that DeCrane's counsel practiced sound ethical judgment in representing him. The Court should deny the motion outright on the papers, and if it doesn't, DeCrane respectfully requests a hearing.

## I.   ISSUES PRESENTED

**A. Contact with current employees.** Under Ohio Prof. Cond. R. 4.2, a party's lawyer cannot contact government employees who are supervising, directing, or regularly consulting with the lawyer about the particular matter, can obligate the government regarding the matter, or whose actions or omissions regarding the matter may be imputed to the government for liability. Here, City union employees who provided declarations fall in none of these categories. Even defense counsel's behavior demonstrates their own belief at the time that these employees were not supervising, directing, or consulting in the *DeCrane* matter. Should the interviews be struck? Should DeCrane's attorneys be disqualified for these interviews?

**B. Contact with former employees.** Under Rule 4.2 cmt. 7, "[c]onsent of the organization's lawyer is not required for communication with a former constituent." Here, DeCrane's counsel interviewed former City employee Patrick Kelly. The City admits it did not represent Kelly. Thus, it did not have blanket representation requiring DeCrane's attorneys to seek the City's consent. Now the City disputes the propriety of this and asks that the interview be struck. Audio recordings prove that DeCrane's firm gave Kelly required disclaimers. Should the interview be struck? Should DeCrane's attorneys be disqualified for this interview?

**C. Nonattorneys.** Parties seeking disqualification over nonattorney-employees' involvement may not rely on any initial presumption, but instead must present evidence that the former employee was exposed to confidential information substantially related to the current matter. Bardwell had no contact with or knowledge of any related matter. Should the Court deprive DeCrane of his entire law firm and evidence proving his case?

**D. Government service.** Under Prof. Cond. Rule 1.11(a), a lawyer who has formerly served as a government employee may not represent a client regarding a matter in which the lawyer participated personally and substantially as a public employee. Rule 1.9(c) says a lawyer who has formerly represented a client in a matter must not then use information relating to the representation to the former client's disadvantage,s or reveal information regarding the representation. Brian Bardwell never "participated personally or substantially" in the *DeCrane* matter while he volunteered as a law clerk for the City, and the City never alleges otherwise. Assuming Rule 1.11 binds a nonlawyer like Bardwell, should the Court deprive DeCrane of his entire law firm and evidence proving his case?

**E. Timeliness.** To prevent unfair prejudice and gamesmanship, parties must move promptly to disqualify after learning of an issue. Despite knowing since May 2017 of DeCrane's intention

to interview witnesses, since September 13, 2017 of the declarations themselves, and since no later than November 21, 2017 of Bardwell's involvement, Defendants waited until days before dispositive motions were due to seek disqualification, and did so without informing DeCrane of any claimed issues regarding improper witness contact. Should the Court deprive DeCrane of his chosen counsel and his evidence?

## II.  INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants seek to disqualify DeCrane's counsel and exclude witness declarations to avoid contending with evidence precluding summary judgment. This motion—coming months after Defendants knew of each of the supposed "bases" on which it relies—is wrong on the facts and wrong on the law. The city's factual premises are wrong:

- Work-product audio recordings prove that Bardwell told interviewees—including former-Chief Patrick Kelly—that the firm represented DeCrane in his well-known lawsuit against the City, exhorted them not to share any privileged communications, and said he could not offer legal advice.

- Bardwell obtained no confidential government information regarding the *DeCrane* matter during his 45-day city internship. Neither this matter nor DeCrane's public-records mandamus action had been filed before Bardwell left the City. Chandra Law attorneys have all but waterboarded Bardwell, but he has no confidential government information. And City public-records administrator Kim Roberson never claims Bardwell participated personally and substantially on any *DeCrane* matter.

- On about May 31, 2017, City attorney William Menzalora, through fire-union attorney Thomas Hanculak, authorized Chandra Law to interview current union employees. And City attorneys treated witnesses as third parties by subpoenaing them, and seeing union counsel represent them in depositions.

- The information Roberson claims is "confidential" is a matter of public record and knowledge.

And the City's legal premises are wrong, too:

- Rule 4.2 cmt. 7 provides in relevant part, "In the case of a represented organization, this rule prohibits communications with a constituent of the organization who supervises, directs, or regularly consults with the organization's lawyer *concerning the matter* or has authority to obligate the organization *with respect to the matter* or whose act or omission *in connection with the matter* may be imputed to the organization for purposes of civil or criminal liability. Consent of the organization's lawyer is *not required* for communications with a *former* constituent." (Emphases added.)

- Ohio Bd. of Prof. Cond. Op. 2016-5 authorizes interviews of former and current employees, prohibits a corporate lawyer's blanket assertion of representation as "fraught with potential and inherent conflict of interest for the corporate lawyer,"

> allows an adverse lawyer to "communicate without an organization's lawyer's consent with certain current and any former employees of the corporation." And contacting former employees "does not violate Prof. Cond. R. 4.2, even if the employee's prior acts and omissions may be imputed to the organization."

- The tests for disqualifying a firm for a non-attorney's involvement and disqualifying former government attorneys—which Defendants fail to disclose—do not trigger disqualification here.

## III. FACTS

Discovery closed on December 15, 2017. On the eve of the original dispositive-motion deadline, Defendants launched a salvo to avoid evidence precluding summary judgment.

### A. The evidence Defendants seek to suppress shatters their defenses.

On September 13, 2017, DeCrane produced six signed declarations of various current and former firefighters proving DeCrane's First Amendment–retaliation case. They prove the following:

- DeCrane was an eminently qualified and deeply respected fire-division leader.[1]

- Defendant Eckart began to have a problem with DeCrane shortly after then-Chief Daryl McGinnis's lack of qualifications was leaked to the media.[2]

- The City's administration did not want to interview DeCrane for promotion to chief after McGinnis's resignation.[3]

- The City's leadership—including the mayor—was angry about the McGinnis leak.[4]

- The City premised its campaign against DeCrane on a complaint from a disruptive firefighter known for baseless allegations and substance abuse.[5]

- The City claimed that DeCrane had maintained inadequate records based on its own investigators' inability to properly operate a copying machine.[6]

---

[1] Decl. of Dennis Corrigan, ¶¶ 4–7; Decl. of Patrick Corrigan ¶¶ 4–5; Decl. of Mike Darnell ¶¶ 4–7; First Decl. of Patrick Kelly ¶¶ 4–6; Decl. of Frank Szabo ¶¶ 4–7; and Decl. of Kevin McCafferty ¶ 5 (all attached collectively and organized alphabetically as **Ex. 1**).

