IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SEAN DECRANE<br><br>     *Plaintiff,*<br><br>  v.<br><br>EDWARD J. ECKART, *et al.,*<br><br>     *Defendant.* | Case No. 1:16-cv-02647<br><br>Judge Christopher A. Boyko<br><br>Magistrate Judge William H. Baughman, Jr. |
| **PLAINTIFF SEAN DECRANE'S MOTION TO DISQUALIFY THE LAW FIRM OF ZASHIN & RICH FROM REPRESENTING ALL DEFENDANTS BECAUSE OF A MATERIAL CONFLICT** | |

 Plaintiff Sean DeCrane respectfully moves that the Court disqualify the Zashin & Rich law firm from representing all Defendants and witness Patrick Kelly due to a conflict of interest. The Sixth Circuit requires the Court to undertake a sufficient factual inquiry to facilitate appellate review.[1] A memorandum in support is attached.

---

[1] *Gen. Mill Supply Co. v. SCA Servs., Inc.,* 697 F.2d 704, 710 (6th Cir. 1982) ("[A] decision for disqualification is adequately founded without an evidentiary hearing if the 'factual inquiry' is conducted in a manner that will allow of appellate reviews.")

## TABLE OF CONTENTS

Table of Authorities ....................................................................................................................... iii

Issue Presented ............................................................................................................................... 1

Introduction .................................................................................................................................... 1

Facts ................................................................................................................................................. 1

Law & Argument ............................................................................................................................ 3

    I.    Zashin's duties to Kelly irreconcilably conflict with its duties to Defendants. ........................ 4

    II.    Zashin cannot diligently uphold its duties to Defendants because it must prove Kelly's accusations against them are true. ...................................................................................... 5

        A.    Diligent representation would require Zashin to accuse its own clients of perjury. ........... 7

        B.    Diligent representation would require Zashin to demand discovery from its clients and simultaneously defend against its own requests. ................................................... 9

        C.    Diligent representation would require Zashin to disclose each client's confidential information to the other. .................................................................................. 10

        D.    Diligent representation would require Zashin to advise each client how it could shift blame in this matter to its other clients. ............................................................ 12

        E.    Diligent representation would require Zashin to sacrifice one of its clients in settlement negotiations. ...................................................................................... 13

        F.    Zashin's duty of loyalty to Kelly will continue even if it terminates the representation. .. 15

Conclusion ..................................................................................................................................... 15

Certificate of Service ................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Banner v. City of Flint,* 136 F. Supp. 2d 678 (E.D. Mich. 2000) .................................................. 10

*CenTra, Inc. v. Estrin,* 538 F.3d 402 (6th Cir. 2008) ...................................................................... 7

*Gordon v. Dadante,* 2009 WL 2732827 (N.D. Ohio Aug. 26, 2009) ........................................... 15

*Holloway v. Arkansas,* 435 U.S. 475 (1978) ............................................................................... 8, 9

*Johnson v. Clark Gin Serv., Inc.,* 2016 WL 7017267 (E.D. La. Dec. 1, 2016) ............................ 8

*Kelley v. Buckley,* 193 Ohio App. 3d 11 (Ohio App. 2011) ......................................................... 16

*Lightbody v. Rust,* 137 Ohio App. 3d 658, 664, (Ohio App. 2000) .............................................. 16

*McGriff v. Christie,* 477 F. App'x 673 (11th Cir. 2012) ................................................................. 3

*U.S. v. Shearburn,* 2015 WL 12999704 (E.D. Ky. July 10, 2015) ......................................... 11, 12

*Waneck v. CSX Corp.,* 2017 WL 5157394 (S.D. Miss. Nov. 7, 2017) ........................................ 14

*Wheat v. U.S.,* 486 U.S. 153 (1988) .............................................................................................. 9

**Statutes**

Ohio Rev. Code § 149.351 ............................................................................................................ 13

Ohio Rev. Code § 2307.60 ............................................................................................................ 13

Ohio Rev. Code § 2921.41 ............................................................................................................ 13

**Rules**

Ohio Prof. Cond. R. 1.7 .......................................................................................................... passim

Ohio Prof. Cond. R. 1.8 ................................................................................................................. 5

**Other Authorities**

Ohio Adv. Op. 2008-4, Supreme Ct. of Ohio Bd. of Comm'nrs on Grievances and Discipline, 2008 WL 4186032 ................................................................................................................................. 9

Ohio Adv. Op. 2009-3, Supreme Court of Ohio Board of Commissioners on Grievances and Discipline, 2009 WL 1764109 ..................................................................................................... 6

## Memorandum in Support

### ISSUE PRESENTED

A court must disqualify attorneys with a conflict of interest unless they can "provide competent and diligent representation to each affected client."[2] Defendant Ed Eckart has accused witness Patrick Kelly of perjury. Defense counsel Zashin & Rich has signed Kelly as a client anyway, and its obligations to him impair its ability to conduct diligent factual investigations, cross-examinations, and settlement negotiations. Should the Court allow a firm with such divided loyalties to continue representing Defendants and Kelly?

