# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| **SEAN DECRANE,** | : | **Case No. 1:16-cv-02647-CAB** |
|  | : |  |
| **Plaintiff,** | : | **Judge Christopher A. Boyko** |
|  | : |  |
| **v.** | : | **Magistrate Judge** |
|  | : | **William H. Baughman, Jr.** |
| **EDWARD J. ECKART, et al.,** | : |  |
|  | : |  |
| **Defendants.** | : |  |
|  | : |  |

---

### *Defendants' Opposition to Plaintiff's Motion to Disqualify the Law Firm of Zashin & Rich from Representing All Defendants[1]*

---

**Zashin & Rich Co., L.P.A.**
**Jon M. Dileno (#0040836)**
  jmd@zrlaw.com
**David R. Vance (#0083842)**
  drv@zrlaw.com
950 Main Avenue, 4th Floor
Cleveland, OH  44113
T:  (216) 696-4441
F:  (216) 696-1618

**City of Cleveland Department of Law**
**Stacey M. Pellom (#0095292)**
  spellom2@city.cleveland.oh.us
601 Lakeside Avenue, Room 106
Cleveland, OH  44114
T:  (216) 664-2800
F:  (216) 664-2663

*Attorneys for Defendants*

---

[1] Since filing his Motion to Disqualify the Law Firm of Zashin & Rich (ECF #67), Plaintiff filed a Supplement to His Motion to Disqualify seeking to disqualify attorneys from the Cleveland Department of Law as well.  *See* ECF #76.  This Opposition addresses both Plaintiff's Motion and Supplement.

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................................ iii

**BRIEF STATEMENT OF THE ISSUES TO BE DECIDED** ................................... v

**SUMMARY OF THE ARGUMENT** ...................................................................... 1

**RELEVANT FACTS** ............................................................................................. 1

**STANDARD OF REVIEW** ................................................................................... 3

**LAW AND ARGUMENT**....................................................................................... 3

   I.    THERE IS NO ACTUAL CONFLICT OF INTEREST ...................................... 3

       A.   There Is Not a *Substantial Risk* that Defense Counsel's Abilities are
          Materially Limited by Representing Defendants and Kelly .........................4

           1.   *There Is Not a Substantial Discrepancy in Client Testimony* ...........4

           2.   *There Is Not a Potential for Cross Claims*........................................6

           3.   *Defendants and Kelly Do Not Have Incompatible Positions in Relation
               to Plaintiff*.........................................................................................7

           4.   *Defendants and Kelly Do Not Have Substantially Different Possibilities
               of Settlement* .....................................................................................7

  II.   ALL CLIENTS CONSENTED TO ANY POTENTIAL CONFLICT............................ 10

       A.   Defense Counsel Can Provide Competent and Diligent Representation .................10

       B.   Defendants and Kelly Provided Informed Consent, Confirmed in Writing, to
          Defense Counsel's Continued Representation........................................................12

  III.  PLAINTIFF DOES NOT HAVE A CONFLICT OR STANDING................................. 13

  IV.  PLAINTIFF'S REQUESTED REMEDY IS TOO SEVERE.......................................... 18

**CONCLUSION** .................................................................................................... 20

**CERTIFICATE OF SERVICE** ........................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Adams v. Karl*, No. 2:13-cv-894, 2014 U.S. Dist. LEXIS 119032 (S.D. Ohio Aug. 26, 2014) ...........................................................................................................................8

*Anderson v. Smith*, 196 Ohio App. 3d 540 (10th Dist. 2011) .........................................8

*Bialik v. Raddatz*, No. 1:12-cv-522, 2012 U.S. Dist. LEXIS 98953 (W.D. Mich. June 6, 2012) ........................................................................................................................16

*Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989).....................................................6

*Carlsen v. Thomas*, 159 F.R.D. 661 (E.D. Ky.1994) ....................................................19

*Cliffs Sales Co. v. Am. Steamship Co.*, No. 1:07-CV-485, 2007 U.S. Dist. LEXIS 74342 (N.D. Ohio Oct. 4, 2007) ...............................................................................18

*Colyer v. Smith*, 50 F. Supp. 2d 966 (C.D. Cal. 1999)............................................16, 17

*Costell v. Toledo Hosp.*, 38 Ohio St. 3d 221, 527 N.E.2d 858 (Ohio 1988)...................9

*Dale v. Selene Fin. LP*, No. 3:15CV1762, 2016 U.S. LEXIS 39474 (N.D. Ohio Mar. 25, 2016) ........................................................................................................................9

*Dana Corp. v. Blue Cross & Blue Shield Mut.*, 900 F.2d 882 (6th Cir.1990) ........15, 16

*Dawson v. City of Bartlesville*, 901 F. Supp. 314 (N.D. Okl. 1995) ........................17, 18

*FMC Technologies, Inc. v. Edwards*, 420 F.Supp.2d 1153 (W.D. Wash. 2006).............16

*Freeman v. Chicago  Musical Instrument Co.*, 689 F.2d 715 (7th Cir. 1982)...............19

*Frey v. Prior*, No. 91-3567, 1991 U.S. App. LEXIS 28681 (6th Cir. Nov. 27, 1991) ..............16

*Garland v. Ford Motor Co.*, No. 2:12-00121, 2015 U.S. Dist. LEXIS 38505 (M.D. Tenn. Mar. 26, 2015) ...................................................................................................18

*Gordon v. Dadante*, No. 1:05-CV-2726, 2009 U.S. Dist. LEXIS 76425 (N.D. Ohio Aug. 26, 2009) ..................................................................................................3, 13, 17

*Gordon v. Norman*, 788 F.2d 1194 (6th Cir. 1986) ...................................................3, 12

*Gould, Inc. v. Mitsui Mining & Smelting Co.*, 738 F.Supp. 1121 (N.D. Ohio 1990) ...............3, 18

*Greene v. Indep. Pilots Assn.*, No. 3:14-CV-00628-TBR, 2016 U.S. Dist. LEXIS 160901 (W.D. Ky. Nov. 21, 2016) ............................................................................16

*Holloway v. Arkansas*, 435 U.S. 475 (1978).................................................................11

*In re BellSouth Corp.*, 334 F.3d 941 (11th Cir. 2003) ..................................................17

*In re Dayco Corp. Derivative Secs. Litigation*, 102 F.R.D. 624 (S.D. Ohio 1984)................19, 20

*In re Sandahl*, 980 F.2d 1118 (7th Cir. 1992)...............................................................14

*In re Yarn Processing Patent Validity Litigation v. Leesona Corp.*, 530 F.2d 83 (5th Cir. 1976) ..........................................................................................................14, 16, 17

*Jacobson v. Kaforey*, 149 Ohio St. 3d 398, 75 N.E.2d 203 (Ohio 2016) ........................9

