IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SEAN DeCRANE, | ) | CASE NO. 1:16 CV 2647 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| EDWARD ECKART, *et al.*, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) | |

## Introduction

Before me by referral[1] in this civil rights action by Sean DeCrane against multiple defendants[2] is a motion by all defendants to disqualify The Chandra Law Firm LLC from representing DeCrane and to suppress declarations allegedly improperly obtained by a representative of that firm.[3] That motion has been opposed by DeCrane,[4] and the defendants have replied to that opposition.[5] With prior consent,[6] DeCrane has filed a sur-reply.[7]

For the reasons that follow, I will recommend denying the motion to disqualify and denying the motion to suppress without prejudice, as is more fully set forth below.

---

[1] ECF # 51.

[2] ECF ##1, 46. A motion to file a third amended complaint is pending. ECF # 49.

[3] ECF # 43.

[4] ECF # 56.

[5] ECF # 64.

[6] Judicial consent was granted by non-document order entered March 26, 2018.

[7] ECF # 74.

## Facts

The defendants' motion to disqualify the Chandra firm essentially concerns claims that, in violation of the rules of professional conduct:

(1) the Chandra firm improperly discussed the current case with the former fire chief and other officials of the City of Cleveland, and that

(2) the Chandra firm improperly used the services of one of its law clerks, Brian Bardwell, who formerly interned with the City of Cleveland where he was allegedly privy to privileged and confidential information in possession of the City that is relevant to this case.[8]

DeCrane, in response, contends that the Chandra firm's contacts with current and former employees was proper because:

(1) Bardwell's interview with former chief Kelley was under the direction of a Chandra firm partner and specifically included a warning to Kelley not to discuss privileged information;

(2) contact with unionized employees who are represents by union attorneys does not require prior notice to the City; and

(3) the employees contacted are not managers with authority to bind the City in the matter at issue, or whose acts or omissions gave rise to the matter.[9]

---

[8] ECF # 43 at 1-2.

[9] ECF # 56 at 11-12.

2

Moreover, DeCrane argues that because the Chandra law clerk is a non-attorney, the City may not merely assume that Bardwell was exposed to relevant confidential information during his internship with the City, but must credible evidence of such exposure.[10]  In that regard, DeCrane argues that the Bardwell's internship did not involve contact with any information about the present matter - which was filed after the law clerk's internship with the City had ended.[11]

**A.      Standards of Review**

*1.      Motions to disqualify*

Circuit Judge Kathleen M. O'Malley, while a District Judge of this Court, stated in *Gordon v. Dadante* that the power to disqualify an attorney is an inherent power of the court, rooted in the court's "concern for the integrity of the judiciary and the public's perception thereof."[12]  Because the power to disqualify counsel is grounded in this fundamental concern for the court's own integrity, "a district court is obliged to consider unethical conduct by an attorney in connection with any proceeding before it."[13]  Thus, a party to litigation pending before the court may properly bring a motion to disqualify counsel,[14] but, because what is

---

[10]  *Id*. at 13-14.

[11]  *Id*. at 14.

[12]  *Gordon v. Dadante*, No. 1:05 CV 2726, 2009 WL 2732827, at *5 (N.D. Ohio Aug. 26, 2009) (quoting *In re BellSouth Corp*., 334 F.3d 941, 951 (11th Cir. 2003)).

[13]  *Kitchen v. Aristech Chem.*, 769 F. Supp. 254, 256 (S.D. Ohio 1991).

[14]  *Id.* (citation omitted).

being fundamentally protected is the integrity of the court, the court may even disqualify an attorney *sua sponte*.[15]

That said, courts also must be mindful that "the ability to deny one's opponent the services of his chosen counsel is a potent weapon."[16]  As Judge O'Malley explained in *Gordon*, these two areas of concern must be simultaneously borne in mind:

> On the one hand, because a motion to disqualify is often tactically motivated, and can be disruptive to the litigation process, it is a drastic measure that is generally disfavored... At the same time, the paramount concern must be the preservation of public trust in both the scrupulous administration of justice and the integrity of the bar.[17]

> "[d]istrict courts have wide discretion in determining whether an 'actual or potential conflict of interest' warrants disqualification."[18]

In addressing these factors, it is clear that although the court must guard against the misuse of a motion to disqualify as a "technique of harassment,"[19] a court also should not weigh the issues raised by a motion to disqualify with "hairsplitting nicety" but, in the proper exercise of its supervisory power over members of the bar, with a view toward "preventing the appearance of impropriety."[20] Stated differently, even though disqualification is

---

[15]  *Id.* (citation omitted).

