IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | : | |
|---|---|---|
| SEAN DECRANE, | : | Case No. 1:16-cv-02647-CAB |
| | : | |
| Plaintiff, | : | Judge Christopher A. Boyko |
| | : | |
| v. | : | Magistrate Judge |
| | : | William H. Baughman, Jr. |
| EDWARD J. ECKART, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

*Defendants' Post-Hearing Brief, as to their Motion to Disqualify The Chandra Law Firm LLC and to Suppress the Declarations the Firm Improperly Obtained*

## INTRODUCTION

The totality of the misconduct by Plaintiff Sean DeCrane's counsel at The Chandra Law Firm ("The Chandra Firm" or the "Firm") warrants the Firm's disqualification. While DeCrane may argue that no single instance of misconduct is worthy of disqualification, such an argument misses the mark. Rather, The Chandra Firm's misconduct, when considered in its totality, undermines the integrity of the Court to such a degree that disqualification is appropriate.

The Chandra Firm's misconduct ranges from relying on improperly obtained evidence, to misleading this Court (if not directly making false statements to this Court), to intimidating witnesses. Such misconduct, if left unchecked, erodes the integrity of the judicial system. DeCrane's right to counsel of his choice is unavailing, as this right is secondary to the Court's need to maintain the highest standards of professional conduct. At a minimum, The Chandra Firm's misconduct warrants the suppression of the declaration of former City of Cleveland Fire Chief Patrick Kelly ("Chief Kelly"), obtained by The Chandra Firm.

## LAW AND ARGUMENT

### I. THE TOTALITY OF THE CHANDRA FIRM'S MISCONDUCT WARRANTS THE FIRM'S DISQUALIFICATION

> In approaching the issues of disqualification, the court must be mindful of its paramount obligation of maintaining the highest standards of professional conduct and the scrupulous administration of justice. This obligation stands in contrast to the secondary consideration of ensuring the right of the public to legal counsel of its own choice.

*Cleveland v. Cleveland Electric Illuminating Co.*, 440 F.Supp. 193, 196 (N.D. Ohio 1976) (citations omitted).

#### A. In Sworn Declarations Submitted to the Court, The Chandra Firm Fabricates a Conversation that Never Occurred

"A lawyer shall not knowingly…make a false statement of fact or law to a tribunal…" Ohio Rule of Professional Conduct 3.3(a)(1).[1] Upon facing the prospect of disqualification, The Chandra Firm's initial reaction was to fabricate a conversation that never occurred. *See* ECF #64 at 1-4. In separate declarations, attorney Subodh Chandra claimed and attorney Ashlie Sletvold confirmed a non-existent conversation with attorney Jon Dileno regarding law clerk Brian Bardwell. *See* ECF #56-39 at ¶ 4 (Chandra declaring Dileno raised a concern about Bardwell on September 14, 2017); ECF #56-25 at ¶ 10 (Sletvold declaring Chandra told her Dileno raised Bardwell's participation in the case on September 14, 2017).

Dileno never spoke with Chandra about Bardwell on September 14, 2017. *See* ECF #64-1 at ¶ 7. In fact, former City attorney and counsel of record Stacey Pellom did not inform Dileno of Bardwell's internship with the City until November 21, 2017 (ECF #64-2 at ¶ 4), which was the date of Defendant Edward Eckart's deposition. Then, Bardwell testified that he did not learn of the City's concerns regarding his involvement in this case until the same November 21st deposition of Eckart. ECF #124 at 88:19-91:1; *see also* ECF #124 at 102:1-13.

---

[1] Defendants cite the Ohio Rules of Professional Conduct as "Rule __."

The Chandra Firm has expressed in great detail the lengths its attorneys allegedly took to ensure that Bardwell's City internship did not involve DeCrane.  Given that professed diligence, it seems they would have informed Bardwell of the City's concerns about his involvement in the case on or shortly after September 14th.  In fact, Sletvold declared that "[o]nce the City first raised the issue on September 14, 2017" she subjected Bardwell "to the strictest of strict scrutiny." ECF #56-25 at ¶ 17.  Yet, Bardwell did not learn of the City's concerns until November 21st.  These logic-defying circumstances support Dileno's contention that he did not discuss Bardwell with Chandra on September 14th.  The Chandra Firm's claim of a September 14th discussion regarding Bardwell is simply false and strongly suggests dishonest behavior.

