IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SEAN DECRANE<br><br>            *Plaintiff,*<br><br>v.<br><br>EDWARD J. ECKART, *et al.*<br>            *Defendants.* | Case No. 1:16-cv-02647<br><br>Judge Christopher A. Boyko<br><br>Magistrate Judge William H. Baughman, Jr. |

**PLAINTIFF SEAN DECRANE'S POST-HEARING BRIEF OPPOSING DEFENDANTS' RULE 72 OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY DECRANE'S COUNSEL**

## INTRODUCTION

At the hearing, Defendants' drive to deprive Plaintiff Sean DeCrane of his counsel sputtered to a halt. Prehearing, the gasket had blown when the interview recording exposed as false former chief Patrick Kelly's sworn insistence that law clerk Brian Bardwell hadn't given Kelly recommended warnings. Then, also prehearing, the wheels fell off when Defendants' huffing about supposedly improper firefighter interviews was silenced by emails proving that City lawyer William Menzalora and the firefighters' union lawyer had *authorized* the interviews. And *at* the hearing, the engine died when Defendants' star witness, public-records administrator Kim Roberson, admitted: (1) information she had claimed was "confidential" isn't actually confidential; (2) she doesn't know of any *DeCrane*-related confidential information that *existed* during Bardwell's internship; and (3) if it did exist, she doesn't allege that Bardwell saw it. She didn't dispute Bardwell's testimony that he never saw any secret *DeCrane* information[1]—let alone his testimony that he never "personally and substantially" participated in *DeCrane*.

Afforded a hearing to prove its alleged intern-turned-saboteur had confidential *DeCrane* information, the City became allergic to the question. With Bardwell under oath, the City *didn't ask him* if he saw or heard any confidential *DeCrane* information. Ordered to bring evidence of Bardwell's "participation in confidential matters substantially related to the case at hand,"[2] Defendants brought two city employees, but *asked neither* whether secret *DeCrane* information existed or, if so, whether Bardwell saw it. Defendants failed to offer clear and convincing evidence of misconduct. Nor have Defendants shown the Magistrate Judge's order is contrary to law. The Court should overrule objections to the order, and—because of the frivolity and tactical nature of

---

[1] *Compare* Bardwell Decl., ¶ 3 (Bardwell "learned absolutely nothing about or substantially related to the DeCrane matter" during his internship) *with* Hr'g. Tr. (ECF DKT #125) 183:9–15 (Roberson has no personal knowledge that Bardwell "saw or accessed any privileged or attorney work product information related to Sean DeCrane."). *See also* Hr'g Tr. (ECF DKT #124). at 126:16–23.

[2] Order Setting Evid. Hr'g. (ECF DKT #107), 7.

Defendants' persistence—award DeCrane's fees and costs incurred for opposing it.

## QUESTIONS PRESENTED

1. Rule 72 objections to a magistrate judge's order may be sustained only when factual findings are "clearly erroneous" and legal conclusions are "contrary to law." All hearing witnesses confirmed that they have no knowledge of misconduct. And the order was not wrong to reject Defendants' contortion of an inapplicable, superseded, predecessor rule to Ohio Prof. Cond. R. 4.2. Should the Court overrule the order?

2. Professional-conduct violations must be proved by clear and convincing evidence. Defendants' accusations that law-clerk Brian Bardwell:

   a. didn't give recommended warnings to witness Patrick Kelly were disproved by the Kelly interview recording showing Bardwell did;

   b. improperly contacted firefighters were disproved by emails showing City lawyer William Menzalora and union counsel approved the interviews; and

   c. accessed *DeCrane*-related confidential information were disproved by witnesses who wouldn't even say such information *existed*, much less that Bardwell knew of it.

   d. Should the Court conclude these disproved accusations are proved by clear and convincing evidence and overrule the Magistrate Judge's factual findings?

3. Sanctions of attorneys' fees and costs are proper when parties and their counsel persist in arguing frivolous positions. Defendants knew, should have known, and came to know at some point that every accusation summarized above in issue 2 was false. Yet they persisted in a tactical attack. Should the Court award DeCrane fees and costs for defending against the motion?