[2] Szabo Decl. ¶ 7.

[3] First Kelly Decl. ¶ 9.

[4] *Id.* at ¶ 11; Szabo Decl. ¶ 12; McCafferty Decl. ¶¶ 9–10.

[5] D. Corrigan Decl. ¶ 8; P. Corrigan Decl. ¶ 9c; Darnell Decl. ¶ 10; and McCafferty Decl. ¶ 6.

[6] P. Corrigan Decl. ¶ 12a.

- Eckart controlled the fire division; the City's safety director rejected pleas to rein him in.[7]

- Chief Kelly admitted initiating disciplinary action against DeCrane to satisfy Eckart.[8]

- Eckart took an unprecedented personal interest in the charges against DeCrane.[9]

- Eckart's "cost-cutting" plan to outsource DeCrane's job to Tri-C was only a pretext. Eckart's numbers made no sense[10]—and he would only abandon outsourcing plans if Kelly removed DeCrane from his position as head of the Fire Training Academy.[11]

- The retaliatory campaign's emotional impact was severe enough to be apparent to DeCrane's co-workers and to force him out of a job for which he was exceptionally qualified, universally beloved, and a few years away from retiring with benefits virtually no one sacrifices.[12]

- No one had ever had a "Last Day" celebration shut down before DeCrane's.[13]

- Firefighters were afraid to report problems and know they'd face retaliation from Eckart for publicly disclosing facts embarrassing to the administration.[14]

**B.  DeCrane's counsel, using summer-law-clerk Brian Bardwell, obtained declarations following Rule 4.2 and giving witnesses recommended warnings.**

In May 2017, DeCrane's counsel began planning witness interviews. Thomas Hanculak, International Association of Fire Fighters Local 93's lawyer, asked Chandra Law to hold off on interviews until he had confirmed with the City that there would be no issues. He then confirmed that Chief Assistant Law Director William Menzalora, who advises the public-safety department, approved the employee interviews.[15]

---

[7] First Kelly Decl. ¶ 12.

[8] P. Corrigan Decl. ¶ 12b.

[9] Szabo Decl. ¶ 9.

[10] *Id.* at ¶ 11.

[11] First Kelly Decl. ¶ 18.

[12] P. Corrigan Decl. ¶ 15; Darnell Decl. ¶ 11; and Szabo Decl. ¶ 10.

[13] First Kelly Decl. ¶ 20; Szabo Decl. ¶ 13; and McCafferty Decl. ¶ 7.

[14] D. Corrigan Decl. ¶ 10; McCafferty Decl. ¶ 8; and Szabo Decl. ¶ 14.

[15] Decl. of Thomas Hanculak (Mar. 1, 2018) ¶ 6 (attached as **Ex. 4**); *id.* at **Ex. 4A** (email from Hanculak to Bardwell dated June 1, 2017).

Chandra Law partner Ashlie Case Sletvold directed Bardwell on whom to interview, whom not to interview, and how to conduct interviews consistent with Rule 4.2 cmt. 7 and Bd. of Prof. Cond. Op. 2016-5.[16] Based on the Rule and Comment, Sletvold made a reasoned, good-faith, ethical judgment that no one at DeCrane's level or below in the organizational chart—all union members—could obligate the City in this matter, and were fair game.[17]

Following his training and Rule 4.2 cmt. 7, Bardwell told interview subjects that Chandra Law represents DeCrane in his suit against the City, that they should not disclose the substance of conversations had with City lawyers, and that, as a law clerk, he couldn't provide legal advice.[18] Bardwell sometimes recorded his interviews.[19] Specifically, as in the Kelly recording, Bardwell began: "[A]ny discussions you've had with like city attorneys that would be like privileged or anything, don't tell me anything about what you guys were discussing. If there's like facts or stuff that you discussed in there, like the facts you can still tell me about, but I don't want, I'd like, you

---

[16] Decl. of Ashlie Case Sletvold (Feb. 27, 2018) ¶¶ 6–8. (attached as **Ex. 3**)

[17] *Id.* at ¶ 7.

[18] Decl. of Brian Bardwell (Mar. 1, 2018) ¶ 23 (attached as **Ex. 2**).

[19] *Id.* at ¶ 23. Audio recordings excerpts from the Kelly, D. Corrigan, and Szabo interviews—witnesses the City complains about—are **Exs. 2G, 2I, 2K** to the Bardwell Decl., submitted on a CD with the Notice of Manual Filing filed concurrently, with transcripts available at Bardwell Decl. **Exs. 2H, 2J, 2L**. Excerpts of Bardwell's contemporaneous notes of his Patrick Corrigan interview are attached to Bardwell Decl. as **Ex. 2M**. DeCrane does not, at this time, waive the work-product protection attaching to the remainder of these and other recordings and notes his counsel created in anticipation of litigation. *See, e.g., Anderson v. Hale*, 202 F.R.D. 548, 554 (N.D. Ill. 2001) (tape recordings eligible for work-product protection because they are "tangible things," if they are prepared for a party or the party's counsel and "the circumstances surrounding the tapes reveal that [the party's] counsel prepared the tapes in anticipation of litigation"); *Haigh v. Matsushita Elec. Corp. of America*, 676 F. Supp. 1332, 1357–59 (E.D. Va. 1987) (same); *Wilson v. Lamb*, 125 F.R.D. 142, 143 (E.D. Ky. 1989) (same); *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Sys., Inc.*, 108 F.R.D. 686, 690 (S.D.N.Y. 1985) (same). The recordings reveal Chandra Law's mental impressions regarding the questions asked (what is important) and comments made and follow-ups in reaction. And as Bardwell conducted the interviews, he embedded audible notations in the files to annotate the recordings with his mental impressions so he could quickly locate important areas for future use. Bardwell Decl. at ¶ 27; Sletvold Decl. at ¶ 24. If the Court wishes, DeCrane's counsel will—without waiving work-product protection—make the full audio recordings available for *in camera* review.