### INTRODUCTION

Three days before filing Defendants' summary-judgment motion, the Zashin & Rich firm elected to simultaneously represent a witness, Patrick Kelly, whose testimony, under penalty of perjury, created a genuine issue of material fact precluding summary judgment. The firm's new representation of Kelly creates an unavoidable conflict of interest preventing the firm from simultaneously fulfilling its ethical duties of loyalty and disclosure to Defendants on one hand and Kelly on the other. The Court should grant the motion to protect the integrity of the proceedings.

### FACTS

DeCrane sued Defendants for retaliation based on Defendant Eckart's mistaken belief that DeCrane was the whistleblower who alerted the media that then-fire chief Daryl McGinnis lacked the training and certifications necessary to be even a line firefighter. Evidence now before the Court shows Defendants effected this retaliation through McGinnis's successor, Patrick Kelly. As part of its retaliation campaign, the City was threatening to outsource DeCrane's job to Tri-C. Kelly believed that doing so would leave the Division's new recruits less prepared to protect the City.[3]

But Eckart offered to stop the outsourcing effort if Kelly removed DeCrane from his job. Under penalty of perjury, Kelly testified: "Eckart agreed to continue operating the Fire Training Academy in-house, but only if I removed Sean from his position as the head of the academy."[4]

---

[2] *Carnegie Cos., Inc. v. Summit Properties, Inc.*, 183 Ohio App. 3d 770, 791 (2009).
[3] First Decl. of Patrick Kelly, ¶ 17, attached as Ex. 1.
[4] First Kelly Decl., ¶ 18.

But in his deposition, Eckart accused Kelly of perjury:

**Q:** Did you agree to continue operating the Fire Training Academy in-house if Chief
Kelly removed Sean DeCrane from his position as the head of the FTA?
**A:** No.
**Q:** If Chief Kelly testifies that you did, is he lying?
**A:** He is.[5]

To support its motion to suppress Kelly's testimony, the City obtained a slickly lawyered

second declaration from Kelly technically consistent with that prior testimony but that, at first

glance, might appear to contradict it.[6] The new declaration denies that Eckart agreed to abandon the

outsourcing plan if Kelly "removed Sean DeCrane from the [Fire Training Academy]," while the

first says that Eckart offered to abandon the plan if Kelly "removed Sean from his position *as the*

*head of* the academy" (emphasis added). If Eckart would have allowed Kelly to reassign DeCrane to a

*lower*-ranking position at the Academy, both statements are true.

But Kelly's second declaration included false statements. Among them was an allegation that

Brian Bardwell, the Chandra Law clerk who spoke to Kelly on DeCrane's behalf, violated

professional-conduct rules.[7] Because the City's disqualification motion left unclear whether the City's

attorneys represented Kelly, who had retired years earlier, DeCrane's counsel asked lead defense

attorney Jon Dileno whether Zashin represented Kelly.[8] Dileno confirmed on February 22, 2018 that

neither he nor the firm represented Kelly.[9] DeCrane's attorneys then informed Kelly that DeCrane

was considering state-court civil litigation based on his perjurous statements and asked him to retain

counsel to contact Chandra Law immediately.[10] Yet Kelly's response came via Dileno, proclaiming

---

[5] Eckart Dep., 247:15–22, attached as Ex. 2. Kelly, meanwhile, describes Eckart as a "disingenuous" boss who would "frequently turn around and undercut" Kelly. First Kelly Decl., ¶ 12.

[6] *See* Second Decl. of Patrick Kelly, ¶ 9, attached as Ex. 3.

[7] *See* Pl.'s Opp. Mot. Disqual., Doc. #56 at 9–13. (contrasting Kelly's testimony with audio recording)

[8] Decl. of Subodh Chandra (Mar. 20, 2018), ¶ 3, attached as Ex. 4 (Letter from Chandra to Dileno dated Feb. 17, 2018 attached as Ex. 4-A).

[9] Chandra Decl. at ¶ 4; Letter from Dileno to Chandra dated Feb. 22, 2018 (attached as Ex. 4-B).