*Jane v. Patterson*, No. 1:16 CV 2195, 2017 U.S. Dist. LEXIS 55952 (N.D. Ohio Apr. 12, 2017) ........................................................................................................................9

*Kardules v. City of Columbus*, 95 F.3d 1335 (6th Cir.1996) ........................................13

*Kitchen v. Aristech Chem.*, 769 F. Supp. 254 (S.D. Ohio 1991) ....................................3

*Klingeman v. DeChristofaro*, No. 4:09CV00528, 2011 U.S. Dist. LEXIS 115561
(N.D. Ohio Oct. 6, 2011) ...................................................................................12, 20

*Lani ex rel. Schiller Kessler & Gomez, PLLC v. Schiller Kessler & Gomez, PLC*, No.
3:16-CV-00018-CRS, 2017 U.S. Dist. LEXIS 33769 (W.D. Ky. Mar. 9, 2017) .............16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................................................13

*Moses v. Sterling Commerce (Am.), Inc.*, 122 Fed. Appx. 177 (6th Cir. Ohio 2005)...................13

*Nilavar v. Mercy Health Sys.*, 143 F. Supp. 2d 909 (S.D. Ohio 2001)...........................................3

*O'Connor v. Jones*, 946 F.2d 1395 (8th Cir.1991)........................................................13

*Ortiz v. Kazimer*, No. 1:11 CV 01521, 2015 U.S. Dist. LEXIS 38496 (N.D. Ohio Mar.
26, 2015) .....................................................................................................................9

*Slayton v. Wells Fargo Bank, NA*, No. 2:12-CV-00283, 2013 U.S. Dist. LEXIS 29918
(Mar. 5, 2013) .............................................................................................................8

*Smith v. Jefferson Cty.*, 641 F.3d 197 (6th Cir. 2011) ..................................................13

*SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F. Supp. 2d 863 (S.D. Ohio 2002) .................3

*The White Family Cos., Inc. v. Dayton Title Agency, Inc.*, 284 B.R. 238 (S.D. Ohio
2002) ..........................................................................................................................14

*Warth v. Seldin*, 422 U.S. 490 (1975) ...........................................................................13

*Wheat v. U.S.*, 486 U.S. 153 (1988)...............................................................................11

*Whelan v. Vanderwist*, No. 2010-G-2999, 2011 Ohio App. LEXIS 5662, 2011-Ohio-
6844 (11th Dist. Dec. 30, 2011)....................................................................................8

*Willis v. First Bank National Association*, 916 F.2d 714 at 1990 U.S. App. LEXIS
18204 (6th Cir. 1990)................................................................................................16

*Wilson v. Morgan*, 477 F.3d 326 (6th Cir. 2007)...................................................14, 15

*Winchester v. Edn. Mgt. Corp.*, No. 5:10-CV-00012-TBR, 2010 U.S. Dist. LEXIS
60660 (W.D. Ky. June 18, 2010) .................................................................................15

## Statutes

Ohio Rev. Code 2307.60...................................................................................................... 9

## Rules

Ohio Rule of Professional Conduct 1.7 ................................................... 3, 4, 10, 11, 12

## BRIEF STATEMENT OF THE ISSUES TO BE DECIDED

I.      Is there a conflict of interest between any of Defense counsel's current clients – the City of Cleveland, Edward Eckart, Jr., James Votypka, Christopher Chumita, and Patrick Kelly?

II.     If there is a conflict of interest, should the Court disqualify Defense counsel from continuing to represent these clients where each client gave informed consent, confirmed in writing, of the conflict?

III.    If there is a conflict of interest, is the conflict one to which the clients may consent, given that Defense counsel's representation is not prohibited by law and does not involve the assertion of a claim by one client against another client?

IV.     Does Plaintiff Sean DeCrane have standing to file his Motion to Disqualify?

V.      If the Court were to find a conflict of interest to which the clients could not consent, what is the appropriate remedy?

## SUMMARY OF THE ARGUMENT

This Court should deny Plaintiff's Motion to Disqualify (ECF #67) for the following reasons: (1) there is no conflict of interest; (2) even if there was a conflict of interest, all Defendants and former City of Cleveland ("City") Division of Fire Chief Patrick Kelly consented to the conflict; and (3) Plaintiff's lack of a conflict (i.e., standing) demonstrates the tactical and harassing nature of his Motion.  Had Plaintiff's counsel notified Defense counsel of its intentions to file the instant Motion, Defense counsel could have explained this and alleviated the need to burden the Court with Plaintiff's needless Motion, which is a baseless diversionary tactic in which Plaintiff's counsel seeks to divert the Court's attention from their own misconduct.  The Court should deny Plaintiff's Motion.

## RELEVANT FACTS

Plaintiff, a retired Battalion Chief in the City's Division of Fire, filed his original Complaint on October 31, 2016 against his former employer the City, the City's Assistant Safety Director Edward Eckart, the City's now retired Manager of its Office of Integrity Control James Votypka, and current investigator in the Office of Integrity Control Chris Chumita.  *See* ECF #1. Plaintiff has since filed a First Amended Complaint (ECF #7) and Second Amended Complaint (ECF #46) and seeks to file a Third Amended Complaint (ECF #49, #59, #65, #71).  In each of these Complaints, Plaintiff makes claims against his former supervisors, including former Chief Kelly (ECF #46 at ¶¶ 118, 233) and current Chief Angelo Calvillo (ECF #46 at ¶¶342-349).

Plaintiff's only pending claim against the City, which covers Kelly's and Calvillo's acts or omissions in the course and scope of their City employment, is for retaliation under 42 U.S.C. § 1983.  *See* ECF #46 at ¶¶ 373-384.  Plaintiff opted not to name either Kelly or Calvillo as a Defendant.  Instead, without explaining to Kelly the adverse nature of Plaintiff's claims to the

City and Kelly, Plaintiff obtained a declaration from him (dated September 8, 2017) that is attached as Exhibit 1.[2]  *See* Ex. 2 (Declaration of Patrick J. Kelly) at ¶ 12.[3]  The Chandra firm's misconduct surrounding Kelly's first declaration is part of Defendants' grounds for moving to disqualify Plaintiff's counsel and moving to strike that declaration.  *See* ECF #43, ECF #64.

On November 17, 2017, Plaintiff testified under oath that the decisions Kelly made that impacted him were not retaliatory.  *See* Ex. 4 (Plaintiff 199:21-200:7).  Yet, on February 22, 2018, as part of Plaintiff's belated Motion for Leave to File Third Amended Complaint, Plaintiff threatened that Kelly may "be an appropriate defendant in connection with DeCrane's pending claims…" ECF # 49 at 7, fn. 12.  Plaintiff's threat is inconsistent with his prior sworn testimony.