[16]  *Id.* (citation omitted).

[17]  *Gordon*, 2009 WL 2732827, at *6

[18]  *Id.*, at *5 (quoting *United States v. Mays*, 69 F.3d 116, 121 (6th Cir. 1995)).

[19]  *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 738 F. Supp. 1121, 1125 (N.D. Ohio 1990).

[20]  *Gordon*, 2009 WL 2732827, at *6 (quoting *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 750 (D. Md. 1997)).

disfavored and a party's right to the counsel it chooses is important, these concerns are "secondary in importance to preserving the integrity of the judicial process, maintaining the public confidence in the legal system, and enforcing the ethical standards of professional conduct."[21]  Therefore, any doubts as to the existence of an asserted conflict of interest must be resolved in favor of disqualification.[22]

District courts have wide discretion in determining whether an actual or potential conflict of interest exists in pending litigation that warrants disqualification.[23]  Accordingly, "[a]n order disqualifying or refusing to disqualify counsel will not be disturbed [on appeal] if the record reveals any sound basis for the district court's action."[24]  Nevertheless, if disqualification is before the district court on a motion, the "moving party bears the burden of establishing the need for disqualification."[25]

In addition, as the Sixth Circuit has stated, an evidentiary hearing is not required on all motions to disqualify.[26]  Rather, a decision on a motion to disqualify is adequately founded without an evidentiary hearing if the court's factual inquiry into the circumstances

---

[21] *Gordon*, 2009 WL 2732827, at *6 (quoting *Dauro v. Allstate Ins. Co.*, 2003 WL 22225579 (S.D. Miss. Sept. 17, 2003) (citation omitted)).

[22] *Gordon*, 2009 WL 2732827, at *6 (citations omitted).

[23] *Gould*, 738 F. Supp. at 1124.

[24] *Gordon*, 2009 WL 2732827, at *5 (quoting *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983)).

[25] *Gordon*, 2009 WL 2732827, at *5 (quoting *Nilavar v. Mercy Health Sys.*, 143 F. Supp. 2d 909, 912 (S.D. Ohio 2001).

[26] *General Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704, 710 (6th Cir. 1982).

5

of the motion is conducted in a manner that will allow appellate review, such as when such an inquiry is conducted using affidavits and documents that would be acceptable under a motion for summary judgment and if the district court does not undertake to decide disputed issues of material fact.[27]

## 2. *Attorney conflicts of interest*

As the Supreme Court has stated, the ethical standards governing the professional conduct of attorneys before a federal court are matters of federal law.[28]  In that regard, Local Civil Rule 83.7(a) of the United Stated District Court, Northern District of Ohio, provides that attorneys practicing before this Court "are bound by the ethical standards of the Ohio Rules of Professional Conduct adopted by the Supreme Court of the State of Ohio, so far as they are not inconsistent with federal law."[29]  In interpreting those rules, this Court is guided first by federal case law, and then by the American Bar Association's comments to its Model Rules of Professional Conduct, and finally by consideration of the policies underlying the rule in question.[30]

Because the present motion to disqualify asserts the existence of a conflict of interest

---

[27] *Id.*

[28] *Kitchen*, 769 F. Supp. at 258 (citing *In re Snyder*, 472 U.S. 634, 645 n.6 (1985)).

[29]  The Local Rules' grounding of its rules for attorney conduct in Ohio's Standards of Professional Conduct is consistent with Sixth Circuit teaching.  As was noted in *Shaw v. London Carrier, Inc.*, No. 1:08 CV 401, 2009 WL 4261168, at *3 (W.D. Mich. Nov. 24, 2009), the Sixth Circuit formerly relied on common law principles to decide issues of attorney disqualification but now relies on the applicable state ethics code, which ensures greater uniformity and predictability.