### B.    Bardwell's Declaration Also Includes Misstatements

The Chandra Firm's willingness to obfuscate the facts also comes through in Bardwell's declaration.  Bardwell claimed that when he interned for the City, he "was assigned to review records requests from 2014 and earlier to determine whether any closed requests were still sitting in the City's filing cabinets for open requests." ECF #56-2 at ¶ 9.  During the hearing, Bardwell double-downed on his declaration, repeatedly claiming he had no responsibility for 2015 public records requests.  ECF #124 at 26:16-27:16, 69:6-13.  The evidence demonstrates otherwise.

First, Kim Roberson testified she assigned Bardwell to work on 2015 public requests, as she wanted to address the 2014 requests herself.  ECF #125 at 141:19-144:15, 179:9-18.  More compellingly, Bardwell himself created two documents on his City computer that related exclusively to 2015 public records requests.  *See* attachments "15.docx" and "Request log.xlsx" to Defendants' Hearing Ex. B;[2] *see also* ECF #125 at 145:22-147:13, 151:6-155:2.  Despite Bardwell's earlier denials, the evidence clearly demonstrates that Bardwell reviewed and

---

[2] A previously filed declaration from Alberto Guzman, a member of the City's IT staff, confirmed these were documents Brian Bardwell maintained during his City internship.  *See* ECF #64-15; *see also* ECF #125 at 198:18-200:20; ECF #124 at 73:10-16 (Bardwell admitting he used the Word document attached to Guzman's declaration).

accessed public records requests from 2015, which is the same year DeCrane's attorney filed the public records request related to this matter. *See* Defendants' Hearing Ex. E.

Bardwell also claimed he "had no access to privileged information" regarding the *State of Ohio ex rel. Ali v. City of Cleveland* mandamus action – a case litigated by The Chandra Firm. ECF 52-6 at ¶ 15(c).[3] He claimed his involvement in the *Ali* case "was negligible". ECF #52-6 at ¶ 18. Neither of these statements is true. Bardwell drafted a memorandum applying the facts of *Ali* to the applicable law. Defendants' Hearing Ex. J.[4] To do so, Bardwell had a discussion with City attorney Elizabeth Crook (fka Williamson) who discussed the status of, and her thoughts regarding, the case. ECF #124 at 106:20-107:3. Bardwell also received a table created by a City attorney that analyzed Ali's public records requests. Defendants' Hearing Ex. R.[5]

That The Chandra Firm would sign and file multiple declarations with demonstrably false testimony seriously undermines the integrity of this Court.[6]

### C. Bardwell's Internship in the City's Department of Law Gave Him Intimate Knowledge of the City's Handling of Public Records Requests Precluding His Involvement in this Case

When determining whether to disqualify DeCrane's counsel, the Court must evaluate whether "there is a 'reasonable possibility that some specifically identifiable impropriety' actually occurred and, in light of the interest underlying the standards of ethics, the social need for ethical practice outweighs the party's right to counsel of his own choice." *See* ECF #107 at 4 (*citing Kitchen v. Aristech Chemical*, 769 F.Supp. 254, 257 (S.D. Ohio 1991)). The question is

---

[3] The Chandra Firm represented Ali in his mandamus action until 2018 (ECF #124 at 112:11-13), well after Bardwell started working for the Firm in May 2017 (ECF #56-2 at ¶ 18). The Chandra Law Firm never "notif[ied] the City of its hiring of Bardwell or of any potential conflict, so as to allow the City to 'ascertain' the Chandra firm's compliance with Professional Rule 1.11." ECF #64-2 at ¶ 5. The Chandra Firm dismissed DeCrane's mandamus action in October 2018.
[4] With this filing, Defendants submit an unredacted copy of Exhibit J for the Court's in-camera review. Yellow highlights have been added to emphasis the referenced language.
[5] With this filing, Defendants submit an unredacted copy of Exhibit R for the Court's in-camera review.
[6] The Chandra firm is responsible for the actions of its law clerks. *See* Rule 5.3.

whether some impropriety occurred and not whether some impropriety may occur in the future. DeCrane's recent withdrawal of his public records allegations is irrelevant. ECF #120.