## STANDARD OF REVIEW

A party seeking to disqualify an entire law firm by imputation must prove by clear and convincing evidence that a firm employee engaged in misconduct justifying disqualification.[3] When reviewing a magistrate judge's order on a non-dispositive motion, the district court may "modify or set aside any part of the order that is clearly erroneous or contrary to law."[4] "'Clearly erroneous' applies to the factual findings and 'contrary to law' applies to the legal conclusions."[5]

---

[3] *See, e.g., Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178–79 (2d Cir. 2009) ("[A] law firm can be disqualified by imputation only if the movant proves by clear and convincing evidence that [a] the witness will provide testimony prejudicial to the client, and [b] the integrity of the judicial system will suffer as a result."); *Disciplinary Counsel v. Lapine*, 128 Ohio St. 3d 87, 89 (2010), ¶ 13.

[4] Fed. R. Civ. P. 72(a).

[5] *Alvarado v. Warden, Ohio State Penitentiary*, No. 3:16 CV 2563, 2018 WL 5783676, at *3 (N.D. Ohio Nov. 5, 2018).

## LAW & ARGUMENT

I. **Because the City neither objected to nor refuted the Magistrate Judge's findings regarding the Patrick Kelly interview, disqualification is unwarranted.**

Defendants' Rule 72 objections claim no error in the Magistrate Judge's conclusion that the Kelly interviews provide no basis for disqualification.[6] Defendants thus waived review on this question. If they try now, under Ohio Prof. Cond. R. 4.2, "[c]onsent of [an] organization's lawyer is not required for communication with a former constituent."[7] *Advisory* guidance recommends lawyers "*should* disclose" their identity, their representation of a client adverse to the corporation, and ask that the former employee not disclose "any privileged communications."[8]

Defendants extracted a declaration from former fire chief Patrick Kelly, swearing "Mr. Bardwell never advised me that I should not disclose to him any of my privileged discussions with either the City of Cleveland's Legal Department or its outside attorneys."[9] Kelly also claimed Bardwell elicited details about a post-City-employment conversation Kelly had with attorney Dileno.[10] Recordings proved Kelly's claims false: Bardwell instructed Kelly on privilege, and no discussion of Dileno or other counsel occurred.[11] And while Bardwell *could* inquire into Kelly's post-employment conversations with counsel,[12] he told Kelly not to discuss "any" counsel discussions.[13]

Given the Second Kelly Declaration's falsity and dubious authorship, the Magistrate Judge gave it no weight, finding Bardwell "specifically told [Kelly] that he should not discuss anything that

---

[6] Def.'s Obj. to Order Den. Mot. to Disq. (ECF DKT #95).

[7] Ohio Prof. Cond. R. 4.2, cmt. 7.

[8] Ohio Adv. Op. 2016-5, Supreme Ct. of Ohio Bd. of Prof. Cond., 2016 WL 4268979, at *3 (emphasis added).

[9] Second Kelly Decl. (ECF DKT #43-5), ¶ 15.

[10] *Id.* at ¶ 16.

[11] Tr. of Kelly Interview (ECF DKT #56-10), ¶ 1:7–16.

[12] *See Infosystems v. Ceridian Corp.*, 197 F.R.D. 303, 306 (E.D. Mich. 2000).

[13] Second Kelly Decl. (ECF DKT #43-5) ¶ 15.

he had discussed with city attorneys."[14] And even if Kelly was *not* lying about disclosing discussions with Dileno—which the recording proves he was—nothing untoward occurred because "[t]he general rule is that counsel's communications with a former employee are no different from those with any other third party fact witness."[15] While peculiar facts might make such a conversation privileged, the Magistrate Judge found "the City has made no such showing."[16]

Defendants produced no evidence showing that fact finding to be "clearly erroneous." They could have called Kelly to the stand to ask about the interview. They didn't. Dileno could have testified about what made his conversations with a former employee privileged. He didn't. Defendants called Bardwell but avoided asking questions calculated to establish an ethical violation. Instead, Dileno quizzed Bardwell on how attorney-client privilege applies to factual scenarios no one has ever suggested are true[17] and tried—unsuccessfully—to extract an admission that the instruction, "Don't tell me anything about what [you and the City's attorneys] were discussing" somehow encouraged Kelly to tell Bardwell things he discussed with city counsel.[18]

This exercise turned up no evidence rehabilitating the debunked Second Kelly Declaration. Nor have Defendants cited any facts or authority contradicting the Magistrate Judge's conclusion that Kelly's post-employment conversations with Dileno were unprivileged—if they even occurred.