The City's speculation that Chandra Law "likely" did not give a disclaimer to witness Mike Darnell is unsupported. (Def. Mot. Disq. at 6 n. 3). If a hearing occurs, DeCrane will address it as needed.

shouldn't be telling me, you know, 'I told the attorneys'—." Kelly acknowledged the admonition: "Privileged information, right." Bardwell continued, "Don't tell me, 'I told the city attorneys this,' but you know, the same stories you can give to me if they come up for whatever reason."[20]

### C. Defense counsel treat the contested declarants as non-clients and admit Kelly is not their client.

Consistent with Menzalora's blessing for interviews, the City did not treat its current union employees as clients in this matter. The City subpoenaed two of its own employees for depositions: Battalion Chief Frank Szabo and Captain Patrick Corrigan, DeCrane's subordinate at the Fire Training Academy. Hanculak—not the City's lawyers—represented these witnesses in depositions. Defense counsel also issued subpoenas *duces tecum* to each of the six declarants, undercutting their apparent insistence that defense counsel represents these individuals.[21] And Dileno admits his firm has not represented former chief Patrick Kelly.[22]

### D. As early as September 14, 2017, defense counsel began floating amorphous objections to Bardwell—but never specified why.

After the September 13, 2017 settlement conference, lead Plaintiff's counsel Subodh Chandra invited lead defense counsel Jon Dileno for an informal meeting the next day to persuade him to make a reasonable settlement offer because the declarations precluded summary judgment.[23] In Chandra's office, Dileno not only said settlement wouldn't happen, he said that City decisionmakers "especially don't want to settle with *you*," meaning Chandra.[24] Dileno also mentioned Bardwell's participation, and Chandra assured Dileno that the firm had fully vetted Bardwell to

---

[20] Bardwell Decl. ¶ 23a; P. Kelly interview recording at 0:19, Tr. at 1:8 (audio excerpt is **Ex. 2G** and submitted with concurrently filed Notice of Manual Filing; Kelly Tr. attached as **Ex. 2H**).

[21] *See* subpoenas *duces tecum* defense counsel issued to Kelly, P. Corrigan, D. Corrigan, McCafferty, Szabo, and Darnell (Oct. 13, 2017) (attached as Ex. 7).

[22] Decl. of Subodh Chandra (Mar. 2, 2018) ¶ 15 (attached as **Ex. 5**); *id.* at **Ex. 5B** (confirming that defense counsel has not represented Kelly since his retirement in 2015).

[23] Chandra Decl. ¶ 4.

[24] *Id.*

ensure he had obtained no confidential government information while interning at the City and had not worked on the *DeCrane* matter there.[25] Dileno responded, "We're looking into it."[26] Chandra told his partner Sletvold about both statements right after they happened.[27]

Defense counsel never specified their objection to Bardwell. They raised it vaguely again in Eckart's Nov. 21 deposition (mentioning public records), by email on Dec. 4, and again during Patrick Corrigan's Dec. 12 deposition.[28] Then on Feb. 7—nearly two months after the close of discovery—defense counsel demanded that DeCrane's counsel withdraw. Still they refused to provide *evidence* substantiating concerns about Bardwell's brief City internship.

### E. In his 45 days with the City, Bardwell did not work on the *DeCrane* matter or gain confidential government information regarding it.

Bardwell's internship involved at most two days of reviewing backlogged 2013–14 public-records requests—two years before DeCrane's resignation and suit.[29] Records administrator Kim Roberson's claim that Bardwell handled 2015 public records is false.[30] So is her confidentiality claim about knowing the number of requests the law department has, how long it takes to respond to them, and the law department's public-records role. These are all matters of public record[31] and knowledge[32] and—in the case of the City's dilatory practices—widespread dismay.[33]

---

[25] *Id.*

[26] *Id.*

[27] *Id.*; Sletvold Decl. ¶ 10. Based on recent correspondence, Dileno supposedly does not recall his comment about Bardwell in September. But there is no dispute over the next time he raised a vague concern about Bardwell: November 21, 2017 during Eckart's deposition.

[28] Sletvold Decl. ¶ 16.

[29] Bardwell Decl. ¶¶ 9, 11.

[30] *Id.* at ¶ 9.

[31] Bardwell Decl. ¶ 10f (attaching a law-department spreadsheet from 2015 obtained *via public-records request* showing thousands of pending requests); Chandra Decl. at ¶ 12.

[32] Sletvold Decl. ¶¶ 18–22, Chandra Decl. at ¶ 14.

[33] Chandra Decl. at ¶ 19 and its **Ex. 5G** (Heisig, Eric, *Cleveland is target of more public records complaints than any other public entity in Ohio* (Mar. 15, 2017)); Chandra Decl. at ¶ 13–14 and its **Ex. 5A** (Higgs, Robert. *Administrator says info on Cleveland's public records policies isn't for public consumption* (Feb. 28, 2018) (quoting Ohio public-records expert David Marburger calling Roberson's assertions "laughable")).

And the City alleges no use by DeCrane, his counsel, or Bardwell of confidential information.

## IV.  LAW AND ARGUMENT

Defendants' brief flits between false, misleading, and incomplete statements of law. After establishing Defendants' heavy burden, this response addresses the false allegations of improper contact, and then Bardwell's role.

### A.  Defendants bear the burden of proving by clear and convincing evidence that disqualification is warranted—which they cannot meet here.