[10] Chandra Decl. at ¶ 5; Letter from Chandra to Kelly dated Feb. 22, 2018 (attached as Ex 4-C).

that he and his firm do now represent Kelly.[11]

Mr. Chandra replied to Dileno the next day, warning that representing Kelly would create serious and unavoidable conflicts because:

1. No attorney could diligently represent two clients whose sworn statements on a critical factual question contradict each other;
2. DeCrane's settlement position regarding Kelly differs completely from DeCrane's position regarding Defendants, whose scorched-earth defense and refusal to settle have forced him to incur over $600,000 in attorneys' fees; and
3. Dileno himself, along with his firm, were potential co-defendants in the contemplated action against Kelly, based on their role in procuring the perjured declaration.[12]

Dileno never responded to that letter.[13]

## LAW & ARGUMENT

In *McGriff v. Christie*,[14] counsel for a plaintiff–doctor in a race-discrimination case against his hospital secured a witness's cooperation by promising to represent her in a malpractice case against the same hospital while coaxing her out of suing the doctor. The trial court granted the hospital's motion to disqualify the attorney from representing the doctor, holding it was "clearly improper for a lawyer to simultaneously represent two clients when he is unable to maintain loyalty to both clients and may need to breach client confidentiality."[15] The appeals court affirmed, holding the patient's interests would be hurt "if information she previously disclosed to Counsel is used to undermine her trial testimony," especially when her trial testimony on "key issues" conflicted with the doctor's.[16]

Zashin's conduct aligns with the "clearly improper" conduct of *McGriff*'s disqualified attorney. Zashin represents different clients against the same party in the same action and a contemplated separate action. Conflicts exist between Zashin's clients, beginning with each one's

---

[11] Chandra Decl. at ¶ 6; Letter from Dileno to Chandra dated Mar. 6, 2018 (attached as Ex. 4-D).
[12] Chandra Decl. at ¶ 7; Letter from Chandra to Kelly dated Mar. 7, 2018 (attached as Ex 4-E).
[13] *Id.* at ¶ 8.
[14] 477 F. App'x 673 (11th Cir. 2012).
[15] *McGriff*, 477 F. App'x at 677.
[16] *Id.* at 679.

need to prove that he has not committed perjury and that the other one has. And the differences between the two clients go directly to "the ultimate facts to be decided by the factfinder."[17]

Zashin's decision to represent Kelly puts the firm in an impossible situation unfair to both Kelly and Defendants, and it requires disqualification to protect the integrity of these proceedings.

## I.  Zashin's duties to Kelly irreconcilably conflict with its duties to Defendants.

A conflict exists when "there is a *substantial* risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client."[18] Identifying a material limitation requires the Court to ask two questions: "(1) whether a difference in interests between the client and lawyer or between two clients exists or is likely to arise; and (2) if it does, whether this difference in interests will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of any affected client."[19]

This case presents a textbook material limitation. As Rule 1.7's comments note, a material limitation arises when "there is a substantial discrepancy in the clients' testimony, incompatible positions in relation to another party, potential cross-claims, or substantially different possibilities of settlement of the claims or liabilities in question."[20] By concurrently representing the Defendants and Kelly, Zashin checks all the boxes:

☑ **There is a substantial discrepancy in the clients' testimony.** Kelly testified that a "disingenuous" Eckart induced him to demote DeCrane. Eckart testified that Kelly is lying.

☑ **The clients have incompatible positions in relation to another party.** DeCrane is suing Defendants. Kelly has generally cooperated with DeCrane in pursuing those claims, meeting repeatedly with his firm, providing a declaration, and sharing documents.

☑ **The clients have potential cross-claims.** Either Eckart or Kelly is lying about the order to remove DeCrane from his job. This means that either Kelly or Eckart is lying about the

---

[17] *Id.*
[18] Rule 1.7(a)(2). *See also Columbus Bar Assn. v. Ross*, 107 Ohio St. 3d 354, 359 (2006) (finding a conflict where a single attorney "represents both the defendant and the chief witness for the State in the same case.").
[19] Rule 1.7, cmt. 14.
[20] Rule 1.7 cmt. 15.

other's testimony. And the City's position is that DeCrane's claims against Eckart are more properly claims "against Chief Kelly."[21]

☑ **The clients have substantially different possibilities of settling.** Although Kelly acquiesced to Eckart's demands to remove DeCrane from his job, Kelly's culpability is not nearly at Defendants' level. Defendants have forced DeCrane to run up a massive legal bill. Kelly's settlement prospects for lying under oath will reflect those realities.

As pervasive as they are, the conflicts between Kelly and Defendants are not as severe as the conflicts between Kelly and the Zashin attorneys themselves. DeCrane knows Kelly well enough to recognize that his second declaration is not his own work but the product of slick lawyering. If Kelly forces him to pursue separate state-court litigation to resolve his claims regarding the declaration's false statements, DeCrane will likely jointly name those who appear to have drafted it: Zashin attorneys Jon Dileno and David Vance, and their employer, Zashin & Rich.