So what, if anything, changed for the Plaintiff?  After Plaintiff's November 17, 2017 deposition, Kelly provided a second declaration (dated Dec. 12, 2017) stating it was solely his decision to put Plaintiff up on administrative charges and that he was "unaware of any scheme to bring false or criminal administrative charges against Sean DeCrane…" *See* Ex. 2 at ¶¶ 18, 21.  Kelly spoke repeatedly with Plaintiff about the reasons for these charges -- charges that Kelly himself signed.  *See* Ex. 2 at ¶¶ 18-22.  Therefore, this was not new information to Plaintiff, but it is problematic for Plaintiff, because these charges are a significant part of his Second Amended Complaint  (*see* ECF #46 at ¶¶ 2, 137-160, 282-290, 354-372, 376.d.), and by Plaintiff's own testimony, they cannot be retaliatory (i.e., they cannot form the basis of his § 1983 claim).

Ohio Rev. Code § 2744.07 requires the City, under certain circumstances, to defend Kelly as to his actions in connection with his City employment.  It was only after Plaintiff threatened to add Kelly to this litigation that the undersigned were retained to represent him.  Ex. 7 at ¶ 5 (Kelly declaration).  Plaintiff has not named Kelly as a defendant in this or any lawsuit.

---

[2] Plaintiff purports to attach Kelly's first declaration as Exhibit 1 to his Motion.  *See* ECF #67-1.  However, ECF #67-1 is unsigned.  Plaintiff cannot use an unsigned declaration to support what are already misguided arguments.
[3] Exhibit 2 is the second declaration Kelly signed, which he provided to Defense counsel.

<u>**STANDARD OF REVIEW**</u>

"The court has broad discretion in determining whether counsel should be disqualified in ongoing litigation." *Gould, Inc. v. Mitsui Mining & Smelting Co*., 738 F.Supp. 1121, 1124 (N.D. Ohio 1990) (citations omitted). Disqualification for an ethical violation is appropriate when there is a "'reasonable possibility [that] some specifically identifiable impropriety' actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice." *SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F. Supp. 2d 863, 865 (S.D. Ohio 2002) (*quoting Kitchen v. Aristech Chem.*, 769 F. Supp. 254, 258 (S.D. Ohio 1991).

The moving party "'bears the burden of establishing the need for disqualification.'" *Gordon v. Dadante*, No. 1:05-CV-2726, 2009 U.S. Dist. LEXIS 76425, at *29 (N.D. Ohio Aug. 26, 2009) (quoting *Nilavar v. Mercy Health Sys*., 143 F. Supp. 2d 909, 912 (S.D. Ohio 2001)). "[D]isqualification is a drastic measure which should not be imposed unless absolutely necessary. Such motions are often made as tactical attempts to divest opposing parties of their counsel of choice. Subsequently, in resolving these motions, judicial scrutiny of the facts is required to prevent unjust results." *Gould*, 738 F.Supp. at 1126 (citations omitted).

<u>**LAW AND ARGUMENT**</u>

**I.     THERE IS NO ACTUAL CONFLICT OF INTEREST**

To prevail, Plaintiff must demonstrate that Defense counsel "actively represented conflicting interests and that an *actual conflict* of interest adversely affected [counsel's] performance." *Gordon v. Norman*, 788 F.2d 1194, 1198 (6th Cir. 1986) (emphasis added). He cannot do so. Under Ohio Rule of Professional Conduct 1.7, a conflict exists only when:

    (1) the representation of [a] client will be directly adverse to another current
        client; [or]

(2) there is a *substantial risk* that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by the lawyer's own personal interests.

Rule 1.7(a) (emphasis in original).  Neither circumstance applies here.  In fact, Plaintiff does not argue a conflict exists under Rule 1.7(a)(1), focusing entirely on (a)(2).  *See* ECF #67 at 3-5.

## A. There Is Not a *Substantial Risk* that Defense Counsel's Abilities are Materially Limited by Representing Defendants and Kelly

"A 'material limitation' conflict exists when a lawyer represents co-plaintiffs or co-defendants in litigation and there is a substantial discrepancy in the clients' testimony, incompatible positions in relation to another party, potential cross-claims, or substantially different possibilities of settlement."  Rule 1.7, cmt. 15.  No such concerns are present here.

### 1. There Is Not a Substantial Discrepancy in Client Testimony

Plaintiff's Motion relies almost exclusively on the declaration Kelly provided Plaintiff's counsel and fails to address fully Kelly's second declaration, which resolves the only conflict Plaintiff alleges.  Specifically, Plaintiff alleges Kelly's testimony regarding Plaintiff's temporary detail from the FTA, including the City's attempts to outsource portions of the training offered at the FTA, conflicts with Eckart's account of these events.  *See* ECF #67 at 1-3.

In Kelly's first declaration, he stated:

> Eckart agreed to continue operating the Fire Training Academy in-house, but only if I removed Sean from his position as the head of the academy.  Eckart asked me to reassign Sean.  I reassigned Sean, and Eckart stopped pursuing the outsourcing plan.

*See* Ex. 1 at ¶ 18.  After signing this declaration, Defense counsel met with Kelly and showed him, among other documents, an email he sent Plaintiff shortly before Plaintiff's detail away from the FTA, in which Kelly stated:

-4-

> Ultimately it is my decision to not have you as the Chief of Training, as I am the Chief of this Division.  All you have done for our Division is truly appreciated by me and by others.  The incident that occurred at the cadets graduation had an extremely negative impact on our Divisions reputation, and we need to put it behind us.  I am sorry that I have had to ask you to step down, but I believe it is in the best interest of our Division of Fire moving forward.

*See* Ex. 5.[4]  Having the benefit of refreshing his recollection about this event, which occurred more than three and half years prior, Kelly stated in his second declaration:

> Although Eckart had asked that I detail Sean DeCrane from the FTA for the 2014 cadet class, due to the urine-gate matter, his request mirrored my intentions due to the severity of the urine-gate scandal.  Moreover, at no time did Eckart or anyone from the City of Cleveland state or suggest to me that the City would discontinue its efforts to outsource training from the FTA to Tri-C, only if I removed Sean DeCrane from the FTA.  To the extent Paragraph 18 of my prior declaration suggests such, it is not accurate.

*See* Ex. 2 at ¶ 9.[5]

Despite Plaintiff's efforts to embellish the differences between the two paragraphs, the two declarations are largely consistent.  Specifically, Kelly's second declaration, like the first, acknowledges Eckart's suggestion that Plaintiff be reassigned from the FTA.  Kelly then goes on to add – not inconsistently so – that he, too, wanted Plaintiff reassigned due to the severity of the urine-gate scandal.  Kelly then clarifies that Eckart's suggestion was not presented as an ultimatum tied to the FTA outsourcing decision.