[30] *Kitchen*, 769 F. Supp. at 258 (citation omitted).

as to current defense counsel and its present clients, this Court must first look to Ohio Rule of Professional Conduct 1.7.  That rule states as follows:

   (a)     A lawyer's acceptance or continuation of representation of a client creates a conflict of interest if either of the following applies:

      (1)    the representation of that client will be directly adverse to another current client;

      (2)    there is a substantial risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by the lawyer's own personal interests.

   (b)     A lawyer shall not accept or continue the representation of a client if a conflict of interest would be created pursuant to division (a) of this rule, unless all of the following apply:

      (1)    the lawyer will be able to provide competent and diligent representation to each affected client;

      (2)    each affected client gives informed consent, confirmed in writing;

      (3)    the representation is not precluded by division © of this rule.

   (c)     Even if each affected client consents, the lawyer shall not accept or continue the representation if either of the following applies:

      (1)    the representation is prohibited by law;

      (2)    the representation would involve the assertion of a claim by one client against another client in the same proceeding.[31]

In addition to the text of the rule itself, Ohio's Official Comment 38 to that rule states

---

[31] *See*, *Gordon*, 2009 WL 2732827, at *7 (quoting Ohio Rule of Professional Conduct 1.7).

as follows:

> Division (c)(2) does not address all nonconsentable conflicts.  Some conflicts are nonconsentable because a lawyer cannot represent both clients competently and diligently or both clients cannot give informed consent.[32]

As noted, the interpretation and application of this rule is a matter of federal law.  In this District, it requires the court to first consult federal case law as a guide.  In that respect, Judge O'Malley, in the analogous case of *Gordon*, stated that, in applying this rule, case law in this District provides that "courts should disqualify an attorney when it is not 'obvious to the court' that 'concurrent representation does not compromise the attorney's capability to fully represent each party's interest.'"[33]

## Analysis

Adjudicating the present motions may be done on the facts set forth in the record.  Consequently, and as permitted by the relevant authority cited above, no hearing is needed.

The major issues involved in the two motions are analyzed separately below.

## 1.    *Contact with former chief Kelley and current employees Szabo and Corrigan*

Audio recordings of some of Bardwell's interviews with former chief Kelley, as well as other fire division employees, exist; and partial transcripts have been released.[34]  Complete transcripts are not in the record because of claims of attorney work product, but DeCrane has

---

[32]  *Id.*

[33]  *Id.* (quoting *Coaker v. Geon Co.*, 890 F. Supp. 693, 695 (N.D. Ohio 1995) (citing the Ohio Disciplinary Code of Professional Responsibility § 5-105)).

[34]  See, ECF # 56 at 5, fn. 19.

stated the complete recordings could be available for *in camera* review.[35]

The transcripts provided show that Barwell specifically told Kelley that he should not discuss anything that he had discussed with city attorneys but was free to relate facts in the case, even when he had previously related those facts to city attorneys.[36]  Kelley acknowledged that he should not divulge privileged information.[37]

Kelley has furnished a declaration that Bardwell specifically asked him about his conversation with Jon Dileno, an outside attorney for the City.[38]  The defendants assert that such communications are privileged, and so Bardwell's asking Kelley about such conversations represent an ethical breach by Bardwell.[39]

But, it must be emphasized that any privilege in such a circumstance "extends only to communications and not to facts."[40]  The general rule is that counsel's communications with a former employee are no different from those with any other third party fact witness, with exceptions made for when the former employee retains a current connection or agency relationship with his former employer or when the present-day communication concerns a confidential matter that was "uniquely within the knowledge" of the former employee while

---

[35]  *Id.*

[36]  See, *id.* at 5-6 (quoting transcript).

[37]  *Id.* at 6 (quoting transcript).

[38]  ECF # 64 at 6.

[39]  *Id.*

[40]  *Infosystems v. Ceridian Corp.*, 197 F.R.D. 303, 306 (E.D. Mich. 2000)(internal quotation and citation omitted).

he was employed, such that counsel's communication with the former employee must be protected by privilege in order that meaningful fact-finding may occur.[41]  Finally, it is manifestly the burden of the party invoking privilege in this situation to show that its counsel's communication with the former employee differed "in some relevant way" from counsel's communication with any other third-party witness.[42]

On this record, the City has made no such showing concerning former Chief Kelley. Moreover, it is noted that Kelley himself, as stated above, acknowledged that he understood in talking to Bardwell that he was not supposed to reveal privileged communications to Bardwell.