Furthermore, Defendants' arguments, as to Bardwell, do not rely on demonstrating Bardwell accessed confidential information specific to DeCrane. DeCrane's focus on proving the lack of such access is immaterial. Rather, as Defendants' have argued, Bardwell's intimate knowledge of the City's public records process precludes him for working on this matter.

Upon his initial filing of this matter on October 31, 2016 and up until the filing of his Third Amended Complaint on April 1, 2019, DeCrane has contended that the City retaliated against him by "failing to fully or timely respond to a public-records request for records…" ECF #1 at ¶ 357.l. In fact, on December 12, 2017, The Chandra Firm "agree[d] that [DeCrane's] public-records requests to the City are relevant to this suit (including whether the City's delays in providing requested records were further retaliation…)…" ECF #31-1.[7]

During his time as a City intern, in the *Ali* matter referenced above, Bardwell analyzed the very same issue DeCrane previously pled and claimed was relevant -- whether the City fully and timely responded to a public records request. *See* Defendants' Hearing Ex. J. To address this issue, Bardwell drafted a memorandum for the City in which he analyzed three issues that relate directly to this case. *See* Defendants' Hearing Ex. J.

First, Bardwell analyzed whether the specific circumstances facing the City's Law Department -- including staffing and the volume of requests it receives -- justified its delay in responding to the *Ali* public records request. Second, Bardwell analyzed how the manner in which the City keeps it records, something he saw firsthand as a City law clerk, impacts its public records response times. Third, Bardwell, relying on his "experience" working as a City

---

[7] The Chandra Firm made this declaration just three days before discovery closed, then a year later claimed it was removing these "relevant" claims, because they failed to obtain discovery to support them. ECF #115 at 2-3.

law clerk, weighed in on whether The Chandra Firm's public records requests were overbroad, including whether the City "violated the law governing the response to an overbroad request." Defendants' Hearing Ex. J.

Crook, for whom Bardwell drafted the memorandum, shared with Bardwell her assessment "of the merits of the case as well as any exposure the City might have…" ECF #124 at 106:20-107:3. Additionally, through his work for Kim Roberson, Bardwell accessed the public records files and the public records request log, which included confidential information like privileged instructions from attorneys. ECF #125 at 158:3-160:3.[8] The City required Bardwell to agree to keep its confidential information confidential. Defendants' Hearing Ex. H.

Rule 1.11(c) prohibits "a lawyer from having information that the lawyer knows is confidential government information about a person [(here, the City)] acquired when the lawyer was a public officer or employee" from then "represent[ing] a private client whose interests are adverse to [the City] in a matter in which the information could be used to the material disadvantage of [the City]." This Court recently held that whether the former public officer or employee used the confidential information is inconsequential, as "Rule 1.11(c) prohibits representation when the information *could* be used to the material disadvantage of Cleveland…" *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, 2019 U.S. Dist. LEXIS 46065, *79 (N.D. Ohio Mar. 19, 2019) (emphasis in original).

In *Nat'l Prescription*, this Court disqualified an attorney and her firm, despite the attorney never representing the opposing party, which coincidentally was the City. *Id*. at *75-76. The disqualified attorney, through her work on a separate matter, served as the Chair of a Task Force of which the City was a member. In that capacity, she obtained the City's confidential

---

[8] In fact Chandra who "worked closely" with Roberson when he was the City's Director of Law (ECF #56-39 at ¶ 11) ordered that the entirety of the City's public records request log be marked privileged and work product. *See* ECF #125 at 155:19-156:13; *see also* Defendants' Hearing Ex. G.

information.  *Id*. at *65-67.  The confidential information, which the City "shared in a spirit of confidence and trust" included "staffing levels" and "resources."  *Id*. at *74.

Between his work with Crook and Roberson, Bardwell gained an intimate understanding of the City's public records process.  *See* ECF #124 at 111:23-112:9.  Under Rule 1.11(c), Bardwell's intimate understanding requires The Chandra Firm's disqualification.  Similar to the circumstances in *Nat'l Prescription*, the very knowledge Bardwell applied in analyzing the *Ali* case – Crook's assessment of the case, the City's staffing, the City's resources, and the manner in which the City keeps it records – could be used to the City's material disadvantage in this case.  Furthermore, The Chandra Firm could have tried to obtain punitive damages against the individual defendants by arguing that the City was informed of the law included in Bardwell's *Ali* memorandum in 2016, and failed to act in accordance with it for purposes of this case.