The Kelly interview was properly conducted: the Court should overrule the objections.

## II.  Because Rule 4.2—and attorneys for the firefighters and the City—authorized Bardwell's interviews with current firefighters, disqualification is not warranted.

Rule 4.2 prohibits communicating "with a person the lawyer *knows* to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized

---

[14] Order Den. Def.'s Mot. To Disq. (ECF DKT #85), 9.

[15] *Id.* (quoting *Infosystems*).

[16] *Id.* at 10.

[17] Hr'g. Tr. (ECF DKT #124) 49:12–15.

[18] *Id.* at 47:1–48:15.

to do so by law."[19] But such rules must be narrowly drawn to avoid violating the First Amendment when the government is a party. Even Rule 4.2's more restrictive predecessor carved out an exception for interactions protected by "constitutional or other legal right[s] to communicate with the government,"[20] and it disallowed "blanket instructions to all its employees not to communicate with counsel representing an adverse party."[21] Under Rule 4.2's more permissive standard, the government may only silence employees with "authority to obligate the organization with respect to the matter."[22] That restriction doesn't apply to communications with Battalion Chief Frank Szabo and Captain Patrick Corrigan for at least two reasons.

### A. Rule 4.2's limitations on communication with represented parties do not apply when counsel for a party's employee consents to communication.

First, Szabo and Corrigan's counsel consented to the interviews. As Local 93 members, Szabo and Corrigan—both ranked at DeCrane's level or lower and thus unable to make promotional decisions about him—are represented in employment matters by attorney Thomas Hanculak, who told Bardwell he was "good to go" to interview current firefighters.[23]

Until disqualification-fever afflicted them, Defendants' counsel never pretended Szabo and Corrigan were their clients. They subpoenaed Szabo and Corrigan "c/o Thomas Hanculak,"[24] and Hanculak represented them at their depositions.[25] It wasn't clearly erroneous for the Magistrate Judge to disregard City counsel's newfound claim to represent the union members.[26]

---

[19] Ohio Prof. Cond. R. 4.2.

[20] *Id.*, cmt. 5.

[21] Ohio Adv. Op. 92-7, Supreme Ct. of Ohio Bd. of Comm'nrs on Grievances and Discipline, 1992 WL 739409, at *7.

[22] Ohio Prof. Cond. R. 4.2, cmt. 7.

[23] E-mail from Hanculak to Bardwell (ECF DKT #56-7).

[24] E-mail from Humphrey to Sletvold (ECF DKT #56-44).

[25] Szabo Dep. (ECF DKT #43-10), 2; Corrigan Dep. (ECF DKT #43-7), 2.

[26] In either case, the rule only requires Hanculak's consent. Ohio Prof. Cond. R. 4.2 ("If a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this rule.").

Regardless, the City's counsel *also consented to the interviews*.[27] At the hearing, Defendants could have explained how these facts caused some impropriety the Magistrate Judge missed. They could have offered testimony reconciling city-counsel claims to represent the union members with their adverse posture toward them. They didn't. Menzalora sat at the defense table and could have taken the stand to dispute that he'd consented to the interviews. He didn't. Dileno could have taken the stand to offer evidence for his conclusory claims that the Szabo and Corrigan declarations "negatively [impact] Defense counsel's relationship with them."[28] He didn't.

Defendants offered no evidence the interviews were improper or that they were unfairly prejudiced by them. They presented no evidence to suggest the Magistrate Judge erred. Were the witnesses somehow confused about who was representing them? Were they duped into being interviewed? Was their relationship with their counsel prejudiced? Defendants didn't care to ask.

**B.     Rule 4.2's communication limitations don't apply to employees who can't "obligate the organization with respect to the matter."**

Defendants ask the Court to ignore the City's own consent, suppress the resulting declarations, and eject Plaintiff's counsel because of a disagreement with the Magistrate Judge on a question of comma placement in a 25-year-old advisory opinion interpreting a disciplinary rule rescinded over a dozen years ago. Its argument for disqualification—that "not applying the comma to the definition of 'government party' was contrary to law"—misses the point entirely; no matter how many commas are in Disciplinary Rule 4-107's definition of "government party," that definition was discarded when Rule 4.2 replaced it in 2007.