"In cases involving nonattorney employees, the party moving for disqualification may not rely on any initial presumption."[34] Rather, the moving party must submit affirmative evidence of "a substantial relationship between the matter at issue and the … former firm's representation,"[35] and of the former employee's exposure to "confidential information in his or her former employment relating to the matter at issue."[36] If the moving party provides credible evidence of both, the former employee avoids disqualification by presenting evidence of "no contact with or knowledge of the related matter" or that the new firm's screening process otherwise protected against a violation of disciplinary rules.[37] Disciplinary-rule violations must be proven by clear and convincing evidence.[38]

---

[34] *Green v. Toledo Hosp.*, 94 Ohio St. 3d 480, 484 (2002). *See also WFG Nat'l Title Ins. Co. v. Meehan*, No. 105677, 2018 WL 777122 (Ohio Ct. App. Feb. 8, 2018), ¶ 31 (affirming denial of motion where moving party "has offered little more than unsupported allegations" of a conflict).

[35] *Green*, 94 Ohio St. 3d at 484; *State v. Richardson*, 17 N.E.3d 644, 653 (Ohio Ct. App. 2014), ¶ 33 ("moving party must demonstrate that there is a substantial relationship between the matter at issue and the matter of the prior representation"); *Estate of Grilli v. Smith*, No. 07-CA-51, 2008 WL 2571413 (Ohio Ct. App. June 23, 2008), ¶ 66 ("party moving for disqualification has the burden of affirmatively showing 'the former attorney-client relationship involved matters substantially related to the latter.'").

[36] *Green*, 94 Ohio St. 3d at 484. *See also Fordeley v. Fordeley*, No. 2014-T-0079, 2015 WL 3964878 (Ohio Ct. App. June 30, 2015) ("[T]he movant has the burden of proving the actual confidences.").

[37] *Green*, 94 Ohio St. 3d at 484.

[38] *See, e.g., Disciplinary Counsel v. Lapine*, 128 Ohio St. 3d 87, 89 (2010), ¶ 13. *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178–79 (2d Cir. 2009) ("law firm can be disqualified by imputation only if the movant proves by clear and convincing evidence that [A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result.").

**B. Chandra Law's contact with current and former City employees was proper and authorized under Rule 4.2.**

    **1. Rule 4.2 prohibits *ex parte* contact with represented parties. But organization constituents are subject to special rules.**

Rule 4.2 prohibits a lawyer from "communicat[ing] about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." Contact with current and former constituents of an organization are subject to particular principles.[39]

    **2. *Former*-employee interviews are permissible, subject to certain best-practice precautions—which Bardwell indisputably took.**

Defendants fail to disclose Rule 4.2 cmt. 7's pronouncement: "Consent of the organization's lawyer is not required for communication with a former constituent." And a "lawyer's communication with unrepresented former employees does not violate Prof. Cond. R. 4.2, even if the employee's prior acts and omissions may be imputed to the organization."[40] DeCrane's counsel were free to contact *former*-Chief Kelly. Yet Defendants insist that DeCrane's counsel yield their ethical obligation to diligently investigate the case to defense counsel's unilateral prohibitions. Dileno now admits that his firm has not represented Kelly since Kelly left the City in 2015,[41] leading one to question what this kerfuffle about contact with a "represented party" is all about.

The City asserts that Bardwell "spoke with the City's former fire chief without instructing him to not disclose privileged communications or apprising him that Plaintiff made numerous allegations against him."[42] As the recording proves, the first assertion is a lie. And when Bardwell interviewed Kelly, the suit had been pending for over six months with the allegations a matter of

---

[39] *See generally* Ohio Bd. of Prof. Cond. Adv. Op. 2016-5.

[40] *Id.*

[41] Chandra Decl. ¶ 15 (attaching as **Ex. 5B** letter from Dileno to Chandra dated Feb. 22, 2018).

[42] Def. Mot. Disq. at 1–2.

public record. Kelly acknowledged having seen the complaint on Cleveland.com.[43] Bardwell disclosed he was a "a second-year [law] student" working for the firm representing DeCrane, and "obviously anything here is not legal advice."[44] Kelly's claims, at defense counsel's instigation, that he was bewitched by a law clerk's "advisement" doesn't survive the audio recording.

3. **Contact is proper with employees who do not supervise, direct, or regularly consult with the organization's lawyer about the matter; who lack authority to obligate the organization regarding the matter; and whose acts or omissions in connection with the matter may not be imputed to the organization for liability. Declarants did not fall into these categories.**

Rule 4.2 cmt. 7 also provides, in relevant part:

> In the case of a represented organization, this rule prohibits communications with a constituent of the organization who supervises, directs, or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability… In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization.

Although the City alleges that "Captains and Battalion Chiefs … are members of City management whose actions regularly bind the City" (Mot. at 1), such employees are members of Local 93, the union representing the rank-and-file fire-division members.[45] While Defendants protest that DeCrane's counsel did not comply with their insistence that all City employees be contacted through defense counsel, Bd. of Prof. Cond. Op. 2016-5 rejects claims of blanket representation. An opponent's instructions about what fact witnesses to contact is not definitive.

The City's position that it represents Szabo and Corrigan is curious. Why would the City subpoena its own clients for documents and testimony and depose them?[46] Lawyers cannot depose their own clients. It's because the City knew that the union's attorneys—and not the City's—

---

[43] Bardwell Decl. ¶¶ 23a; *id.* at **Ex. 2H** 2:4–7 (Tr. of Kelly recording excerpt); **Ex. 2G** (Kelly audio recording) submitted with concurrently filed Notice of Manual Filing.

[44] *Id.* at 1:18–23.

[45] Hanculak Decl. at ¶ 9; Decl. of Sean DeCrane. at ¶ 2 (attached as **Ex. 6**).