These parties' exposure depends entirely on the information that DeCrane learns from Kelly and Kelly's willingness to cooperate. In that position, not surprisingly, Zashin rushed to sign up Kelly as a client just one day after learning that DeCrane had rock-solid proof that Kelly had lied in the declaration it had solicited. That instinct is exactly why Prof. Cond. R. 1.7 exists.[22]

Zashin's obligations to Defendants—along with its attorneys' interest in self-preservation— bear all the hallmarks of a material limitation on its ability to represent Kelly. And its newfound obligations to Kelly pose all the same threats to its ability to represent Defendants and protect itself from financial and reputational harm. These conflicts demand disqualification.[23]

## II. Zashin cannot diligently uphold its duties to Defendants because it must prove Kelly's accusations against them are true.

Prof. Cond. R. 1.7 permits conflicts only when the lawyer can prove three things:

1. the lawyer will be able to provide competent and diligent representation to each affected client;

---

[21] Mem. in Supp. of Defs.' Mot. Disqual., Doc. #43-1 at 6.

[22] Rule 1.7, cmt. 20 ("[I]f the probity of a lawyer's own conduct in a transaction is in serious question, the lawyer may have difficulty or be unable to give a client detached advice in regard to the same manner.").

[23] It is not clear whether Kelly is paying Zashin & Rich for its services. If the City is paying this witness's bills instead—for conduct occurring *after* Kelly was a City employee—the representation raises even more concerns under Ohio Prof. Cond. R. 1.8(f) and Ohio Rev. Code § 2307.60 (civil liability for criminal acts).

2. each affected client gives *informed consent, confirmed in writing*,

3. the representation is not precluded by division (c) of this rule.

If the conflicted lawyer cannot prove all three, "the trial court must grant a motion for disqualification."[24] Even if Kelly has given informed consent to these conflicts, "[t]here are some conflicts of interest to which a client may not consent."[25] This is one.

"Some conflicts are nonconsentable because a lawyer cannot represent both clients competently and diligently … For example, a lawyer may not represent multiple parties to a negotiation whose interests are fundamentally antagonistic, regardless of their consent."[26] Even before this suit, Kelly's relationship with Defendants was antagonistic. As a firefighter and chief, Kelly was perpetually at odds with Eckart (a "disingenuous" boss who would "frequently turn around and undercut me"[27]), with Safety Director Michael McGrath (who refused to rein Eckart in[28]), and with the mayor ("a bully" who would "reprimand and belittle people"[29]). Not even two years after being sworn in at the top of the organization to which he had dedicated his career, Kelly fled, taking a 35% pay cut to work in the suburbs.[30]

It would have been difficult enough to represent both sides of this employment relationship even before this litigation, but the case has long since developed in such a way that no lawyer could competently and diligently represent the City while also representing Kelly.

In *CenTra, Inc. v. Estrin*,[31] the owner of Detroit's Ambassador Bridge sued the law firm

---

[24] *Carnegie Cos., Inc. v. Summit Properties, Inc.*, 183 Ohio App. 3d 770, 791 (2009).

[25] *CenTra, Inc.*, 538 F.3d at 412.

[26] Rule 1.7, cmt. 38; Ohio Adv. Op. 2009-3, Supreme Court of Ohio Board of Commissioners on Grievances and Discipline, 2009 WL 1764109 ("Regardless of consent, multiple representations should not be undertaken when two clients' interests are fundamentally antagonistic").

[27] First Kelly Decl., ¶ 12.

[28] *Id.*

[29] *Id.* at ¶ 10.

[30] Atassi, Leila, "Retiring Cleveland Fire Chief Patrick Kelly leaves a department still recovering from controversy" (Aug. 27, 2015) [perma.cc/H554-MZR5].

[31] 538 F.3d 402 (6th Cir. 2008).

handling its bridge-expansion efforts after learning that the firm was also representing the City of Windsor in efforts to block the expansion. The district court entered summary judgment for the firm, holding that the client had impliedly consented to the conflict, based on its knowledge—more than a year before engaging the firm—that the firm had been engaged in directly adverse representation. The Sixth Circuit reversed, holding that the district court had ignored the possibility that such a conflict is not consentable: "[I]t is not true that all conflicts are consentable. … According to the commentary to Michigan's Rule 1.7, a conflict is nonconsentable 'when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances.'"[32]

The conflict here is worse. In *CenTra*, there was no pending litigation between the two parties, and each was represented by different lawyers in different offices in different cities in different countries. Here, a single firm, Zashin, purports to represent both Defendants and the witness, both here and in a contemplated separate lawsuit where the witness (with his counsel) may become defendants in direct opposition to Defendants (and their counsel—the same counsel).