In that regard, Eckart's testimony that Kelly would be lying if he testified Eckart agreed "to continue operating the Fire Training Academy in-house if Kelly removed Sean DeCrane from his position as the head of the FTA" is consistent with Kelly's second declaration.  *See* Ex.

---

[4] Exhibit 5 is authenticated at Ex. 3 (Vance declaration) at ¶ 3.
[5] Urine-gate relates to a heinous incident in which someone removed the photograph of former Division of Fire Chief Daryl McGinnis from the FTA and took it to a Division of Fire cadet graduation party at a local bar.  Someone then placed the photograph in a urinal at the bar and members of the Division urinated on it.  Someone actually took a picture of Chief McGinnis' photograph in the urinal, which was texted to Chief McGinnis and others.  Ex. 2 at ¶ 7.

6 (Eckart 247:15-22). There is no conflict. Rather, Plaintiff's only claimed "conflict" was resolved in December with Kelly's second declaration.[6]

Furthermore, Plaintiff's detail away from the FTA in February 2014 is immaterial to Plaintiff's case. As part of Plaintiff's § 1983 claim, he lists the main allegedly retaliatory actions, but does not include his temporary detail away from the FTA. *See* ECF #46 at ¶ 376. Interestingly, Plaintiff now represents this temporary detail to be a material job action – falsely claiming it was a demotion. ECF #67 at 4. Of course, Plaintiff was not demoted, but retained his rank, salary, and benefits as he performed his duties at Headquarters for approximately four months, when Kelly reassigned him back to run the FTA without any negative feedback from Eckart. Ex. 2 at ¶ 8; Ex. 7 at ¶ 9. Plaintiff's false assertion that he was demoted exemplifies his desperate effort to contort Kelly's routine decision into an adverse employment action.

Regardless, Plaintiff's detail in February 2014 was more than two years prior to the filing of his Complaint (ECF #1) and thus is time-barred. *See Browning v. Pendleton*, 869 F.2d 989, 989 (6th Cir. 1989) (en banc) (holding that the statute of limitations for § 1983 claims in Ohio is two years). Plaintiff's temporary detail away from the FTA is hardly the "critical" or "crucial factual question" Plaintiff misleads the Court to believe. *See* ECF #67 at 3; ECF #76 at 2.

### 2. There Is Not a Potential for Cross Claims

Plaintiff's argument that there is the potential for cross claims relates entirely to his claimed inconsistency between Kelly's first declaration and Eckart's testimony. *See* ECF # 67 at 4-5. As detailed above, Kelly's second declaration, which he signed prior to being represented by Defense counsel and after the benefit of refreshing his recollection with relevant documents, obliterated any such inconsistency or related cross-claim. Furthermore, neither Kelly nor

---

[6] The timing of events also supports Kelly's second declaration. Kelly detailed Plaintiff out of the FTA from February 24, 2014 to July 7, 2014. Ex. 2 at ¶¶ 8-9; ECF #46 at ¶ 111. Per Plaintiff, it was not until after his detail ended that Eckart announced in the Fall of 2014 that training would be outsourced to Tri-C. ECF #46 at ¶ 191.

Defendants are contemplating filing actions against one another.  *See* Ex. 7 at ¶ 15; Ex. 8 (Langhenry declaration) at ¶ 13; Ex. 9 (Eckart declaration) at ¶ 13; Ex. 10 (Votypka declaration) at ¶ 13; Ex. 11 (Chumita declaration) at ¶ 13.

### 3.  *Defendants and Kelly Do Not Have Incompatible Positions in Relation to Plaintiff*

Plaintiff has threatened Kelly repeatedly with litigation, including threats to name him as a defendant for some or all of the same claims pending against the current Defendants.  *See* ECF #49 at 7, fn. 12.  Astoundingly though, Plaintiff suggests Kelly is somehow aligned with him.  ECF #67 at 4.  In support of this absurdity, Plaintiff states that Kelly provided him a declaration (something he also did for Defendants).  Plaintiff also claims Kelly "shar[ed] documents" with the Chandra firm.  ECF #67 at 4.  This claim contradicts the declaration of the Chandra firm law clerk Brian Bardwell that Plaintiff attached to his Motion and which makes clear that Kelly did not provide Bardwell documents on the advice of a lawyer.  ECF 67-5 at ¶ 26.[7]

### 4.  *Defendants and Kelly Do Not Have Substantially Different Possibilities of Settlement*

As an initial matter, there are no pending claims against Kelly, so there is nothing for him to settle.  However, clearly frustrated by Kelly's second declaration, Plaintiff's counsel threatened Kelly under the criminal statute for perjury – Ohio Rev. Code § 2921.11.  *See* Ex. 7 at ¶ 17.  Kelly's clarification of his earlier declaration regarding Plaintiff's detail from the FTA, after the benefit of reviewing documents to refresh his recollection, does not constitute a knowingly false statement as contemplated by § 2921.11.

Plaintiff also makes a general claim that portions of Kelly's second declaration are false based on the audio recording Plaintiff has of one of Kelly's conversations with Chandra law clerk Bardwell.  *See* ECF #67 at 2, fn. 7.  Plaintiff has refused to produce said recording.  *See*

---

[7] Plaintiff never produced any documents he received from Kelly.  Ex. 3 at ¶ 4.

ECF #52; Ex. 7 at ¶ 4.  Moreover, the limited segment of the audio recording Plaintiff did produce does not establish that Kelly's second declaration is false.  *See* ECF #64 at 5-6. Additionally, Kelly and Bardwell spoke multiple times.  Ex. 7 at ¶ 16.  Based on representations from the Chandra firm, a recording was not made regarding each of those conversations.  Ex. 3 at ¶ 5.  Hence, there is no way to confirm what was said during the unrecorded conversations.

Plaintiff's threats of litigation against Kelly ring hollow.  Plaintiff admits that Kelly's decisions were not retaliatory or harassing, so any attempt to add Kelly as a Defendant to this case would be an abuse of process.[8]  Plaintiff also cannot bring a civil claim for perjury.  Plaintiff has not cited a single case in which an Ohio Court has allowed a civil claim for perjury.