The defendants also now contend that Bardwell's warning to Kelley about not discussing conversations with "city attorneys" was "muddled" and could have been misunderstood as only referring to employees of the City's law department and not its retained counsel.[43]  They maintain that two current city employees interviewed by Bardwell - current employees Battalion Chief Frank Szabo and Captain Patrick Corrigan - understood that Bardwell's admonition not to speak about conversations with "city attorneys" meant only conversations with employees of the law department and did not include outside counsel.[44]

---

[41]  *Id*.

[42]  *Id*.

[43]  ECF # 64 at 5.

[44]  *Id*. at 5-6, fn. 3.

10

Even granting that Szabo and Corrigan are correct in their recollections as to their impressions at that time of what Bardwell meant, and further assuming that an awkwardly worded admonition to not disclose conversations with "city attorneys" of itself is an ethical violation, a single violation of Rule 4.2 of the Ohio Rule of Professional Conduct, which prohibits *ex parte* contact and communication with a person represented by counsel, has been viewed as insufficient to impose harsh penalties such as quashing a later deposition of an improperly contacted employee.[45]  This is particularly so, as here, where there is no evidence that any violation by Bardwell was "willful."[46]  Rather, as *Hobart Corp.* suggests, any sanction would more appropriately take the form of excluding any improperly obtained testimony from trial.[47]

Inasmuch as no such testimony has now been identified, nor has the precise circumstances under which such statements were obtained been clearly identified, even the present motion to suppress improperly obtained statements cannot be adjudicated on the current record.

In addition, the defendants also argue that all contact with Szabo and the Corrigans was barred by Disciplinary Rule 7-104(A)(1) of the Code of Professional Responsibility, which prohibits contacts with a government employee who has "the authority to bind the

---

[45]  *Hobart Corp. v. Waste Management of Ohio, Inc.*, 2012 WL 996525, at * 6.

[46]  *Id*.

[47]  *Id*.; see also, *Insituform of North America, Inc. v. Midwest Pipeliners, Inc*., 139 F.R.D. 622, 624 (S.D. Ohio 1991).

government, to settle a litigation matter, or whose act of omission gave rise to the matter."[48]

Although the defendants assert that there is "little argument" that the actions of a fire captain

or a battalion chief do "bind the City,"[49]  there is no supporting evidence in the record for

that.  While clearly the actions of such officers are binding on subordinate officers and in

such cases may be said to bind the City, there is no evidence that these positions have the

authority to bind the government as far as settling litigation.  Indeed, as the Chandra firm

points out, this nexus with litigation settlement is crucial in defining the contours of the rule

at issue here.[50]  In short, there is no evidence these city employees themselves had the

authority to settle litigation involving the City, thus bringing them under the rubric set out

in the disciplinary rule.

No grounds exist for the disqualification of the Chandra firm for contacting these city

employees without prior notice to the defendants' attorneys.  I recommend denying the

motion to disqualify as to these allegations, and denying the motion to suppress without

prejudice as to the matter of any statements purportedly obtained because of confusion

concerning Bardwell's admonition, with such statements to be potentially re-examined later

if necessary.

---

[48]   *Johnson v. Ohio Dept. of Youth Services*, 231 F.Supp. 2d 690, 691 (N.D. Ohio 2002)(internal quotation and citation omitted).

[49]  See, ECF # 64 at 10.

[50]  See, The Ohio Supreme Court Board of Commissioners on Grievances and Discipline, Advisory Opinion 92-7, 1992 WL 739409, at * 4.

## 2.    *Bardwell's former city employment*

The Ohio Supreme Court in *Green v. Toledo Hospital*[51] set out a three part test for analyzing when a non-attorney may be disqualified:

(1) Is there a substantial relationship between the matter at issue and the matter of the non-attorney employee's former firm's representation?

(2) Did the moving party present credible evidence that the non-attorney employee was exposed to confidential information in his or her former employment relating to the matter at issue?