As explained in the *Nat'l Prescription* disqualification ruling, Bardwell's disqualification requires The Chandra Firm's disqualification.  *In re Nat'l Prescription Opiate Litig.* at *75-76.

### D. The Chandra Firm Engaged in Misconduct that Resulted in the Firm Improperly Receiving a Declaration from Chief Kelly

Bardwell's first ever legal interview was likely that of Chief Kelly, one of the central figures in this litigation.  ECF #124 at 100:18-101:24.  Prior to that interview, Bardwell declared he specifically reviewed Rule 4.2.  ECF #56-2 at ¶ 20.  Yet, he made no mention of whether he reviewed Rule 4.3, which addresses dealing with unrepresented individuals, and he could not recall whether he did so at the hearing.  ECF #124 at 100:12-17.

Comment 1 to Rule 4.3 is instructive here:

In order to avoid a misunderstanding, a lawyer will typically need to identify the lawyer's client and, where necessary, explain that the client has interests opposed to those of the unrepresented person.[9]

---

[9] Comments to the Rules of Professional Conduct are "persuasive if not authoritative…"  *Wasmer v. Ohio Dep't of Rehab & Corr.*, No. 2:05-cv-0986, 2007 U.S. Dist. LEXIS 11881, *7 (S.D. Ohio Feb. 21, 2007).

Ohio Board of Prof. Conduct Opinion 2016-5 further explains that "[b]efore interviewing a former employee, a lawyer should…*fully explain* that he or she represents a client adverse to the [former employee's] corporation." ECF #43-3 at 4 (emphasis added).

Bardwell does claim that he gave a bare-bones instruction of, "We're representing Sean DeCrane in his case against the City of Cleveland." ECF #124 at 56:22-57:16. Yet, despite Bardwell admitting that he gave all necessary instructions at the outset of his interview of Chief Kelly, this alleged insufficient instruction is found nowhere in the transcript of that interview. Defendants' Hearing Ex. K. Hence, despite Chief Kelly having interests clearly adverse to DeCrane's, Bardwell provided no instruction or a wholly insufficient instruction to Chief Kelly as to his adverse position to DeCrane. ECF #124 at 50:22-51:23.

In his Complaint, DeCrane asserted allegations against Chief Kelly based on Chief Kelly's alleged acts and failures to act. Specifically, Chief Kelly was accused of repeatedly failing to address DeCrane's alleged complaints of retaliation. *See* ECF #120 at ¶¶ 120-122, 233.[10] Moreover, a centerpiece of the Complaint is DeCrane's claim the City violated the First Amendment when it put him up on false administrative charges. *See* ECF #120 at ¶¶ 2, 368.d.

As to those administrative charges, Chief Kelly plainly stated to Bardwell, "I actually put Sean [DeCrane] up on charges…" Defendants' Hearing Ex. K at 39:10-16. As The Chandra Firm and Bardwell knew about Chief Kelly's involvement in this and other relevant actions, Bardwell should have started his interview with Chief Kelly with a full explanation of the adverse nature of DeCrane's claims. That obligation was then exemplified by Chief Kelly's statements to Bardwell when, at that moment, Bardwell should have explained to Chief Kelly that the administrative charges Chief Kelly just admitted he brought against DeCrane were central to DeCrane's Complaint. Bardwell never did so. *See* Defendants' Hearing Ex. K.

---

[10] These same allegations are included in all of DeCrane's prior Complaints.

Instead, Bardwell went in a different direction, asking Chief Kelly "what [his] thinking was" as to the charges.  Defendants' Hearing Ex. K at 39:20-21.  In fact, the two had a lengthy exchange about the charges with Bardwell continuing to ask Chief Kelly about them.  Defendants' Hearing Ex. K 39:10-45:25.  The Chandra Firm confirmed the obvious adverse status of DeCrane to Chief Kelly when, based on the statements extracted by Bardwell, DeCrane, in a motion to amend his Complaint, threatened that, "Patrick Kelly… may also be an appropriate defendant in connection with DeCrane's pending claims…"  ECF #49 at 7, fn. 12.