Rule 4.2 is far more limited than Rule 4-107 when dealing with organizational defendants— deliberately so. It applies only to an employee who "supervises, directs, or regularly consults with the

---

[27] Hanculak Decl. (ECF DKT #56-37), ¶ 6. ("Mr. Menzalora informed me that the City Law Department did not need to be notified of the interviews and expressed no opposition to them.").
[28] Def.'s Memo. in Supp. of Mot. To Disq. (ECF DKT #43-1), 9.

organization's lawyer concerning the matter," who "has authority to obligate the organization with respect to the matter," or whose "act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability."[29] Defendants don't allege the witnesses dealt with the City's attorneys regarding the *DeCrane* matter, or that their actions *in this matter* can be imputed to the City. They assert only that Szabo and Corrigan have authority to bind or obligate the City—but the Magistrate Judge found "no supporting evidence in the record for that."[30]

At the hearing, Defendants offered no contrary evidence. Neither Dileno nor Menzalora took the stand to swear regular contact with Szabo or Corrigan. Nor did they call those firefighters to the stand to expound on their authority to obligate the City in *DeCrane*. Defendants just asked Bardwell those firefighters' ranks—and now expect this Court to make up the rest.

The City has provided no evidence—let alone clear and convincing evidence—establishing that Rule 4.2 applies to any of Bardwell's interviews; nor has it explained why the Court should rely on a law that no longer exists to find the Magistrate Judge's order contrary to law. The interviews provide no basis for disqualification, and the Court should deny the motion.

## III.     Bardwell had no *DeCrane*-related confidential information; thus no conflict exists.

When seeking to disqualify a firm based on the conflict of a non-attorney former employee, the moving party must first provide clear and convincing evidence that the former employee was "exposed to confidential information in the relevant case," and then use an evidentiary hearing to carry its burden of proving "the non[-]attorney has been exposed to relevant confidential matters."[31] If that showing is made, the former employee may rebut the resulting presumption he disclosed confidential information to his new employer.[32]

---

[29] Ohio Prof. Cond. R. 4.2, cmt. 7
[30] Order (ECF DKT #85), 12.
[31] *Green v. Toledo Hosp.*, 94 Ohio St. 3d 480, 484 (2002).
[32] *Id.*

This analysis moves in three steps. And Defendants fail at every one.

**A.     Because the Third Amended Complaint severs any possible relationship between the *DeCrane* matter and Bardwell's City internship, and no substantial relationship ever existed, disqualification is unwarranted.**

First, "Is there a substantial relationship between the matter at issue and the matter of the nonattorney employee's former firm's representation?"[33] So there must be a *substantial* relationship between DeCrane's claims here and public-records requests Bardwell handled at the City.

The Magistrate Judge correctly rejected Defendants' argument that DeCrane's public-records request was substantially related to his claims for First Amendment retaliation and false-light invasion of privacy. Although DeCrane *mentioned* the request in his then-operative complaint, it was in a laundry list of other, more significant acts of retaliation. Undisputed testimony showed Bardwell's City work to be a non-issue because he knew nothing about DeCrane. In any case, DeCrane has removed public-records allegations by amendment. Any "issue" is now moot.

**B.     Because no evidence exists that Bardwell was exposed to *DeCrane*-related confidential information, disqualification is unwarranted.**

The second step asks, "Did the moving party present credible evidence that the non-attorney employee was exposed to confidential information in his or her former employment relating to the matter at issue?"[34]

While the Magistrate Judge found Bardwell may have acquired "some level" of confidential information,[35] he also found Bardwell only knew "how the City *in general* dealt with requests for public records,"[36] not how the City dealt with DeCrane's request. Defendants had to prove at the hearing that the order was clearly erroneous in finding Bardwell had access to information about

---

[33] *Id.*

[34] *Id.*

[35] Order Denying Def.'s Mot. To Disq. (ECF DKT #85), 14.

[36] *Id.* at 16.

public-record requests but not confidential information relating to DeCrane. They didn't even try.

The best Defendants could muster was to say that Bardwell used a massive database that *might have* contained confidential information about DeCrane's public-records request (15-2220), and that he pulled files out of a filing cabinet that *might have* contained information about that request.