[46] Hanculak Decl. at ¶ 8; *see also* suboenas duces tecum and deposition subpoenas (attached as **Exs. 7–8**).

represented these witnesses as shown in its issued deposition subpoenas to them "c/o Thomas Hanculak." Hanculak represented them in the depositions.[47] The City now asserts that Dileno subpoenaed documents and testimony from his own clients,[48] creating his own conflict of interest.[49]

### 4. The City relies on obsolete standards and fails to cite governing Rule 4.2 law.

The City's analysis of contact with organizations' constituents relies almost entirely on standards discarded over a decade ago. *Shoney's, Inc. v. Lewis*,[50] touted by Defendants, hinges on since-*deleted* language from Rule 4.2, cmt. 2 prohibiting contact "with persons having a managerial responsibility on behalf of the organization." In 2002, The American Bar Association removed that language from the comment as "vague and overly broad."[51] The ABA concluded these inquiries should instead focus "on the constituent's authority in the matter at issue and relationship with the organization's lawyer."[52] To that end, the ABA adopted the language in the current comments to Rule 4.2—*the same language found in Ohio's rules,* and the same language that governed Bardwell's

---

[47] Hanculak Decl. at ¶ 8; deposition subpoenas to Szabo and P. Corrigan (attached as **Ex. 8**). The City violated Fed. R. Civ. P. 45(b) by failing to file the returns of service on these subpoenas.

[48] Def. Mot. Disq. at 9.

[49] The Supreme Court of Ohio Board of Commissioners on Grievances and Discipline, 2013 WL 5826956, at *3 ("[A] lawyer representing a client in a matter in which another current client is an adverse witness likely faces a conflict of interest under Prof. Cond. R. 1.7."); ABA Formal Op. 92-367 ("[T]he lawyer may well be torn between a 'soft,' or deferential, cross-examination, which compromises the representation of the litigation client, and a vigorous one, which breaches the duty of loyalty to the client-witness.").

[50] 875 S.W.2d 514 (Ky. 1994).

[51] *See, e.g.,* Garrett Hodes, *Ex Parte Contacts with Organizational Employees in Missouri*, 54 J. Mo. B. 83, 87 (1998) ("[I]t may be difficult for the plaintiff's attorney to determine whether the employee is 'management.' For example, middle managers in a large corporation may or may not qualify, depending on the number and types of employees they manage, their discretion outside of established rules and guidelines, and their ability to exercise their own individual judgment."); Chief Justice Herbert P. Wilkins, *The New Massachusetts Rules of Professional Conduct: An Overview*, 82 Mass. L. Rev. 261, 264 (1997) (The Rule "seems to reach too far" and has become "an understandably controversial topic"); Ernest F. Lidge III, *The Ethics of Communicating with an Organization's Employees: An Analysis of the Unworkable "Hybrid" or "Multifactor" Managing-Speaking Agent, ABA, and Niesig Tests and A Proposal for A "Supervisor" Standard*, 45 Ark. L. Rev. 801, 882 (1993) (managerial responsibility "can mean whatever one wants it to mean").

[52] Report on the Model Rules of Professional Conduct, Am. Bar Ass'n Ethics 2000 Commission, avail. at https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/e2k_migrated/1 0_85rem.authcheckdam.pdf [https://perma.cc/2RGX-A64M] (last accessed Mar. 1, 2018).

interviews with fire-division middle managers. That language focuses on constituents' authority *in the matter*, their relationship with the organization's lawyer *in the matter*, and their acts or omissions being attributable to the organization *in the matter*. Corrigan and Szabo had none of these things.

As with *Shoney's*, the bulk of the City's other cases[53] rely on archaic standards under the superseded Code of Professional Responsibility, which imposed much more stringent limits on contact with organizational employees.

But even under the old Code, Ohio recognized that First Amendment interests require that, when a government is a party, limits on *ex parte* contact be substantially relaxed. Because broad limitations on contact with government employees would "run counter to government obligations to promote public justice, to supply information to the public, and to be responsive to the public views on how government should operate," Ohio cabins its limitations on contact with persons "represented by a lawyer" to include only "an employee, public official or public body with authority to *bind the government to settle a litigable matter*, or whose act or omission gave rise to the matter."[54] When the defendant is a government, even high-ranking executives are fair game for contact if they lack the formal authority to settle the matter in question.[55]

The City's only case under the current rules is inapposite. In *State v. Byrd*,[56] Byrd's criminal-defense attorney contacted Byrd's co-defendant saying his attorney was a liar and should be replaced

---

[53] *Insituform of N. Am., Inc. v. Midwest Pipeliners, Inc.*, 139 F.R.D. 622 (S.D. Ohio 1991); *Pearce v. E.F. Hutton Group, Inc.*, 1987 U.S. Dist. LEXIS 13236 (D.D.C. 1987); *Spivey v. Bender*, 77 Ohio App. 3d 17 (1991); *Kitchen v. Aristech Chem.*, 769 F. Supp. 254 (S.D. Ohio 1991); *City of Maple Heights v. Redi Car Wash*, 51 Ohio App. 3d 60 (1988); *Meat Price Investigators Ass'n v. Spencer Foods, Inc.*, 572 F.2d 163 (8th Cir. 1978).

[54] The Supreme Court of Ohio Board of Commissioners on Grievances and Discipline, 1992 WL 739409, at *4 (emphasis added).

[55] *Johnson v. Ohio Dep't of Youth Servs.*, 231 F. Supp. 2d 690, 692 (N.D. Ohio 2002) (holding deputy director of state agency was not off-limits in employment case, despite executive status, involvement in management-level meetings, and occasional discussions of confidential matters with agency counsel). *See also* Ohio Board of Prof. Cond. Op. 92-7.

[56] No. L-12-1276, 2013 WL 5210674 (Ohio Ct. App. Sept. 13, 2013)

by someone who wouldn't interfere with Byrd's defense strategy. The appeals court affirmed disqualification.[57] But that case doesn't remotely resemble the facts here.

### C. The City fails to cite the law or allege relevant facts for disqualifying DeCrane's lawyers based on Bardwell's prior City internship.

#### 1. The City ignores the three-part test used to identify conflicts when nonattorneys like Bardwell transition from the public to private sector.