### A.  Diligent representation would require Zashin to accuse its own clients of perjury.

Most blatant among the conflicts between Kelly and Defendants are the competing accounts of Eckart's involvement in removing DeCrane from his position at the head of the FTA. Under penalty of perjury, Kelly testified that Eckart made a deal to persuade Kelly to remove DeCrane. Eckart swore under oath that Kelly is lying.

DeCrane will call Kelly and Eckart to testify at trial. Zashin will be forced to decide how to handle two clients accusing each other of lying. Will it sacrifice Kelly to spare the client on trial? Will it accuse Eckart of lying, sparing its new client? Will it duck questioning either and let the conflicting testimony stand (thus undercutting the City's position)? Maybe Zashin is skillful enough to thread

---

[32] *CenTra, Inc.*, 538 F.3d at 413.

the needle and reconcile the testimony of two men accusing each other of perjury. But that strategy would still be tainted because it was adopted to save two clients with conflicting objectives, when each client had the right to an attorney acting with loyalty *only to him.*

Similarly nonconsentable conflicts drove disqualification in *Johnson v. Clark Gin Serv., Inc.*[33] In *Johnson*, a plaintiffs' team brought personal-injury claims on behalf of several employees in an Amtrak crash. Amtrak sought to disqualify the team based on its inability to represent parties who had an interest in shifting blame onto each other as well as the defendants. The district court granted the motion, holding that the conflict was not one to which they could consent:

> Although Plaintiffs correctly note that none of the Plaintiffs individually name any of the other Plaintiffs in their respective complaints, this does not change the fact that in the context of this proceeding, proving certain Plaintiff's claims will necessarily be adverse to the interests of other Plaintiffs represented by Plaintiffs' counsel in the same litigation.[34]

The U.S. Supreme Court has rejected such conflicts as incompatible with the integrity of the courts. In *Holloway v. Arkansas*, a trial judge permitted one lawyer to represent two defendants—one of whom had previously incriminated the first—despite an objection that the lawyer could not effectively cross-examine either.[35] Even though the second defendant recanted his incriminating testimony and the defendants provided favorable and consistent testimony, the Court reversed, holding that the "probable risk of a conflict of interests" deprived the defendant of effective representation.[36] And in *Wheat v. U.S.*, the trial court refused to allow a criminal defendant to be represented by an attorney with another client likely to be called as a witness to incriminate the defendant, holding that such a representation would cause "an irreconcilable conflict of interest."[37] The Court affirmed, holding that the presumption for allowing a defendant his choice of counsel

---

[33] *Johnson v. Clark Gin Serv., Inc.*, No. 15-3315; 2016 WL 7017267 (E.D. La. Dec. 1, 2016).

[34] *Johnson*, 2016 WL 7017267, at *11.

[35] 435 U.S. 475 (1978).

[36] *Id.* at 484.

[37] 486 U.S. 153, 157 (1988).

was overcome "by a showing of a serious potential for conflict."[38] Because opposing counsel was likely to call one of the attorney's clients to incriminate the defendant, "necessitating vigorous cross-examination," the attorney "would have been unable ethically to provide that cross-examination."[39]

If a conflict is disqualifying when buttressed by the Sixth Amendment right to choice of counsel, it is even more fatal in the civil context. As in *Johnson*, *Holloway*, and *Wheat*, Zashin represents clients who incriminate each other, setting up the same "irreconcilable conflict." Even if the firm can somehow, as in *Holloway*, persuade one client to change his testimony to align with the others', the "probable risk of a conflict" still demands separate counsel.

### B. Diligent representation would require Zashin to demand discovery from its clients and simultaneously defend against its own requests.

Factual investigation poses another challenge to Zashin's ability to diligently and independently advise its dueling clients. Kelly acknowledges that when he retired from the City, he "kept a binder" full of records related to the administrative charges against DeCrane. An apparently unconflicted lawyer advised him against releasing those records.[40] Without copies of those records, no one can be sure whether that binder full of records supports Kelly's or Eckart's version of why DeCrane was disciplined. That he kept them suggests one thing, while the fact that his lawyer-advisor didn't want them disclosed suggests another. Only Kelly can say for sure.

On October 13, 2017, Zashin issued to Kelly a subpoena *duces tecum* demanding documents about DeCrane.[41] Did Kelly produce the full binder? Again, only Kelly can say for sure. But whether Kelly produced the binder earlier or provides it to his new counsel, Zashin must decide what to do

---

[38] *Id.* at 164.