Under Ohio law, "[i]t is well established that claims of perjury, subornation of perjury, and conspiracy to commit perjury, although punishable under criminal statutes, may not form the basis of a civil lawsuit." *Adams v. Karl*, No. 2:13-cv-894, 2014 U.S. Dist. LEXIS 119032, at *18 (S.D. Ohio Aug. 26, 2014) (quoting *Whelan v. Vanderwist*, No. 2010-G-2999, 2011 Ohio App. LEXIS 5662, 2011-Ohio-6844, at ¶ 27 (11th Dist. Dec. 30, 2011)); *see also Slayton v. Wells Fargo Bank, NA*, No. 2:12-CV-00283, 2013 U.S. Dist. LEXIS 29918, at *16 (Mar. 5, 2013) (quoting *Anderson v. Smith*, 196 Ohio App. 3d 540, 545 (10th Dist. 2011) (quotations omitted)) (under Ohio law, "there is a very well established rule that no action lies to recover damages caused by perjury, false swearing, subornation of perjury, or an attempt to suborn perjury . . . regardless of whether the perjurer was a party to, or a witness in, the action or proceedings").

The Ohio Supreme Court's subsequent decision in *Jacobson v. Kaforey*, 149 Ohio St. 3d 398, 75 N.E.2d 203 (Ohio 2016), which held that Ohio Rev. Code § 2307.60 allows "a civil

_____

[8] Practically, adding Kelly as a Defendant to this matter would require the Court to allow Plaintiff to file his pending Third Amended Complaint (nearly a year and a half after he filed his original Complaint) and then to file a Fourth Amended Complaint.  Adding Kelly as a Defendant also would require the Court to amend the case schedule to reopen discovery and reset the dispositive motion deadline (Defendants filed their Motion for Summary Judgment on March 9, 2018) for which there is no good cause to do so, as required by Civil Rule 16.

action for damages caused by criminal acts, unless otherwise prohibited by law", does not establish a civil cause of action for perjury for two reasons.  First, Kelly has not been convicted of perjury (*see* Ex. 7 at ¶ 17), and this Court has repeatedly held recovery under § 2307.60 "depends on the existence of a criminal conviction." *Ortiz v. Kazimer*, No. 1:11 CV 01521, 2015 U.S. Dist. LEXIS 38496, *34-35 (N.D. Ohio Mar. 26, 2015); *Jane v. Patterson*, No. 1:16 CV 2195, 2017 U.S. Dist. LEXIS 55952, *10 (N.D. Ohio Apr. 12, 2017).  Second, *Jacobson* states that a claim for civil recovery for a criminal act under § 2307.60 is permitted, "unless otherwise prohibited by law."  For thirty years, the Supreme Court of Ohio has taken the position that "allegations constituting perjury, subornation of perjury, and conspiracy to commit perjury, all of which are punishable under the criminal statutes…, ***for public policy reasons***, may not be the basis of a civil lawsuit." *Costell v. Toledo Hosp.*, 38 Ohio St. 3d 221, 527 N.E.2d 858, 860 (Ohio 1988) (emphasis added).  Furthermore, the witness-immunity doctrine bars a civil perjury claim against Kelly based on either of his declarations. *See Dale v. Selene Fin. LP*, No. 3:15CV1762, 2016 U.S. LEXIS 39474, at *26-27 (N.D. Ohio Mar. 25, 2016).

Try as Plaintiff might, he cannot manufacture a claim against Kelly, let alone substantially different possibilities of settling between Defendants and Kelly.  The non-existence of a civil claim for perjury demonstrates that Plaintiff's counsel's threats against Kelly for perjury is an improper attempt to obtain an advantage in this case by threatening criminal action.[9]

Despite Plaintiff's shotgun approach, he has not identified a single material conflict limitation.  There is no difference in interests between any of Defense counsel's clients, let alone a difference in interests that would materially interfere with Defense counsel's independent professional judgment. *See*  Rule 1.7, cmt. 14.  Given the lack of a conflict of interest, the Court need not continue its analysis and should deny Plaintiff's Motion for this reason.

---

[9] This type of threat is a violation of Rule 1.2(e).

## II.    ALL CLIENTS CONSENTED TO ANY POTENTIAL CONFLICT

Even if a conflict of interest exists, Rule 1.7(b) allows Defense counsel to continue their representation of Defendants and Kelly, so long as: Defense counsel can provide competent and diligent representation to all parties (they can); all parties consented to the conflict (they did); and, Defense counsel's representation is not prohibited by law (it is not) and would not involve the assertion of a claim by one client against another in the same proceeding (it does not).

### A.    <u>Defense Counsel Can Provide Competent and Diligent Representation</u>

Plaintiff's lead attack on Defense counsel's ability to represent both the interests of Defendants and Kelly is his false conclusion that Kelly's explanation for Plaintiff's temporary detail away from the FTA differs from Eckart's explanation.  *See* ECF #67 at 7-9.[10]  As explained above, there is no such conflict.  Kelly's second declaration aligns with Eckart's testimony.  Besides, Plaintiff's detail is immaterial to his claims and certainly does not go "to the heart of the matter" as Plaintiff grossly exaggerates.  ECF #67 at 11.[11]

In a continued disregard for Kelly's second declaration, Plaintiff also attempts to use this "conflict" to suggest that Defense counsel will need to pick between Kelly and Eckart (or vindicate one and not the other, as Plaintiff frames it) and that doing so will require the disclosure of confidential information.  ECF #67 at 10-11.  However, the two are aligned and all parties have consented to the exchange of information.  *See* Ex. 7 at ¶ 13; Ex. 8 at ¶ 11; Ex. 9 at ¶ 11; Ex. 10 at ¶ 11; Ex. 11 at ¶ 11.

Likewise, Plaintiff's shifting blame argument and reliance on *Johnson v. Clark Gin Serv., Inc.* is flawed.  While Kelly was employed by the City and acting within the course and scope of

---

[10] Plaintiff repeatedly claims Kelly accused Eckart of lying or perjury (ECF #67 at 7-8), but Kelly made no such accusation in either of his declarations.  *See* Ex. 1 and Ex. 2.

[11] Also immaterial to Plaintiff's claims are Kelly's comments about Eckart, Director McGrath, and Mayor Jackson none of which addresses Plaintiff's retaliation claims.  Furthermore, these statements do not create an "antagonistic" or adverse relationship between Kelly and these individuals as Plaintiff suggests.  *See* ECF #67 at 6.

his employment, his acts and omissions were the City's acts and omissions (i.e., Kelly and the City are one in the same).  As such, whether Defendants refer to a decision Kelly made as his decision or the City's decision is a distinction without a difference.[12]  Plaintiff's argument that the City should name Kelly as a third-party defendant and seek indemnity from him is puzzling (ECF #67 at 12), particularly where Ohio Rev. Code § 2744.07 requires the City to indemnify Kelly in certain circumstances.