(3) If such evidence was presented, did the challenged attorney rebut the resulting presumption of disclosure with evidence either that (a) the employee had no contact with or knowledge of the related matter or (b) the new law firm erected and followed adequate and timely screens to rebut the evidence presented in prong (2) so as to avoid disqualification?[52]

Professional Conduct Rule 1.10, comment 4, notes that the general rule does not prohibit representation by a firm where the person prohibited from involvement is a non-lawyer, or when the conflict arose due to work done when a current lawyer was a law student.  In such cases, the rule states that the non-lawyer or former law student must be screened from personal participation in the matter at issue to avoid communication with other lawyers in the firm regarding confidential information.

---

[51] *Green v. Toledo Hospital*, 94 Ohio St. 3d 480 (2002).

[52] *Id*. at 484.

Here, the Chandra firm claims first that there is no "substantial relationship" as defined in *Green* between this case and Bardwell's city internship, or that Bardwell was exposed to any confidential information at that time.[53]  Moreover, the Chandra firm asserts that any conflicts Bardwell may have had cannot be imputed to it, and further that it had no obligation to inform attorneys for the defendants of its screening of Bardwell as to other cases he participated in at the city during his internship.[54]

The core of the defendants' argument here is that Bardwell's internship - which involved working with the log tracking public records requests - created a substantial relationship with this case.[55]  The defendants point to the fact that the log contained comments from city attorneys and discussions with outside counsel on the timeliness of the City's response to such requests.[56]

While it is not difficult to credit the City's position that internal debates on when and how to respond to various records requests may well involve confidential information, or that Bardwell may reasonably be presumed to have acquired some level of such information during his internship,[57] it is harder to reach the conclusion that such information constitutes a substantial relationship between the internship and the present case, which connection

---

[53]  ECF # 56 at 14-15.

[54]  ECF # 74 at 3, 4.

[55]  ECF # 64 at 11-12.

[56]  *Id*. at 11, 13.

[57]  *Id.* at 13.

relates to the first and second elements of the *Green* test set forth above.

The Supreme Court of Georgia, in construing the same language as here, defined a substantial relationship as being the "same or substantially related matter" as the suit in question.[58]  Although DeCrane does allege in his second amended complaint that one way the City retaliated against him was to delay and minimize its response to his public records request,[59] that allegation is fourteenth on a list of sixteen ways the City is alleged to have retaliated, and is supported by seven brief paragraphs in the second amended complaint (out of 372 factual paragraphs) detailing when the public records request was made and the various points when portions of it were fulfilled.[60]  In this suit alleging constructive discharge, any claims concerning a failure to timely respond to the public records request appear to be far less than the substance of DeCrane's case.

Understood as merely one decidedly smaller element of DeCrane's overall claim, any involvement Bardwell had as an intern with some elements of how the City in general dealt

---

[58] *Hodge v. URFA-Sexton, LP*, 758 S.E. 2d 315, 321 (Ga. 2014).

[59] See, ECF # 46 at ¶ 376.

[60] *Id*. at ¶¶ 267-273. I note further that DeCrane essentially objected to a perceived untimeliness in the City's response to his request by filing a mandamus action in September 2016, or one year after the records request was filed (*id*. at ¶ 258) and days before DeCrane left his position at the City (*id*. at ¶ 339). This was also before he instituted this suit on October 31, 2016 (ECF # 1). Moreover, the later chronology of how the City responded to the records request, which documents that it began responding, at least in part, very shortly after the mandamus action was filed (ECF # 46 at ¶¶ 259-263) creates a strong circumstantial case that DeCrane based his claim of retaliation regarding how the City handled his records request on actual experience and not on any confidential information Bardwell purportedly shared with the Chandra firm. Thus, the third prong of the *Green* analysis - which permits the Chandra firm to rebut the presumption that Bardwell's exposure to privileged information effected DeCrane's representation - also mitigates against finding any ethical violation here.

with requests for public records does not rise to a prior substantial level of involvement with the "same or substantially related matter" as this suit alleging a constructive discharge allegedly ordered and orchestrated by officials overseeing the division of fire.

Accordingly, I recommend finding that the defendants have not shown grounds to disqualify the Chandra firm based on the prior internship of Brain Bardwell.

## Conclusion

For the reasons stated, I recommend denying the motion to disqualify the Chandra firm and further recommend denying the motion to suppress without prejudice.

Dated: April 26, 2018                                       s/ William H. Baughman, Jr.
                                                            United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[61]

---

[61] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

16