As for the required "privilege" instruction, Bardwell gave Chief Kelly what was, at best, a muddled and confusing instruction.  *See* ECF #124 at 42:15-50:4; *see also* ECF #64 at 5-6.  This is particularly problematic because "Kelly was the only declarant [Bardwell] interviewed to say he had talked to City attorneys about the *DeCrane* matter."  ECF #56-2 at ¶ 24.  There also is evidence that Bardwell instructed Chief Kelly to sign the declaration (ECF #43-5 at ¶ 17 (Defendants' Hearing Ex. T)), which instruction is separately prohibited by Rule 4.3 (*see* Rule 4.3; *see also* ECF #43-3 at 4).

      **E.**     **The Chandra Firm Repeatedly Threatens Chief Kelly with Litigation for Allegedly Committing the Crime of Perjury**

Rule 1.2(e) prohibits a lawyer from "threaten[ing] to present criminal charges…solely to obtain an advantage in a civil matter."  On February 22, 2019, The Chandra Firm sent Chief Kelly a letter threatening him as follows:

> We are considering initiating litigation against you under Ohio Rev. Code §§ 2921.03(C), 2307.60, and 2921.11.  Your declaration, which you signed under penalty of perjury contains several material false statements.  We can prove this based on the recorded interview you gave our law clerk on June 2, 2017.  We hope that litigation can be avoided.

ECF #77-7 at ¶ 4 (Defendants' Hearing Ex. M).[11] When Chief Kelly requested a copy of the recording, The Chandra Firm refused to provide it (ECF #77-7 at ¶ 4), and instead, again threatened Chief Kelly by referencing a desire to speak with Chief Kelly's counsel to determine whether they "can avoid the need for litigation." Defendants' Hearing Ex. N.

As Magistrate Judge Baughman recognized, "under Ohio law perjury is purely a criminal offense and may not form the basis of a civil action." ECF #84 at 10, fn. 40. The Chandra Firm's correspondence with Chief Kelly is a transparent attempt to bully him into recanting the declaration he provided Defense counsel that supported Defendants' Motion to Disqualify and undermined DeCrane's claims. That The Chandra Firm engaged in such misconduct after Defendants filed their Motion to Disqualify increases its severity. *Cincinnati Bar Assn. v. Hartke*, 132 Ohio St.3d 116, 969 N.E.2d 1189, 1190-91 (Ohio 2012) (*citing Butler Cty. Bar Assn. v. Cunningham*, 118 Ohio St.3d 188, 887 N.E.2d 343 (Ohio 2008)) (a violation of Rule 1.2(e) for selfish reasons is an aggravating factor when considering attorney discipline). The Chandra Firm's intimidation of Chief Kelly will cloud these proceedings until either the Court disqualifies The Chandra Firm or the case ends. *See Sutch v. Roxborough Mem. Hosp.*, 151 A.3d 241 (Pa. Sup. Ct. 2016) (disqualification appropriate sanction for attorney intimidation).

## II. AT A MINIMUM, THE CHANDRA FIRM'S MISCONDUCT WARRANTS THE SUPPRESSION OF CHIEF KELLY'S FIRST DECLARATION

"If a court may disqualify an attorney for conduct in violation of the Code of Professional Responsibility and thereby deny a client's choice of counsel, it may impose the lesser sanction of excluding evidence gathered in violation of the Code." *Insituform of N. Am., Inc. v. Midwest Pipeliners, Inc.*, 139 F.R.D. 622, 624 (S.D. Ohio 1991). Absent Bardwell's misconduct, particularly his failure to explain to Chief Kelly the adverse nature of DeCrane's position as

---

[11] Ohio Rev. Code § 2921.11 is Ohio's criminal perjury statue.

compared to Chief Kelly, it is highly unlikely Chief Kelly would have spoken with Bardwell, let alone signed a declaration for DeCrane whose position is directly adverse to his own position. The Court should strike the declaration Chief Kelly provided The Chandra Firm, which is the proverbial fruit from the poisonous tree.

In *Insituform*, the defendants moved to exclude the testimony of plaintiff's former attorney who obtained information from defendants employees in violation of former disciplinary rule 7-104(A). *Id*. at 624-26. Given the violation of the disciplinary rule, the court found the motion was well taken and excluded the former attorney's testimony. *Id*.