What the parties have referred to as "DeCrane's public-records request" is not identified in the City's public-records log as such. The request (15-2220) identifies the "Requestor" as "Mary Beth Kelleher on behalf of W. Craig Bashein."[37] A law clerk thumbing through filing cabinets or scrolling through the public-records log would not have been able to readily identify 15-2220 as being on behalf of—as opposed to requesting information about—DeCrane.[38]

Again, Defendants had the opportunity to elicit testimony supporting their allegations; again they balked. They never asked assistant law director Elizabeth Crook or Roberson if confidential information about request 15-2220 *existed* or if Bardwell saw it. They never asked Roberson whether Bardwell worked on request 15-2220. Instead, Roberson admitted the information her defense-counsel-drafted declaration claimed was confidential was not actually so.[39]

After the innuendo, City witnesses gave up all pretenses on cross-examination. Crook admitted she has "absolutely no knowledge … about whether Brian Bardwell knew anything about anything related to any Sean DeCrane–related public records request."[40] Roberson went further:

- She doesn't know which public-records requests Bardwell worked on;[41]

---

[37] Def. Hr'g Exhibits (at Tab A) (this was the first time Defendants provided this document) (attached as Ex. 3).

[38] Hr'g Tr. (ECF DKT #124) 74:25–75:7.

[39] Hr'g. Tr. 166:23–167:13 ("how long it typically takes the City to respond to public records requests"); 167:17–23 ("the Department of Law's involvement with the requests"); 170:20–171:9 ("the manner in which the City processes requests") (ECF DKT #125).

[40] Hr'g. Tr. (ECF DKT #124), 126:16–23.

[41] Hr'g. Tr. (ECF DKT #125), 189:2–6.

- As far as she knows, Sean DeCrane's public-records request may have never even come out of its filing cabinet in the entire time Bardwell was volunteering for her;[42]

- She never discussed the *DeCrane* matter with Bardwell;[43]

- She has **"no information that [Bardwell] saw or accessed any privileged or attorney work product information related to Sean DeCrane;"**[44]

- She has seen **no confidential information related to the *DeCrane* matter in the public-records-request log**;[45] and

- If confidential information in the log existed, she could have brought it with her to the hearing, but **"no one asked."**[46]

Game over.

C.      **Because no dispute exists about Bardwell having contact with, exposure to, or even knowledge of the *DeCrane* matter, no basis for disqualification exists.**

Defendants fail on the third *Green* step, too: "Did the challenged attorney rebut the resulting presumption of disclosure with evidence either that … the employee had no contact with or knowledge of the related matter?"[47] On this, the burden shifts to Plaintiff, and Plaintiff satisfies it. Bardwell testified consistently he "had no involvement in handling or even awareness of Mr. DeCrane's 2015 public-records request," "had no involvement in or awareness of any personnel matters involving Mr. DeCrane, and "had no involvement in any discussions relating to any issues involved in Mr. DeCrane's case."[48] Defendants didn't dispute this testimony: neither of its City witnesses contradict Bardwell's testimony that his volunteer stint with the City was *DeCrane*-free. As summarized above, they admitted they weren't claiming otherwise.

Because the City fails every *Green*-test step, disqualification is unwarranted, as is the other radical step of suppressing witness declarations DeCrane's counsel obtained from fact witnesses.

---

[42] *Id.* at 182:17–183:6.

[43] *Id.* at 182:3–6.

[44] *Id.* at 182:7–12.

[45] *Id.* at 202:2–6.

[46] *Id.* at 201:13–24 (emphasis added).

[47] *Green* at 484.

[48] Bardwell Decl., ¶ 16 (ECF DKT #56-2), ¶ 16. *See also* Hr'g. Tr. (ECF DKT #124), 31:4–19.

IV.   **The Court should award Plaintiff fees for Defendants' persistence in pursuing a purely tactical and frivolous motion to disqualify.**

"Any attorney …who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.[49] In the 14 months since Defendants filed their motion, this case could have been tried to verdict—or better yet, settled reasonably. Instead, Defendants launched a scorched-earth, personal attack on a law student, in a grudge-match with Plaintiff's counsel,[50] DeCrane—and Bardwell too,[51] given the City's earlier retaliation for Bardwell's journalistic public-records litigation against the City.