The Ohio Supreme Court in *Green v. Toledo Hospital* offers step-by-step instructions for analyzing disqualification when a nonattorney moves between positions.[58] And the Court is clear: "In cases involving nonattorney employees, the party moving for disqualification may not rely on any initial presumption, but instead must present evidence that the former employee has been exposed to confidential information in the relevant case."[59] (But the City defies this controlling authority, reaching across to Washington for an inapplicable "presumption that attorneys and [nonattorneys] who work together share confidences."[60]) *Green* establishes a three-step test for imputed disqualification over a nonattorney:

(1) Is there a substantial relationship between the matter at issue and the matter of the nonattorney employee's former firm's representation?

(2) Did the moving party present credible evidence that the nonattorney employee was exposed to confidential information in his or her former employment relating to the matter at issue?

(3) If such evidence was presented, did the challenged attorney rebut the resulting presumption of disclosure with evidence either that (a) the employee had no contact with or knowledge of the related matter or (b) the new law firm erected and followed adequate and timely screens to rebut the evidence presented in prong (2) so as to avoid disqualification?[61]

---

[57] *Byrd*, 2013 WL 5210674.

[58] 94 Ohio St. 3d 480, 484 (2002).

[59] *Green*, 94 Ohio St. 3d at 484.

[60] *Richards v. Jain*, 168 F. Supp. 2d 1195, 1204 (W.D. Wash. 2001).

[61] *Green* does not define "nonattorney," but it cites to another decision that sweeps broadly to include "any paralegal, legal assistant, secretary, clerk, law student intern, investigator, or other person who is 'employed or retained by or associated with a lawyer' in the representation of a client." *Stewart v. Bee-Dee Neon & Signs, Inc.*, 751 So. 2d 196, 208 (Fla. Dist. Ct. App. 2000).

### a. No "substantial relationship" exists between *DeCrane* and Bardwell's City internship.

DeCrane's pre-litigation public-records request was one of more than 3,000 the City received in 2015. The City cannot seriously suggest that Bardwell obtained confidential governmental information about each one of them in the roughly 16 hours in which he theoretically had access to the massive database tracking requests. Even if Bardwell had worked directly on DeCrane's 2015 public-records request, he would have done nothing more than determine whether it was open or closed, printing out a tracking sheet to paper, and inserting the sheet into a file folder.[62] The City cannot establish that any of this involved "confidential government information." And it cannot be deemed so substantial that it merits disqualifying DeCrane's entire law firm after discovery has closed, both parties have deposed witnesses, and dispositive motions are nearly due.

### b. The City presents no evidence that Bardwell, in his former City employment, was exposed to confidential government information regarding *DeCrane*.

Roberson's declaration does not allege that Bardwell obtained confidential government information about any *DeCrane* matter. Instead it claims that knowing how many public-records requests the City has, how long it takes to respond, and the law department's role—all matters of public record and knowledge—are confidential. This is insufficient to establish that Bardwell had access to "confidential government information" under Rule 1.11(c). All of that information is available to the public. The City's use of Roberson's falsity is insufficient to disqualify.

Bardwell had no knowledge of the *DeCrane* matter—filed in October 31, 2016, over two months after Bardwell left the City. Defense counsel's vague and repeated complaints spurred the firm's partners to interrogate Bardwell: he has no confidential government information.[63]

---

[62] Bardwell Decl. ¶¶ 3, 9, 11, 16.
[63] Sletvold Decl. ¶¶ 16–17; Bardwell Decl. ¶ 18; Chandra Decl. ¶ 8.

And while attorney–client privilege may extend to nonattorneys, it does not extend to "[m]inisterial or clerical" work that does not bear privilege's hallmarks—providing legal advice and disclosure of confidences.[64] In *United States v. Bartone*, a defendant objected to the government's attempts to introduce his attorneys' testimony. The trial court allowed it, and the Sixth Circuit affirmed, holding that where the testimony introduced was limited to the corporation's "nature and organization," it could find "no error" regarding the testimony's admission.[65] Other courts have rejected attempts to assert privilege to prevent the disclosure of instructions to send correspondence,[66] of transfers of the clients' funds,[67] or of other matters known by attorneys who had no substantive involvement or conversations with the client about the matter at hand.[68]

Bardwell's fleeting public-records assignments—before the City retaliated against him for having exercised his First Amendment right to enforce public-records requests[69]—were ministerial and clerical.[70]

### 2. Rule 10.11 provides that government lawyers who move to the private sector are only disqualified from matters in which the lawyer participated "personally and substantially." The City makes no such allegation here.

Even if, as a nonlawyer, Bardwell were subject to the special rule regarding government *lawyers*, that rule would not help the City. "[T]he rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government. … Thus a former government lawyer is disqualified only from

---

[64] *United States v. Bartone*, 400 F.2d 459, 461 (6th Cir. 1968).

[65] *Id.*

[66] *United States v. Suarez*, No. 5:13 CR 420, 2014 WL 1898582, at *9 (N.D. Ohio May 8, 2014) ("Here, the email is a ministerial instruction to an assistant to send letters to certain individuals. The document does not divulge any legal advice. As such, it is not privileged.").

[67] *United States v. Clem*, 210 F.3d 373 at *3 (6th Cir. 2000); *In re Grand Jury Subpoena to Johnson, Grusin, Key & May*, 947 F.2d 945, at *3 (6th Cir. 1991).

[68] *Rosenblum v. Robbins*, No. 15171, 1992 WL 15960, at *3 (Ohio Ct. App. Jan. 29, 1992).

[69] Bardwell Decl. ¶ 14.