[39] *Id. See also* Ohio Adv. Op. 2008-4, Supreme Ct. of Ohio Bd. of Comm'nrs on Grievances and Discipline, 2008 WL 4186032 at *7 ("In a lawyer's simultaneous representation of one co-defendant in a felony case and the other co-defendant in an unrelated misdemeanor case, a 'directly adverse' conflict of interest will occur when effective representation of the co-defendant in the felony case requires cross examination of the client represented in the misdemeanor case.").

[40] Bardwell Decl. ¶ 26.

[41] *See* Defs.' subpoena *duces tecum* to Patrick Kelly (Oct. 13, 2017) (attached as Ex. 6).

with that information. If Zashin determines Kelly did not comply with Defendants' subpoena, will the firm advise Kelly to move to quash it? How will the firm advise Defendants to proceed if Kelly resists? Will Zashin move to compel its client Kelly to comply with the subpoena?

New problems arise if the Court permits DeCrane's requested discovery to prepare for a hearing on Defendants' motion to disqualify or for a hearing on that motion. How will Zashin handle Kelly's deposition or hearing testimony? If he stands by his story, the firm's duty to Kelly will bar it from vigorously cross-examining him.[42] This conflict led to disqualification in *Banner v. City of Flint*.[43] There, an attorney deposed a witness he had advised on potential claims against the defendant. The magistrate denied a motion to disqualify, holding that voluntarily submitting to questioning by her attorney without objection "constituted a voluntary waiver of any attorney-client privilege or other claim for confidentiality."[44] The district court set aside the magistrate's order and disqualified the attorney, holding he had violated his ethical obligations "by using … confidential information and secrets to the advantage of Banner, as well as for his and/or his firm's monetary gain."[45] The district court said the magistrate had erred by ignoring "the nuance of this case: *that the deposition examiner seeking to disclose the confidential information is the examinee's own attorney.*"[46]

## C. Diligent representation would require Zashin to disclose each client's confidential information to the other.

If Zashin attempted to resolve the conflicts among its clients' testimony, it would likely have to question those clients under oath. But the firm cannot diligently question any of its clients

---

[42] *TransPerfect Glob., Inc. v. MotionPoint Corp.*, No. C-10-02590 CW JCS, 2012 WL 2343908, at *14 (N.D. Cal. June 20, 2012) ("Once a client engages a lawyer, that client must be able to expect undivided loyalty. McDermott's concurrent representation—which has already resulted in McDermott deposing its own client, Shawe—does not fulfill this expectation.").

[43] 136 F. Supp. 2d 678 (E.D. Mich. 2000), *aff'd in part, rev'd in part,* 99 F. App'x 29 (6th Cir. 2004).

[44] *Id.* at 682.

[45] *Id.* at 684.

[46] *Id.* at 682 (emphasis in original). *See also Hernandez v. Paicius*, 109 Cal. App. 4th 452, 468 (2003) (reversing jury verdict for defendant because "court cannot permit, much less preside over, an attorney's attack on his or her own client").

without tapping into its reserve of confidential information obtained from the other clients.[47]

This tension between diligent representation and maintaining confidences was among the grounds for disqualifying a lawyer from representing either of his two clients in *U.S. v. Shearburn*.[48] There, the attorney had represented co-defendants until the judge raised the conflict issue *sua sponte*. Even after a colloquy ending with both clients' agreement to proceed, the court was unpersuaded that both clients appreciated the hazards of joint representation and appointed new, independent counsel for each client. The court specifically cited the "serious risk"[49] that it would be impossible for the lawyer to balance the duties of diligence and maintaining confidentiality:

> This concern is especially sensitive here due to the proffered proof differences and postures, relative to the evidence, between the two defendants. … Ultimately, if [the lawyer] knows or learns information that is helpful to one client but harmful to the other, he will face a dilemma to which there is no ethical solution; whether he uses or withholds the information, he acts to the detriment to one of his clients.[50]

Kelly deserves counsel who can prove that his testimony against Eckart is honest, and vice versa. That testimony goes to the heart of the matter on which Zashin has been representing Eckart for two years. The firm's attorneys have a massive store of information—most importantly from conversations with Eckart himself—allowing them to direct Kelly's inquiry, to try to vindicate Eckart. Zashin must instead walk a tightrope to vindicate Eckart without implicating Kelly. A diligent lawyer would tap into any information available to defend his client's credibility. Under the circumstances, Zashin now cannot diligently represent either client. (*See* Part IIF below for more on this.)