After Plaintiff's production of Kelly's first declaration, the City issued Kelly a subpoena seeking documents relevant to this case on October 13, 2017.  Ex. 3 at ¶ 6.  In compliance with the subpoena, Kelly provided documents on December 8, 2017, and, in turn, the City produced those documents to Plaintiff.  Ex. 3 at ¶ 6.[13]

Plaintiff's hypothetical litigation regarding this subpoena is absurd (*see* ECF #67 at 9-10) – Kelly complied with the subpoena months ago and any motion to quash by Kelly would be untimely under Civil Rule 45.  Furthermore, whether based on this subpoena or any other conduct to date, the parties do not intend to bring an action against one another.  *See* Ex. 7 at ¶ 15; Ex. 8 at ¶ 13; Ex. 9 at ¶ 13; Ex. 10 at ¶ 13; Ex. 11 at ¶ 13.  Finally, Plaintiff's argument that Defense counsel cannot diligently represent Defendants and Kelly due to their different settlement positions is unsupported by the record.  *See* Section I.A.4. above.

In sum, Defense counsel is capable of providing competent and diligent representation to Defendants and Kelly.

---

[12] For these same reasons, Plaintiff's reliance on *Holloway v. Arkansas*, 435 U.S. 475 (1978) and *Wheat v. U.S.*, 486 U.S. 153 (1988) also is misguided.  These cases also are criminal cases that require a more stringent application of Rule 1.7.  *See* Rule 1.7, cmt. 15 ("The potential for conflict of interest in representing multiple defendants in a criminal matter is so grave that ordinarily a lawyer should decline to represent more than one co-defendant").

[13] In another misrepresentation to the Court, Plaintiff suggests he does not have a copy of the binder Kelly kept related to the administrative charges against Plaintiff and Pat Corrigan.  *See* ECF #67 at 9.  In actuality, Defendants produced this binder on December 8, 2017, and Mr. Chandra acknowledged as much six and a half hours before he filed the instant Motion.  *See* Ex. 3 at ¶ 6 (acknowledgement was at 5:05 p.m. and filing was at 11:39 p.m.).

**B.    Defendants and Kelly Provided Informed Consent, Confirmed in Writing, to Defense Counsel's Continued Representation**

This is not Plaintiff's first attempt to gain a tactical advantage by seeking the disqualification of counsel.   In the *Klingeman v. DeChristofaro* case, Plaintiff sought to disqualify Defense counsel from representing two individual defendants (Homlitas and Ainsley) that Plaintiff claimed previously offered testimony contradictory to another individual defendant (DeChristofaro).  *See* Ex. 12.  Unlike here though: (1) the "contradictory testimony" related to Plaintiff's separation, which was material to her claim that Defendants conspired to terminate her employment and (2) there was not an intervening declaration that eliminated any possible contradiction in the testimony.

Even in the more egregious set of facts presented in *Klingeman*, the Court ultimately denied the plaintiff's motion to disqualify, because all parties consented to the conflict. *Klingeman v. DeChristofaro*, No. 4:09CV00528, 2011 U.S. Dist. LEXIS 115561, at *13-15 (N.D. Ohio Oct. 6, 2011).  In reaching this conclusion, the Court reasoned:

> Concurrent representation of parties whose interests have an obvious potential to diverge at some future point is permissible where the client fully appreciates that such a potential exists and the Court and parties remain vigilant in monitoring that potential throughout the litigation.

*Id*. at *14 (*citing Gordon v. Norman*, 788 F.2d 1194, 1198 (6th Cir. 1986)).

Here, all Defendants and Kelly have made knowing written waivers of any possible conflict, including those raised by Plaintiff.    *See* Ex. 7 at ¶¶ 6-8; Ex. 8 at ¶¶ 4-8; Ex. 9 at ¶¶ 4-6; Ex. 10 at ¶¶ 4-6; Ex. 11 at ¶¶ 4-6.  As Defense counsel's representation is not prohibited by law and its representation would not involve the assertion of a claim by one client against another in the same proceeding, these waivers are appropriate.  *See* Rule 1.7(c).  This Court should reach the same conclusion as the *Klingeman* court and deny Plaintiff's Motion for this second reason.

## III.    PLAINTIFF DOES NOT HAVE A CONFLICT OR STANDING

That Plaintiff based his Motion on a conflict that is not his own underscores the tactical nature of his Motion. *See Dadante*, 2009 U.S. Dist. LEXIS 76425, at *30 (courts generally disfavor motions to disqualify that are tactically motivated). Plaintiff's Motion is a "technique of harassment" that the Court should guard against. *Id*. (quoting *Moses v. Sterling Commerce (Am.), Inc.*, 122 Fed. Appx. 177, 183 (6th Cir. Ohio 2005)).

Plaintiff must demonstrate he has standing to raise the issues in his Motion. *See O'Connor v. Jones*, 946 F.2d 1395, 1400 (8th Cir.1991) (affirming denial of motion to disqualify because moving party lacked standing). He must satisfy constitutional and prudential requirements to establish individual standing (*Warth v. Seldin*, 422 U.S. 490, 498 (1975)), but he can satisfy neither.

To meet the minimum constitutional standing requirements, Plaintiff must prove:

First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . traceable to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir.1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and footnote omitted)). Plaintiff also must meet the prudential requirements for standing:

First, a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Second, a plaintiff must present a claim that is "more than a generalized grievance." Finally, the complaint must "fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'"

*Smith v. Jefferson Cty.*, 641 F.3d 197, 206 (6th Cir. 2011) (internal citations omitted).

The majority view is that, "[a]s a general rule, courts do not disqualify an attorney on the grounds of conflict of interest *unless the former client moves for disqualification*."  *In re Yarn Processing Patent Validity Litigation v. Leesona Corp.*, 530 F.2d 83, 88 (5th Cir. 1976) (collecting cases) (emphasis added).   As the Fifth Circuit explained:

> To allow an unauthorized surrogate to champion the rights of the former client would allow that surrogate to *use the conflict rules for his own purposes where a genuine conflict might not really exist*. It would place in the hands of the unauthorized surrogate *powerful presumptions which are inappropriate in his hands*. Courts do not generally examine the motives of a moving party in a disqualification motion. Once the preliminary showing is made by the former client, the motion must be granted regardless of whether the former client gains an advantage at the expense of his adversary. *We are reluctant to extend this where the party receiving such an advantage has no right of his own which is invaded.*

*Id.* at 90 (internal citations omitted) (emphasis added); *see also In re Sandahl*, 980 F.2d 1118, 1121-22 (7th Cir. 1992) (granting writ of mandamus and vacating the district court's order to disqualify defense counsel because the plaintiff was not a former client of defense counsel and thus did not have standing to bring the motion to disqualify).