In *Curatola v. Am. Elec. Power*, the defendants' counsel hired a private investigator, Nancy Hughes, to surveil the plaintiff to determine the extent of the plaintiff's alleged injuries. *Curatola*, No. 1:06-CV-839, 2008 U.S. Dist. LEXIS 122153, *2 (S.D. Ohio May 19, 2008). At the direction of one of the defense attorneys, Hughes inappropriately contacted the plaintiff *ex parte*. *Id*. at *6. The court determined this conduct violated Rule 4.2 and issued an order "preclud[ing] any further use of the evidence collected by Investigator Hughes as a result of the inappropriate contact with Plaintiff." *Id*. at *10.

*Bruske v. Arnold*, 44 Ill.2d 132, 254 N.E.2d 453 (Ill. 1969) also is instructive. In *Bruske*, the Illinois Supreme Court upheld a trial court's exclusion of a statement given by the defendant to a private investigator hired by the plaintiff's counsel. The investigator obtained the statement after the defendant had retained counsel, and the plaintiff was aware that the defendant had counsel. The Illinois Supreme Court noted that the rationale proffered for admissibility was the importance of ascertaining the truth, but it held that this concern must yield to the rules of discovery and the canons of ethics: "[The r]ules, however, to be effective must carry an appropriate sanction; otherwise, the orderly process of a lawsuit is left to the mercy of the

individual's sense of justice. We deem that the appropriate sanction in this instance was the exclusion from evidence of the statement." *Id*. at 456.

Absent Bardwell's misconduct, the declaration Chief Kelly executed on September 8, 2017 (Defendants' Hearing Ex. S) never would have existed. In line with the proposition of law set forth in *Insituform*, *Curatola*, and *Bruske* that evidence gathered through misconduct should be excluded, the Court should suppress Chief Kelly's September 8th declaration. *See also Gallagher v. Van Lott, Inc.*, No. 6:05-0642-RBH-WMC, 2006 U.S. Dist. LEXIS 97590, *3-4, 9 (D.S.C. 2006) (excluding audiotape evidence obtained from a defense investigator's *ex parte* communication with the plaintiff); *Cagguila v. Wyeth Laboratories, Inc., Div. of Am. Home Prods.*, 127 F.R.D. 653, 654 (E.D. Pa. 1989) (granting motion to prohibit the use at trial of any statement, information, or evidence obtained or received through counsel's violation of Pennsylvania Rule 4.2, which is identical to Ohio Rule 4.2).

## CONCLUSION

For the above misconduct and the reasons in Defendants' earlier briefing (ECF #43, #64, #95, #102), Defendants ask the Court to disqualify The Chandra Firm and suppress the declaration The Chandra Firm obtained from Chief Kelly. Absent disqualification, The Chandra Firm (and attorneys more generally) will continue to erode the Court's integrity, and the City will be forced to face the specter of former attorneys and law clerks disclosing confidential and privileged information without consequence.

    Respectfully submitted,

    *s/ David R. Vance*
    **Jon M. Dileno (#0040836)**
    jmd@zrlaw.com
    **David R. Vance (#0083842)**
    drv@zrlaw.com
    **Zashin & Rich Co., L.P.A.**

950 Main Avenue, 4th Floor
Cleveland, OH 44113
T: (216) 696-4441
F: (216) 696-1618

**William Menzalora (#0061136)**
 wmenzalora@city.cleveland.oh.us
**City of Cleveland Department of Law**
601 Lakeside Avenue, Room 106
Cleveland, OH 44114
T: (216) 664-2800

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on April 17, 2019 the foregoing document was filed via the Court's electronic filing system and will be served on all parties via that system.

*s/ David R. Vance*
**Jon M. Dileno (#0040836)**
 jmd@zrlaw.com
**David R. Vance (#0083842)**
 drv@zrlaw.com
**Zashin & Rich Co., L.P.A.**
950 Main Avenue, 4th Floor
Cleveland, OH 44113
T: (216) 696-4441
F: (216) 696-1618

**William Menzalora (#0061136)**
 wmenzalora@city.cleveland.oh.us
**City of Cleveland Department of Law**
601 Lakeside Avenue, Room 106
Cleveland, OH 44114
T: (216) 664-2800

*Attorneys for Defendants*