Thinly disguised from the outset, Defendants' tactical intent is now in full plumage. Defendants first received the declarations on which their motion is based on August 23, 2017—yet waited nearly six months to file their motion on February 14, 2018—long past discovery's close, and only nine days before what was then the dispositive-motion deadline. (And before filing their motion, beyond a vague demand that Plaintiff's counsel withdraw, Defendants never provided a factual basis for *why* counsel should withdraw.)[52] Defendants seek to excuse their delay, saying it "took a handful of weeks … for the needed research to be exhausted for such a serious impending motion."[53] The fruits of that exhaustive, 25-week investigation (plus another year for cogitation) were on display at the hearing, where their star witness admitted the lawyer-drafted paragraph in her declaration claiming public-records-information confidential wasn't true, that she doesn't even know

---

[49] 28 U.S.C. § 1927. *See also Meathe v. Ret*, 547 F. App'x 683, 690–91 (6th Cir. 2013) (reversing district court's unexplained denial of sanctions for "close to a perverse use of disqualification.").

[50] Chandra Decl. (ECF DKT #56-39), ¶ 4 (Dileno to Chandra: City decisionmakers "especially don't want to settle with *you*.").

[51] Hr'g. Tr. (ECF DKT #124), 81:18–25 ("Barbara Langhenry had found out about my work, my previous public records litigation, and ordered me off of -- off of that, yeah, off of that task…. [I]f we had realized, you know, before you started, we wouldn't have hired you.").

[52] Vance letter to Chandra (Feb. 7, 2018) (attached as Ex. 4).

[53] Def.'s Reply in Supp. of Mot. to Disq. (ECF DKT #64), 14.

if confidential matter about request 15-2220 even existed when Bardwell was with the City—much less whether he knew of it—and that *"no one" on the defense team asked her* for confidential *DeCrane*-related information. And Defendants failed to agree to a pointed request to bring to the hearing any such confidential information, to share *ex parte* and *in camera* with the Court.[54]

And even now, with a Third Amended Complaint that doesn't mention public records, Defendants persist in their zeal to disqualify an entire law firm over an intern's access to a filing cabinet. Defendants wouldn't even consent to a motion to amend the complaint to make *fewer* allegations against them,[55] calculating it would extinguish their last hope for depriving DeCrane of his counsel.[56] Add the Kelly-interview recording, and Hanculak and Menzalora's interview authorizations, and it's plain that Defendants persisted in frivolity. Consider the nuclear remedies Defendants' seek—stripping DeCrane of his counsel and suppressing DeCrane's witness declarations, which say *nothing* about "public records"—and the frivolity's tactical purpose comes into even starker relief. The Court should award Plaintiff his fees and costs in opposing the motion.

## CONCLUSION

Because the Magistrate Judge's factual findings are not clearly erroneous, and his legal conclusions are not contrary to law, the Court should overrule Defendants' Rule 72 objections. Because Defendants' disqualification quest has been frivolous, the Court should award Plaintiff his fees and costs.

---

[54]  Chandra email to Huth (Mar. 22, 2019) (providing Court with Plaintiff's request that Defendants bring information alleged to be confidential—and Vance's evasive response) (attached as Ex. 4).

[55]  *See* Vance e-mail to Sletvold (Mar. 8, 2019) (refusing consent to remove public-records allegations) (attached as Ex. 5).

[56]  Def. Response to Mot. For Leave to File Third Am. Compl. (ECF DKT #117) at 3 ("Defendants' reasons for not consenting, include, but are not limited to: not allowing DeCrane's counsel to somehow avoid responsibility for their disqualifiable behavior by merely excising an allegation from the Complaint).

Respectfully submitted,

*/s/ Subodh Chandra*
Subodh Chandra (0069233)
Ashlie Case Sletvold (0079477)
Patrick Kabat (N.Y. Bar No. 5280730)
Patrick Haney (0092333)
The Chandra Law Building
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
216.578.1700 Phone
216.578.1800 Fax
Subodh.Chandra@ChandraLaw.com
Ashlie.Sletvold@ChandraLaw.com
Patrick.Kabat@ChandraLaw.com
Patrick.Haney@ChandraLaw.com

*Attorneys for Plaintiff Sean DeCrane*

### CERTIFICATE OF SERVICE

I certify that on April 17, 2019, the above document was filed using the ECF system, which will send notification to all counsel of record.

*/s/ Subodh Chandra*
*One of the attorneys for Plaintiff Sean DeCrane*