[70] *Id.* at ¶ 11.

particular matters in which the lawyer participated *personally and substantially*."[71] Bardwell did not

participate personally or substantially in any of the *DeCrane* matter at the City. (September 16, 2016

was the beginning—*after* Bardwell's internship ended.) *Roberson never claims Bardwell worked on a*

*DeCrane matter.*[72] And Chandra Law partners screened Bardwell off from the two matters (*Ortiz* and

*Ali*) to which he had passing exposure at the City.[73] And even then, they vetted him repeatedly.[74]

    The City also fails to acknowledge the more restrictive definition of "confidential

information" for government clients. While Rule 1.6's general standard protects all "information

relating to the representation of a client," Rule 1.11 establishes a narrower standard about

"confidential government information" for former government employees: "information that has

been obtained under governmental authority and that, at the time this rule is applied, the

government is prohibited by law from disclosing to the public or has a legal privilege not to disclose

and that is not otherwise available to the public."[75] Bardwell had no such information.

    While the City vaguely insists Bardwell "was privy to confidential information, attorney-

client communications, and attorney work-product,"[76] and "gained knowledge and information

[Chandra Law] cannot ignore or set[ ]aside,"[77] the most specific Defendants get about confidences

are Roberson's allegations about the public-records *process*. That's public knowledge.[78] She never says

Bardwell knew anything about the *DeCrane* matter or anything "substantially related" to it.

---

[71] Ohio Prof. Cond. R. 1.11, cmt. 4 (emphasis added).

[72] Roberson Decl. (attached as Ex. 11 to Def. Mot. Disq.).

[73] Sletvold Decl. ¶ 4; Bardwell Decl. ¶¶ 17–18; Chandra Decl. ¶ 7.

[74] Sletvold Decl. ¶¶ 16–17; Bardwell Decl. ¶ 28; Chandra Decl. ¶ 8.

[75] Ohio Prof. Cond. R. 1.11(c).

[76] Def. Mot. Disq. at 2.

[77] *Id.*

[78] Sletvold Decl. ¶ 20; Bardwell Decl. ¶ 29c; Chandra Decl. ¶ 14 (attaching **Ex. 5A** Higgs article (Feb. 28, 2018).

Even if the "substantial relationship" test established in *non-government* Rule 1.10 applied—which it does not—the City could not meet it and did not bother to cite it.[79]

### D. If breaches had occurred here—which they have not—the Court should fashion a remedy more appropriate than disqualification.

If the Court finds some technical rule violation—which it should not—the Court shouldn't impose the *drastic* and *disfavored* remedy of disqualification.[80] The Court should consider tailored remedies, like motions to strike,[81] *in camera* inspections,[82] a show-cause order,[83] or exclusion of evidence.[84] Still, nothing in the declarations Chandra Law obtained covers the public-records process

---

[79] *City of Cleveland v. Cleveland Elec. Illuminating Co.*, 440 F. Supp. 193, 209 (N.D. Ohio 1976) (rejecting disqualification where prior representation involved "very mechanical procedure" and review of documentation was "premised upon public record, and information within the public domain"). *SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F. Supp. 2d 863, 869 (S.D. Ohio 2002) (applying previous Code of Professional Responsibility provision using same "substantially related" language in current Rules to deny disqualification of firm from representing a breach-of-contract defendant even though firm had represented plaintiff previously in other breach claims, allegedly acquiring information that could now be used against it; firm's handling of plaintiff's "garden-variety" breach cases did not preclude representing adverse parties in other breach cases; rejecting disqualification based upon an attorney's background information or familiarity of the workings of the corporation.). *See also Hollis v. Hollis*, 124 Ohio App. 3d 481, 485 (1997) ("moving party is required to present some evidence to suggest that the former representation is substantially related to the present action. Unsupported allegations are insufficient."); *Phillips v. Haidet*, 119 Ohio App. 3d 322, 328 (1997) ("Without a showing of such evidence [of a substantial relationship between the past and present cases], an unsupported claim of a possible ethics violation is insufficient to warrant disqualification."); *Gisslen v. Gisslen*, No. 24414, 2011 WL 2520208 (Ohio Ct. App. June 24, 2011), ¶ 21 (denying disqualification where nothing in motion or record suggest counsel's use of any confidential information.).

[80] *Gordon v. Dadante*, No. 1:05-CV-2726, 2009 WL 10689678, at *2 (N.D. Ohio June 30, 2009) ("[B]ecause a motion to disqualify is often tactically motivated, and can be disruptive to the litigation process, it is a drastic measure that is generally disfavored." (internal quotations and citations omitted)).

[81] *Johnson v. Ohio Dep't of Youth Servs.*, 231 F. Supp. 2d 690, 693 (N.D. Ohio 2002) ("[C]oncerns [about attorney's affidavit] can be addressed in response to particular questions or lines of inquiry.").

[82] *Centimark Corp.*, 85 Ohio App. 3d at 489 (reversing trial court that disqualified counsel based on little more than "an allegation of a conflict" when it could have simply called for *in camera* inspections and imposed protective orders).

[83] *Dickens*, 187 Ohio App. 3d at 629–30 ("Those objectives could have been achieved in this instance, and the issue better resolved, through an order requiring [the firm] to show cause why it should not be disqualified pursuant to Prof.Cond.R. 1.10.").

[84] *Insituform of N. Am., Inc. v. Midwest Pipeliners, Inc.*, 139 F.R.D. 622, 624 (S.D. Ohio 1991) ("If a court may disqualify an attorney for conduct in violation of the Code of Professional Responsibility and thereby deny a client's choice of counsel, it may impose the lesser sanction of excluding evidence gathered in violation of the Code."). If the Court deprives DeCrane of his declarations—which it should not—it should permit DeCrane to collect the same evidence via deposition.

Bardwell knew about. The Court could also bar Bardwell's participation here (though, nothing

supports this remedy and it would needlessly harm DeCrane[85]).

### E. Rule 3.3 requires defense counsel to withdraw Kelly's and Roberson's false declarations.

Prof. Cond. R. 3.3, *Candor to the Tribunal* requires defense counsel to withdraw Kelly's false

statement about Bardwell. Rule 3.3(a) requires counsel to "correct a false statement of material fact

or law previously made to the tribunal by the lawyer." And "[i]f… a witness called by the lawyer has

offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take

reasonable measures to remedy the situation, including, if necessary, disclosure to the tribunal." And

under § (b): a lawyer who represents a client in an adjudicative proceeding and knows that a person

has engaged in criminal or fraudulent conduct related to the proceeding must take reasonable

measures to remedy the situation, including, if necessary, disclosure to the tribunal.