---

[47] Rule 1.7, cmt. 27 ("[C]ommon representation will almost certainly be inadequate if one client asks the lawyer not to disclose to the other client information relevant to the common representation. This is so because the lawyer has an equal duty of loyalty to each client, and each client has the right to be informed of anything bearing on the representation that might affect the client's interests and the right to expect that the lawyer will use that information to that client's benefit.").

[48] *U.S. v. Shearburn*, No. 3:15-CR-5-GFVT-REW, 2015 WL 12999704 (E.D. Ky. July 10, 2015).

[49] *Shearburn*, 2015 WL 12999704, at *4.

[50] *Shearburn*, 2015 WL 12999704, at *5.

**D. Diligent representation would require Zashin to advise each client how it could shift blame in this matter to its other clients.**

Zashin will also find it impossible to maintain its duty of loyalty to Defendants and to Kelly when advising them on who should be parties to this action and any separate action against Kelly. This conflict already manifests itself in Zashin's briefing. Less than three weeks before the firm engaged with Kelly, the City's position was that Kelly was "solely responsible" for deciding whether to pursue charges against DeCrane and that DeCrane's claims based on those charges are actually "direct allegations against Chief Kelly."[51] But in Defendants' summary-judgment motion—filed just three days after Zashin began representing Kelly—the firm now plays down Kelly's involvement and shifts blame back to the City:

- "The City disciplined multiple employees";[52]
- "[T]he City did not formally discipline [DeCrane]";[53]
- "[T]he City scheduled a joint pre-disciplinary hearing."[54]

With Kelly as a client, Zashin soft-pedals his involvement and pins these disciplinary decisions on "the City," which it also represents—despite having procured a declaration from Kelly claiming he was the only one making these decisions and that "no one influenced" those decisions.[55] Having obtained a declaration from a third party admitting to being "solely responsible"[56] for the actions attributed to his client, another defense attorney might bring that party in as a third-party defendant or otherwise seek to indemnify his clients for any damages resulting from the conduct. But Zashin can't counsel the City to do that without violating its duty of loyalty to Kelly. The same thing would happen if DeCrane files a separate action or supplements his complaint to bring claims based on Kelly's false declaration: Zashin would have to advise Kelly on claims against the City and

---

[51] Mem. in Supp. of Defs.' Mot. Disqual., Doc. #43-1 at 5–6 (emphasis added).
[52] Defs.' Mot. for Summ. J., Doc. #61-1 at 4.
[53] *Id.*
[54] *Id.* at 7.
[55] Second Kelly Decl., ¶ 18.
[56] Mem. in Supp. of Defs.' Mot. Disqual., Doc. #43-1 at 5.

its employees (and Zashin attorneys) for their roles in inducing him to sign it, but the firm could not do so without violating its duty of loyalty to Defendants.

The Kelly binder itself presents the City with new claims against Kelly. Ohio Rev. Code § 2921.41 bars theft of property owned by a municipal corporation, and the statute can be incorporated into Ohio Rev. Code § 2307.60, which provides a civil cause of action for any criminal misconduct. Ohio Rev. Code § 149.351 provides a civil cause of action permitting an injunction and a forfeiture of up to $10,000 for unlawfully removing records from a public office. Will Zashin side with the City and recommend litigation against Kelly to maximize its financial benefit and send a deterrent message to those who would do the same? Or will it protect Kelly by advising the City to drop the matter and forgo the thousands of dollars that taxpayers may be rightly owed?

The possibility of claims between clients required disqualification in *Waneck v. CSX Corp.*[57] There, a law firm represented the plaintiffs in a case against CSX while defending the city against claims from CSX arising from the same accident. Even though the clients *were not asserting claims against each other*, the magistrate judge recommended disqualification because the *possibility* that one client was liable to the other presented "exactly the type of circumstances under which a disinterested lawyer would conclude that a client should not agree to the … lawyer's representation."[58] The district court adopted the magistrate's recommendation, holding that such an arrangement "presents a nonconsentable conflict of interest warranting disqualification."[59]

### E. Diligent representation would require Zashin to sacrifice one of its clients in settlement negotiations.

Zashin cannot diligently represent the interests of both Kelly and Defendants in settling this matter. In both his willingness to accept Eckart's directives and his complicity in the City's efforts to

---

[57] *Waneck v. CSX Corp.*, No. 1:17CV106-HSO-JCG, 2017 WL 5157394 (S.D. Miss. Nov. 7, 2017).
[58] *Id.* at *2.
[59] *Id.* at *5.

deprive DeCrane of counsel, Kelly has inflicted real injuries for which DeCrane may have relief. But DeCrane recognizes these injuries are not as great as those inflicted by Defendants, who engaged in a years-long campaign of retaliation against him, denied him a promotion to the job he had worked for all his life, and forced him out of the career he loved, only because they mistakenly believed that he was the whistleblower who warned the public that its fire chief was not qualified to hold his job.