The Sixth Circuit has not addressed squarely whether a party has standing to seek the disqualification of opposing counsel based on an alleged conflict of interest absent a past attorney-client relationship between the moving party and the attorney it seeks to disqualify. *See The White Family Cos., Inc. v. Dayton Title Agency, Inc.*, 284 B.R. 238, 245 (S.D. Ohio 2002) (holding that, *in absence of controlling Sixth Circuit precedent to the contrary*, appellants did not have standing to seek disqualification of opposing counsel, because there was no past attorney-client relationship).  In *Wilson v. Morgan*, the Sixth Circuit affirmed the district court's denial of a plaintiff's motion to disqualify defense counsel based on an alleged concurrent conflict of interest.  477 F.3d 326, 346 (6th Cir. 2007).  In a footnote, the Court acknowledged that Defendants had opposed the motion "in part by arguing that plaintiffs lacked standing to

-14-

move for disqualification of opposing counsel based on their lack of interest in the outcome of the motion, and the probable reason for the motion was harassment." *Id*. at 346, fn.8.

The district court in *Wilson v. Morgan* concluded the plaintiffs had standing, but neither party appealed that ruling and therefore the issue was not before the Sixth Circuit. *Id*. The Sixth Circuit did not directly address the standing issue because, even assuming standing *arguendo*, the district court properly denied the motion on its merits because the plaintiffs did "not provide[] any indication of how they were adversely affected by any actual conflict of interest which prejudiced their right to a fair trial." *Id*. at 346.

While there is no Sixth Circuit case law directly on point, the decisions in this Circuit strongly suggest Plaintiff has no standing to challenge a conflict that is not his own. In *Dana Corp. v. Blue Cross & Blue Shield Mut*., 900 F.2d 882, 889 (6th Cir.1990), the Court affirmed the denial of a plaintiff's motion to disqualify defense counsel applying a three-part 'substantial relationship' test for determining whether disqualification based on a conflict is warranted. *Id.*

The first prong of this test requires that an "attorney-client relationship existed between the *party* seeking disqualification and the attorney it seeks to disqualify." *Id*. Although the plaintiff in *Dana* argued (unsuccessfully) that a prior attorney-client relationship existed, the *Dana* test implies that a party has no standing to seek to disqualify opposing counsel on the basis of an alleged conflict of interest that does not involve the moving party.

Relying on *Dana,* district courts in this Circuit have concluded that the Sixth Circuit would follow the majority view: that a non-client does not have standing to disqualify opposing counsel for a conflict that does not involve the moving party. *See Winchester v. Edn. Mgt. Corp*., No. 5:10-CV-00012-TBR, 2010 U.S. Dist. LEXIS 60660, at *6 (W.D. Ky. June 18, 2010); *accord*, *Lani ex rel. Schiller Kessler & Gomez, PLLC v. Schiller Kessler & Gomez, PLC*,

No. 3:16-CV-00018-CRS, 2017 U.S. Dist. LEXIS 33769, at *12 (W.D. Ky. Mar. 9, 2017); *see also Greene v. Indep. Pilots Assn*., No. 3:14-CV-00628-TBR, 2016 U.S. Dist. LEXIS 160901, at *17 (W.D. Ky. Nov. 21, 2016) (applying *Dana* and rejecting motion to disqualify opposing counsel based on an alleged concurrent conflict of interest, where no attorney-client relationship had existed with the moving party and noting that Kentucky's duty of competent representation flows to the client and not to other parties in the litigation); *Bialik v. Raddatz*, No. 1:12-cv-522, 2012 U.S. Dist. LEXIS 98953, at *5-6 (W.D. Mich. June 6, 2012) (rejecting motion to disqualify based on alleged conflict of interest because moving party had no attorney-client relationship).

Unpublished Sixth Circuit decisions bolster these district courts' conclusions.   In *Willis v. First Bank National Association*, the Sixth Circuit denied a plaintiff's motion to disqualify counsel, stating, "plaintiff's standing to assert opposing counsel's alleged conflict of interest is questionable at best, and the grounds asserted are wholly unsubstantiated."  916 F.2d 714, at *1 [published in full-text format at 1990 U.S. App. LEXIS 18204] (6th Cir. 1990) (unpublished). Similarly, in *Frey v. Prior*, the Sixth Circuit rejected a plaintiff's complaint in which he alleged that defendants -- an attorney and his law firm -- had improperly sued him in two prior lawsuits. No. 91-3567, 1991 U.S. App. LEXIS 28681, at *1-2 (6th Cir. Nov. 27, 1991).  The *Frey* decision cited to *Yarn* and to *Dana* for the proposition that "[plaintiff] lacks standing to assert a claim of conflict of interest against either [the attorney] or [the firm] because no attorney client relationship existed between [plaintiff] and [the attorney or firm]."  *Id*. at *3.

Only a minority of courts have permitted non-clients to bring a motion to disqualify. *FMC Technologies, Inc. v. Edwards*, 420 F.Supp.2d 1153, 1156 (W.D. Wash. 2006) (*citing Colyer v. Smith*, 50 F. Supp. 2d 966, 969 (C.D. Cal. 1999).   The Fifth Circuit in *Yarn* acknowledged that some narrow exceptions might permit non-client standing where an

"unethical change of sides was manifest and glaring" or an ethical violation was "open and obvious," confronting the court with a "plain duty to act." *Yarn* 530 F.2d at 89. Even where courts entertain such motions from non-clients, the non-client must still "establish a personal stake in the motion to disqualify sufficient to satisfy the irreducible constitutional minimum of Article III." *Colyer v. Smith*, 50 F.Supp.2d 966, 971 (C.D. Cal.1999) (internal citations omitted).

While the Court has inherent power to disqualify an attorney (*see Dadante*, 2009 U.S. Dist. LEXIS 76425, at *28 (quoting *In re BellSouth Corp.*, 334 F.3d 941, 951 (11th Cir. 2003))), Plaintiff's lack of standing cannot be overlooked. Plaintiff lacks constitutional standing, because he cannot demonstrate an "injury in fact." He alleges no concrete harm, nor an imminent threat thereof, from Defense counsel's representation of its clients. If anything, Plaintiff implies that the alleged conflicts inure to Plaintiff's benefit because of Defense counsel's *Hobson's choice* between rehabilitating the testimony of Eckart and Kelly. ECF #67 at 7-8. As explained above, Kelly, after refreshing his recollection about events occurring more than three and a half years prior, squared the lone discrepancy between his first declaration (drafted by Plaintiff's counsel) and Eckart's testimony.

Plaintiff's argument is a thinly veiled attempt to 'flip' Kelly's loyalties. The suggestion that Defense counsel's alleged conflict somehow impedes Plaintiff's ability to settle its claims against Kelly is too remote and attenuated to satisfy the constitutional minimums for a concrete, particularized injury. Moreover, Plaintiff has no pending claims against Kelly and admits Kelly never retaliated against him. Plaintiff 199:21-200:7.