Under these rules, Dileno, Vance, and Pellom must withdraw Kelly's false testimony. Given

City law director Langhenry's public disclaimer of her confidentiality assertion,[86] they should, in

good conscience, also withdraw Roberson's false testimony about "confidential" information.

### F. Defendants' motion is untimely because they were aware of interviews since May 2017, and Bardwell's involvement since September—or least November 2017; never specified the basis for objection; and waited until February 2018—after discovery closed—to seek the drastic remedy of disqualification.

Untimely disqualification motions that prejudice parties should be denied.[87] Since May 2017,

Defendants knew of planned current-employee interviews of senior-ranking union firefighters. Since

---

[85] Chandra Decl. ¶ 17; DeCrane Decl. ¶ 3.

[86] Chandra Decl. ¶ 14 (attaching Higgs article (Feb. 28, 2018)).

[87] *Barberton Rescue Mission v. Hawthorn*, No. 21220, 2003 WL 1039706, at ¶ 7 (Ohio Ct. App. Mar. 12, 2003) (reversing disqualification where party aware of potential conflict for months and disqualification prejudiced opposing parties and their counsel, "who had "spent a significant amount of time and resources in preparing their case"). *See also In re Valley-Vulcan Mold Co.*, 237 B.R. 322, 338 (B.A.P. 6th Cir. 1999), *subsequently aff'd*, 5 F. App'x 396 (6th Cir. 2001) (rejecting disqualification where opposing counsel was put on notice "one day following … discovery deadline"); *Milone v. English*, 306 F.2d 814, 818 (D.C. Cir. 1962) ("Such a motion is of an equitable nature and should be made with promptness and reasonable diligence once the facts are

September—or least November 2017 if Dileno's amnesia is accepted—Defendants knew of Bardwell's involvement. Yet until February 2018—after discovery closed—they never articulated their basis for objecting. They failed to apply Rule 1.11(c). They have yet to identify "confidential government information" that Bardwell supposedly accessed. Until February 2018, they never hinted at Rule 4.2 concerns (and even if they had, DeCrane's counsel would have been entitled to ignore their claims of blanket representation). Even if the Court concludes that a conflict exists—which it should not—Defendants' delay prejudices DeCrane and his counsel, who have invested significant time and resources preparing DeCrane's case.[88]

## G. The Court may not grant a disqualification motion without holding a hearing,[89] and if a hearing is set, DeCrane will request discovery to prepare.

For a hearing, DeCrane will seek discovery, including as to how Kelly and Roberson's false testimony arose. Kelly *and* defense counsel should have to produce all communications given that (1) defense counsel admit they do not represent Kelly, and, (2) even if communications were somehow privileged or work product, Kelly used defense counsel to present demonstrably fraudulent testimony to this Court, subjecting such communications to the crime-fraud exception.[90]

---

known."). By contrast, courts permit disqualification in cases where the moving party promptly filed its motion rather than sitting on its rights. *See*, e.g., *Popa Land Co. v. Fragnoli*, No. 08CA0062-M, 2009 WL 735969 (Ohio Ct. App. Mar. 23, 2009), ¶ 11 (granting disqualification where motion was filed 12 days after discovering potential conflict); *Stanley v. Bobeck*, No. 92630, 2009 WL 3490668 (Ohio Ct. App. Oct. 29, 2009), ¶¶ 9–10 (granting disqualification where "no substantial discovery in the form of depositions or expert reports had been completed at that point" and "motion was filed soon after the exchange of documents").

[88] Chandra Decl. ¶ 16 (as of today's filing, DeCrane has incurred fees and costs of just under $600,000).

[89] *Green*, 94 Ohio St. 3d at 484 ("[T]he court must hold an evidentiary hearing in which the party moving for disqualification has the burden of proving that the nonattorney has been exposed to relevant confidential matters."); *Dickens v. J & E Custom Homes, Inc.*, 187 Ohio App. 3d 627, 630 (2010), ¶ 11 (reversing disqualification where trial court granted motion "without having afforded [the firm] an opportunity to fully participate in the evidentiary hearing that resulted in the firm's disqualification.").

[90] *In re Antitrust Grand Jury*, 805 F.2d 155, 164 (6th Cir. 1986) (crime-fraud exception requires "a *prima facie* showing that a sufficiently serious crime or fraud occurred" and "some relationship between the communication at issue and the *prima facie* violation.").

## V. CONCLUSION

Defendants' gambit to punt Plaintiff's evidence—derogating the search for truth—fails on the facts and on the law. The Court should end it—and award DeCrane fees for Defendants' filing of Kelly's and Roberson's falsehoods, and for Defendants' failure to cite controlling authority. If it does not end now, the Court should schedule a hearing.

Respectfully submitted,

*/s/ Subodh Chandra*
Subodh Chandra (OH Bar No. 0069233)
Ashlie Case Sletvold (OH Bar No. 0079477)
Patrick Kabat (NY Bar No. 5280730)
Patrick Haney (OH Bar No. 0092333)
THE CHANDRA LAW FIRM LLC
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
216.578.1700 Phone
216.578.1800 Fax
Subodh.Chandra@ChandraLaw.com
Ashlie.Sletvold@ChandraLaw.com
Patrick.Kabat@ChandraLaw.com
Patrick.Haney@ChandraLaw.com

*Attorneys for Plaintiff Sean DeCrane*

**Certificate of Service and Compliance with Local Rule 7(F)**

I certify that the above document was filed using the ECF system, which will send notification to all counsel of record. I also certify that the Court granted Plaintiff's Feb. 26 motion (Doc. 50) by minute order on Feb. 26, 2018, expanding DeCrane's page limitation on this response to 20 pages and his deadline to file it to March 2, 2018.

*/s/ Subodh Chandra*
*One of the attorneys for Plaintiff Sean DeCrane*