Kelly's settlement prospects to avoid litigation are thus substantially different than those of Defendants, who have, on top of it all, forced DeCrane to incur hundreds of thousands of dollars in legal fees and expenses to remedy the much more significant damages they have caused. All of that must be accounted for in any settlement with Defendants. Kelly, meanwhile, has not traveled so far down this road with Defendants that he cannot turn back. Assisted by competent counsel unburdened by a duty of loyalty to Defendants, Kelly can negotiate an amicable release of liability without litigation. But negotiations would require exchanging sensitive information in a confidential mediation, and would require Kelly to provide a full, truthful accounting of how he came to sign a false declaration for the City and its lawyers. Whether Kelly ultimately agrees to those terms or not, he is entitled to conflict-free counsel who can have confidential settlement discussions and fairly advise him of that path's benefits—without simultaneously trying to protect the very people Kelly will be called to testify against.

In *Gordon v. Dadante*, this Court rejected an attempt to consent to such a conflict because concurrent representation threatened settlement negotiations.[60] There, one attorney attempted to represent numerous plaintiffs in a fraud claim, including Frank Regalbuto, who claimed his interests in receivership assets were superior to other plaintiffs'. A separate plaintiffs' group sought to have the attorney disqualified. The Court granted the motion because separate allegations against Regalbuto were holding up a settlement. The Court held the conflict between Regalbuto and the

---

[60] No. 1:05-CV-2726, 2009 WL 2732827, at *5 (N.D. Ohio Aug. 26, 2009).

other plaintiffs nonconsentable: "[t]here is, at the absolute minimum, the 'substantial risk' that counsel's ability to 'consider, recommend, or carry out an appropriate course of action' for the Objecting Plaintiffs will be 'materially limited by' counsel's responsibilities to Frank Regalbuto."[61]

### F. Zashin's duty of loyalty to Kelly will continue even if it terminates the representation.

Having embraced a conflicted representation, Zashin cannot put the genie back in the bottle. Confidences are "assumed to be disclosed in the attorney-client relationship."[62] Dual representation of clients with adverse interests is prohibited "to ensure that confidences or secrets of a client imparted to an attorney in the course of their attorney-client relationship will not be revealed to an adverse party or used to the client's disadvantage."[63] A "lawyer's duty to preserve the client's confidences survives the termination of the attorney-client relationship," not even expiring "upon the client's death."[64] And the confidentiality rule "applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source."[65] "An attorney who fails to observe his obligation of undivided loyalty to his client injures his profession and demeans it in the eyes of the public."[66] Thus, Zashin cannot escape its duty of loyalty to Kelly by discarding him to protect its representation of Defendants.

### CONCLUSION

"In some situations, the risk of failure is so great that multiple representation is plainly impossible."[67] Here, nearly every risk factor counsels against multiple representation. Zashin's duties to Kelly will cripple its ability to diligently represent Defendants, and even informed consent cannot cure the conflict. The Court should disqualify the firm from representing Defendants and Kelly.

---

[61] *Gordon*, 2009 WL 10689678, at *5.
[62] *Lightbody v. Rust*, 137 Ohio App. 3d 658, 664, (Ohio App. 2000) (citation omitted).
[63] *Kelley v. Buckley*, 193 Ohio App. 3d 11, 24, (Ohio App. 2011).
[64] *Id.* at 27 (citations omitted).
[65] Rule 1.6 cmt. [3].
[66] *Carnegie Cos., Inc. v. Summit Properties, Inc.*, 183 Ohio App. 3d 770 (Ohio App. 2009).
[67] Rule 1.7, cmt. 25.

Respectfully submitted,

/s/ Subodh Chandra
Subodh Chandra (Ohio Bar No. 0069233)
Ashlie Case Sletvold (Ohio Bar No. 0079477)
Patrick Kabat (NY Bar No. 5280730)
Patrick Haney (Ohio Bar No. 0092333)
THE CHANDRA LAW FIRM LLC
The Chandra Law Building
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
216.578.1700 Phone
216.578.1800 Fax
Subodh.Chandra@ChandraLaw.com
Ashlie.Sletvold@ChandraLaw.com
Patrick.Kabat@ChandraLaw.com
Patrick.Haney@ChandraLaw.com

*Attorneys for Plaintiff Sean DeCrane*

## CERTIFICATE OF SERVICE

I certify that the above document was filed on March 20, 2018 using the ECF system, which will send notification to all counsel of record.

/s/ Subodh Chandra
*One of the attorneys for Plaintiff Sean DeCrane*