Plaintiff lacks prudential standing to the extent he presents himself as a vindicator of the integrity of the Court. *See Dawson v. City of Bartlesville*, 901 F. Supp. 314, 316 (N.D. Okl. 1995) (denying plaintiff's motion to disqualify because plaintiff was not a former client of

opposing counsel). This notion is disingenuous in light of Plaintiff's own counsel's misconduct. *See* ECF #43, #64. In *Dawson*, the Court noted that a mere invocation of Rule 1.7 "does not alone provide standing for an antagonist to seek to disqualify opposing counsel. There must be some other ground for third-party standing." Plaintiff lacks third-party standing to vindicate the interests of Kelly or any of the Defendants.

Under the view espoused by the majority of courts, which Sixth Circuit precedent strongly supports, Plaintiff has no standing to file a motion to disqualify Defense counsel on grounds of an alleged conflict of interest.

## IV.   PLAINTIFF'S REQUESTED REMEDY IS TOO SEVERE

Based on Defense counsel's recent representation of Kelly, a witness in this case and not a Defendant, Plaintiff seeks to disqualify Defense counsel from representing both Kelly and all Defendants in this case. Even if there were a conflict to which Defendants and Kelly could not and did not consent (there is not), Plaintiff's requested remedy of disqualifying Defense counsel as to all Defendants and Kelly is too severe a sanction.

Conflicts of interest, in particular, can arise quickly and thus courts are "less likely to order disqualification and more likely to use other, more tailored measures to protect the interests of the public and the parties" in such situations. *Gould*, 738 F.Supp. at 1126. This Court has rejected a per se approach to disqualifying counsel based on conflicts between current clients. *See Cliffs Sales Co. v. Am. Steamship Co*., No. 1:07-CV-485, 2007 U.S. Dist. LEXIS 74342, at *13 (N.D. Ohio Oct. 4, 2007); *see also Garland v. Ford Motor Co*., No. 2:12-00121, 2015 U.S. Dist. LEXIS 38505, at *18 (M.D. Tenn. Mar. 26, 2015) (no disqualification of firm, despite concurrent representation that was in violation of Rule 1.7, because such a "severe penalty" was

not warranted, as counsel showed no intention to "game the system," and the imposition of such an order at a late stage of the litigation would be a "draconian sanction" to the innocent client).

In a situation similar to that presented here, the U.S. District Court for the S.D. of Ohio rejected a motion to disqualify premised on allegations of a *potential* for a conflict of interest between clients. *In re Dayco Corp. Derivative Secs. Litigation*, 102 F.R.D. 624 (S.D. Ohio 1984). *In re Dayco Corp.* involved plaintiff stockholders bringing an individual action against a defendant corporation, its directors, and an employee. The defendant corporation moved to disqualify plaintiff's counsel, alleging the following conflict of interest: plaintiff's counsel simultaneously represented the stockholders in their derivative action (i.e., to recover on behalf of the corporation) and also represented an employee who sued the same corporation in a separate action. *Id.* at 626. Plaintiff's counsel withdrew from representing the employee, but the court still reviewed the motion to disqualify based on the *successive* representation (former client) ethical principles that Plaintiff asserts here. *Id.* at 627.

The defendant corporation argued that the *potential* conflict had *ripened* into an actual one, because the employee "was an important source of information for the allegations of corporate misconduct . . ., and *could* be a witness for Plaintiff at the federal trial." *Id.* at 631 (emphasis added). The court disagreed, as it reasoned the "asserted conflict of interest is not so apparent so as to justify, at least at this time, disqualification. . . ." *Id.* The court specifically cautioned that "[c]ourts are, and should be, reluctant to premise disqualification on the complaining party having initiated the litigation (i.e., the counterclaim in the [employee's] suit) which allegedly forms the conflict of interest." *Id.* The court denied the motion based on the "lack of inherent conflict . . . and that the circumstances of this particular case do not compel disqualification." *Id.* at 632; *see also Carlsen v. Thomas*, 159 F.R.D. 661, 671 (E.D. Ky.1994)

-19-

(quoting *Freeman v. Chicago  Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)) ("for this Court to sever the attorney-client relationship based on what *might* occur in the course of litigation is too severe a sanction.  In the words of one court, 'disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary'") (emphasis in original).

Plaintiff filed his original Complaint on October 31, 2016 (ECF #1), with the undersigned counsel first appearing on Defendants behalf shortly thereafter (*see* ECF #4).  Plaintiff's belated threat in February 2018 to bring Kelly into this lawsuit (*see* ECF #49 at 7, fn. 12) caused his retention of Defense counsel.  Moreover, Plaintiff's repeated threat to bring an action for perjury is baseless, as Ohio law precludes a civil claim for perjury.  As in *Dayco*, the Court should be leery of Plaintiff, as the party demanding disqualification based on a conflict he is trying to create, and should have the same reluctance to disqualify counsel that the *Dayco* court had.

Even if this Court were to find a conflict, at worst, the Court should permit the undersigned counsel to file a notice of whom they will continue to represent.  Prior to all parties consenting to any possible conflict, this was the remedy ordered by Magistrate Judge Baughman in the *Klingeman* case.  *See* Ex. 13 at 28.

## CONCLUSION

For these reasons, the Court should deny Plaintiff's Motion to Disqualify.  At most, the Court should allow Defense counsel to withdraw as counsel for either Defendants or Kelly.

Respectfully submitted,

*s/ David R. Vance*
**Jon M. Dileno (#0040836)**
 jmd@zrlaw.com
**David R. Vance (#0083842)**
 drv@zrlaw.com
**Zashin & Rich Co., L.P.A.**

-20-

950 Main Avenue, 4th Floor
Cleveland, OH  44113
T:  (216) 696-4441
F:  (216) 696-1618

**City of Cleveland Department of Law**
**Stacey M. Pellom (#0095292)**
  spellom2@city.cleveland.oh.us
601 Lakeside Avenue, Room 106
Cleveland, OH  44114
T:  (216) 664-2800
F:  (216) 664-2663

*Attorneys for Defendants*


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 10, 2018 the foregoing document was filed via the Court's

electronic filing system and will be served on all parties via that system.

*s/ David R. Vance*
**Jon M. Dileno (#0040836)**
  jmd@zrlaw.com
**David R. Vance (#0083842)**
  drv@zrlaw.com
**Zashin & Rich Co., L.P.A.**
950 Main Avenue, 4th Floor
Cleveland, OH  44113
T:  (216) 696-4441
F:  (216) 696-1618

**Stacey M. Pellom (#0095292)**
  spellom2@city.cleveland.oh.us
**City of Cleveland Department of Law**
601 Lakeside Avenue, Room 106
Cleveland, OH  44114
T:  (216) 664-2800
F:  (216) 664-2663

*Attorneys for Defendants*