**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SEAN DeCRANE,** | ) | **CASE NO. 1:16CV2647** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | **OPINION AND ORDER** |
| | ) | |
| **EDWARD J. ECKART, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, J**.:

        This matter comes before the Court upon Defendants' Motion (ECF DKT #43) to

Disqualify the Chandra Law Firm LLC and to Suppress the Declarations the Firm Improperly

Obtained.  The Motion was referred to the Magistrate Judge for disposition.  The Magistrate

Judge denied the Motion to Disqualify and to Suppress without prejudice.  (ECF DKT #85).

Defendants filed timely Objections to the Magistrate Judge's Order.  (ECF DKT #95).

        Upon consideration of the objections, briefs and applicable law, the Court found that

an evidentiary hearing was necessary.  The hearing was held on April 4, 2019 and concluded

on April 8, 2019.

        Following review of the hearing transcript and the post-hearing briefs, the Court finds

that disqualification of the Chandra Law Firm LLC is not warranted; the declaration of former

Chief Patrick Kelly obtained by the Chandra Firm will not be suppressed and the Magistrate

Judge's ruling (ECF DKT #85) is upheld.

## I. BACKGROUND

Plaintiff is a retired City of Cleveland Division of Fire Battalion Chief. He alleges

that Assistant Safety Director Edward Eckart, along with James Votypka and Christopher

Chumita, repeatedly retaliated against him based on the mistaken belief that Plaintiff

disclosed to a reporter that a previous Fire Chief lacked the required continuing education to

maintain his professional certification. Alleged acts of retaliation by Defendants include:

repeated failures to promote Plaintiff; seizing the Fire Training Academy's records while

Plaintiff served as Director of Training; making false allegations against Plaintiff about

deficient record-keeping; trying to have Plaintiff criminally prosecuted; concocting false

administrative charges against Plaintiff; delaying a state audit that would have cleared

Plaintiff; *failing to fully or timely respond to Plaintiff's public records request*; relaying

false information to the media; ignoring Plaintiff's emails and refusing to meet with him;

trying to outsource training activities; and trying to damage Plaintiff's reputation and career.

As part of the preparation of Plaintiff's case, Plaintiff's counsel, Chandra Law Firm

LLC, elected to conduct witness interviews with current and former City of Cleveland

employees. Plaintiff's counsel directed a summer law clerk, Brian Bardwell, to conduct the

interviews and record them with the interviewee's permission. On September 13, 2017,

Plaintiff produced six signed declarations of current and former fire fighters who had been

interviewed.

In a separate Order, the Court required Plaintiff to turn over the audio recordings made of the interviews of the City's current and former employees on or before February 5, 2019, but allowed Plaintiff's counsel to delete or redact Brian Bardwell's annotations on the recordings prior to disclosure.  (ECF DKT #106).

In their Motion to Disqualify, Defendants charge that the Chandra Law Firm violated the Ohio Rules of Professional Conduct by its improper contacts with current and former City employees.  In addition, Bardwell, now employed with the Chandra Law Firm, previously interned with the City Department of Law - Public Records Section; and thus, was privy to the City of Cleveland's confidential information, attorney-client communications and attorney work-product.

Defendants provided the Declaration of Kimberly Roberson, the Public Records Administrator for the City of Cleveland (ECF DKT #64-14), stating that Bardwell interned in the City's Public Records Section of the Department of Law during the summer of 2016. Bardwell was assigned to review 2015 public records requests and determine whether requests were open or closed and the response status.  (*Id*. at ¶ 4).   Bardwell was given access to the City's Public Records Log which includes attorney opinions and communications regarding the request status and whether the City is obligated to respond.  During his internship tenure, Bardwell was "privy to confidential information, including, but not limited to, how long it typically takes the City to respond to public records requests, the Department of Law's involvement with the requests, and the manner in which the City processes requests."  (*Id*. at ¶ 9).  In addition, at the time Bardwell interned for the City, Plaintiff's 2015 public records request was open and included in the Log Bardwell accessed and reviewed.

(*Id*. at ¶ 8).

Defendant City of Cleveland took measures to protect its confidential and privileged information and required Bardwell to execute a Confidentiality Agreement. (ECF DKT #43-1, Exhibit 12).

Defendants add that on August 19, 2016, Bardwell drafted a legal memorandum for the City regarding the timeliness of public records responses. (Redacted copy attached as Exhibit 2 to ECF DKT #95). Defendants point out that Plaintiff's Complaint alleges, in part, that Defendants retaliated against him for engaging in protected conduct by "failing to fully or timely respond to a public-records request for records that tend to support [his] assertions." (Second Amended Complaint, ECF DKT #46 at ¶ 376n.). That allegation has recently been removed by amendment. (Third Amended Complaint, ECF DKT #120).

Plaintiff provided the Declaration of Brian Bardwell (ECF DKT#62-6), stating that he was a volunteer for the City of Cleveland Department of Law in the Division of Public Records from July 5, 2016 through August 19, 2016. He stated that he was assigned to review records requests from 2014 and earlier. (*Id*. at ¶ 9). According to Bardwell, the City granted him access to the database without ever suggesting it was confidential. Although the database includes a field labeled "notes" or "comments," he "can recall no instances in which the database contained anyone's opinion about a request or an assessment of 'whether the City is legally obligated to respond to particular requests.'" (*Id*. at ¶ 10e). He signed a confidentiality agreement, but it included no provision that the database was confidential. (*Id*. at ¶ 12). In ¶ 3 of his Declaration, Bardwell states:

> I heard and learned absolutely nothing about or substantially related to the
> *DeCrane* matter in the 45 days I was a 2016 Cleveland summer law clerk,

including DeCrane's public-records request.  Accordingly, I did not personally and substantially participate in the matter.  I have disclosed absolutely no confidential information about the matter.  I have absolutely no confidential information about the matter that I could disclose."

Defendants also challenge Bardwell's interview with former Chief Patrick Kelly. They contend that Bardwell's instructions about attorney-client privilege and regarding the adverse litigation positions of Kelly and DeCrane violated the Ohio Rules of Professional Conduct.

### **Public Records Requests**

At the hearing held on April 4, 2019 and April 8, 2019, the Court heard the testimony of Brian Bardwell, Assistant Law Director Elizabeth Williamson Crook and Public Records Administrator Kimberly Roberson.

Bardwell testified that he began working as a volunteer summer intern for the City of Cleveland on July 5, 2016.  He was directed to go through the City's backlog of public records requests and to determine what requests remained open and what requests had been fulfilled.  According to his testimony, his review went back three or four years to 2012 or 2013; and he did not access the cabinet of 2015 requests which would have included Plaintiff DeCrane's public records request.  (Hearing Transcript, ECF DKT #124 at 69).  Bardwell testified that he does not remember the names of any "requesters" nor had he ever heard of Sean DeCrane at the time of his internship.  (*Id*. at 70-71; 75-76 ).  Bardwell remembered having access to the City's Log and that there was a column titled "Notes or Comments."  He described that column as a clerical field which contained no privileged or attorney work product information.  (*Id*. at 78).  Bardwell was asked if he was aware that when Subodh Chandra was Law Director for the City of Cleveland, Chandra directed that the entire Public

Records Log be designated as work product and privileged.  Bardwell responded that he was not.  (*Id*. at 29).

When Bardwell began his clerkship with the Chandra Firm, he recalled a conflicts-checking process which was undertaken on his first day.  He was "screened out" of Chandra cases he worked on when he was with the City, i.e., Ortiz and Ali.  He was blocked from accessing those particular firm files and he was kept out of related attorney conferences.  (*Id*. at 86).  He described the firm as "hypervigilant."  (*Id.*).

In the fall of 2017, Bardwell was approached about assisting on the DeCrane matter. He was asked to utilize his reporting skills and to conduct witness interviews.  Bardwell and Chandra attorney Ashlie Sletvold discussed the possibility of conflicts.  Since he was certain that he had no involvement of any kind with the DeCrane matter while with the City, he went ahead with preparations for the interviews.  (*Id*. at 88).  Bardwell also sat in on a deposition of Defendant Eckart, but stepped out when the City's attorney expressed objection because of Bardwell's City internship.  (*Id*. at 90).

In anticipation of the witness interviews he would be conducting, Bardwell met with Attorney Sletvold and was trained in accordance with Ohio Board of Professional Conduct opinions.  (*Id*. at 93).  Bardwell and Sletvold together assessed which Fire Division members they should interview and whether consent from opposing counsel was required.  They excluded anyone who had the authority to hire or fire DeCrane and anyone currently employed at the Division of Fire at that level or higher.  (*Id*. at 94).  Sletvold helped Bardwell with drafting outlines and checklists to guide the questioning.  (*Id*.).

Elizabeth Williamson Crook, an Assistant Law Director with the City of Cleveland,

also provided testimony at the evidentiary hearing.  She testified that Bardwell worked on a

public records mandamus case with her while he was interning with the City.  The plaintiff in

that matter was Ali and plaintiff's counsel was Donald Screen of the Chandra Firm.  Crook

asked Bardwell to research the merits of the case and the potential liability and exposure of

the City.  (*Id*. at 107).  Bardwell prepared a memorandum which Crook considered to be

privileged work product. (*Id*. at 109).  In the context of the Ali matter, therefore, Crook

believed that Bardwell's declaration was untrue when he denied having access to confidential

and privileged information when he was with the City.  (*Id*. at 110, 111-112).  On cross-

examination, Crook acknowledged that Bardwell's access to the City's Log for purposes of

researching his memo to her was not entirely confidential.  (*Id*. at 123).  A number of  fields

on the City's public records log/spreadsheet contained publicly available information  —

dates when a request was received, when a request was filled, etc.  Further, Crook conceded

that Bardwell never worked on the Sean DeCrane matter and had no access to attorney-client

communications or confidential information regarding the DeCrane public records request of

2015.  (*Id*. at 126).

     Defendants additionally offered the testimony of Kimberly Roberson, Public Records

Administrator for the City of Cleveland.  She asked Bardwell to assist her in reviewing the

public records requests in the file cabinets in her area, starting with those submitted in 2015.

(ECF DKT #125 at 11).  Bardwell would not have looked at 2012 or 2013 documents because

they were in the subbasement.  (*Id*.).  Therefore, Bardwell's declaration would be inaccurate

if he said he reviewed records from 2014 and earlier.  (*Id*. at 13).

     On cross-examination, Roberson testified that the dates when public records requests

are received and when public records requests are closed are not confidential.  (*Id*. at 36-37).

Roberson noted that the three employees who are in the City's Public Records Department are

not lawyers.  (*Id*. at 39).  Moreover, when Roberson was shown DeCrane's public records

request (#15-2220 in the City's system), she acknowledged that nothing identifies DeCrane

by name.  In fact, the requester is Attorney Craig Bashein. (*Id*. at 125).  Roberson admitted

that she had no personal knowledge that Bardwell acquired privileged information regarding

Sean DeCrane.  (*Id*. at 51-52, 71).

### Kelly Interview

In their examination of Bardwell, Defendants point out that the interview of former

Chief Patrick Kelly, a central fact witness in this litigation, was likely Bardwell's first legal

interview.  (ECF DKT #124 at 100-101).  In his testimony, Bardwell outlined the procedures

he used when he contacted witnesses for recorded interviews and discussed what instructions

he provided the witnesses prior to his questioning.

When he set up the interviews, Bardwell followed a basic script:  "Hello.  This is

Brian Bardwell calling from the Chandra Law Firm. We're representing Sean DeCrane in his

case against the City of Cleveland.  Sean mentioned that you might be willing to talk to us

about what's going on."  (*Id*. at 57).  According to Bardwell, this initial phone call was the

only time that he would have suggested that the interests of DeCrane and the interviewee may

not be aligned.  (*Id*. at 56).

At the outset of the interview with former Chief Kelly, Bardwell informed him that he

was a law clerk, a second-year law student.  Therefore, "anything here is not legal advice."

(Hearing Exhibit K at 3).  Bardwell offered the following initial instruction:

MR. BARDWELL: The other thing I want to make sure we get out of the way is like any discussions you had with, like, City attorneys that would be privileged or anything.  Like, don't tell me anything about what you guys are discussing.  If there's like, facts or stuff that you guys discussed in there, like the facts, you can still tell me about, but you shouldn't be telling me I told this to the attorneys.

CHIEF KELLY: Privileged information, right.

(*Id*. at 2).

## II. LAW AND ANALYSIS

### Standard of Review

### Appeal of Non-Dispositive Matters

Local Rule 72.3 recites:

Any party may appeal from a Magistrate Judge's order determining a motion or matter made pursuant to Fed. R. Civ. P. 72(a) within fourteen (14) days after service of the Magistrate Judge's order.  Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, a written statement of appeal which shall specifically designate the order, or part thereof, appealed from and the basis for any objection thereto.  The District Judge to whom the case was assigned shall consider the appeal and shall set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law. The District Judge may also consider *sua sponte* any matter determined by a Magistrate Judge under this Rule.

### Disqualification of counsel

The ethical standards prescribed by the Ohio Rules of Professional Conduct govern all attorneys practicing before this Court.  "Attorneys admitted to practice in this Court shall be bound by the ethical standards of the Code of Professional Responsibility adopted by the Supreme Court of the State of Ohio, so far as they are not inconsistent with federal law." Local Rule 83.7(a), U.S. District Court, Northern District of Ohio; *see also* Local Rule 83.5(b) & (f), U.S. District Court, Northern District of Ohio.

Disqualification is one remedy the Court may employ in order to ensure the ethical

-9-

practice of law.  "The Court retains inherent authority to police the ethical conduct of the lawyers who appear before it and to uphold the ethical norms embodied in the Code of Professional Conduct." *United States v. Miller*, 624 F.2d 1198, 1201 (3rd Cir.1980).  When considering whether to disqualify counsel "courts must be sensitive to the competing public interests of requiring professional conduct by an attorney and of permitting a party to retain the counsel of his choice." *Hamrick v. Union Twp., Ohio,* 81 F.Supp. 2d 876, 878 (S.D. Ohio 2000).

Because "disqualification is a drastic measure ... a violation of the Code of Professional Responsibility alone should not result in a disqualification, unless disqualification is found to be absolutely necessary." *Centimark Corp. v. Brown Sprinkler Serv., Inc.,* 85 Ohio App.3d 485, 488-489 (11th Dist.1993); accord *Cliffs Sales Co. v. Am. S.S. Co.,* No. 1:07-CV-485, 2007 WL 2907323, at *2 (N.D.Ohio Oct.4, 2007) ("a violation of the rules of professional responsibility does not automatically necessitate disqualification of an attorney").  Disqualification is appropriate, "only when there is a 'reasonable possibility that some specifically identifiable impropriety' actually occurred and, in light of the interest underlying the standards of ethics, the social need for ethical practice outweighs the party's right to counsel of his own choice." *Kitchen v. Aristech Chemical,* 769 F.Supp. 254, 257 (S.D. Ohio 1991).

"Motions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." *Valley–Vulcan Mold Co. v. Ampco–Pittsburgh Corp.*, 237 B.R. 322, 337 (6th Cir. BAP 1999), aff'd 5 F.App'x. 396 (6th Cir.2001).

**Non-attorney employees**

In situations involving non-attorney employees, the party moving for disqualification must present evidence that the former employee was exposed to confidential information in the relevant case. *Green v. Toledo Hospital*, 94 Ohio St.3d 480, 484 (2002). Then, the court must hold an evidentiary hearing in which the movant has the burden of proving that the non-attorney has been exposed to relevant confidential matters. *Id.* If that showing is made, a presumption arises that the confidential information has been disclosed to the current employer. *Id.* The presumption may be rebutted if the challenged law firm has adequate screening procedures which were implemented in this case. *Id.*

In *Green, id.*, the proper analysis is outlined for the Court as follows:

(1) Is there a substantial relationship between the matter at issue and the matter of the nonattorney employee's former firm's representation?

(2) Did the moving party present credible evidence that the nonattorney employee was exposed to confidential information in his or her former employment relating to the matter at issue?

(3) If such evidence was presented, did the challenged attorney rebut the resulting presumption of disclosure with evidence either that (a) the employee had no contact with or knowledge of the related matter or (b) the new law firm erected and followed adequate and timely screens to rebut the evidence presented in prong (2) so as to avoid disqualification?

Defendants contend that Bardwell's internship in the City's Law Department provided him with intimate knowledge of the City's handling of public records requests which precludes his involvement with this case and requires the disqualification of the Chandra Law Firm LLC.

The Court will apply the *Green* construct in order to determine whether disqualification is appropriate. Plaintiff alleged in his Complaint that Defendants retaliated

against him by failing to fully and timely respond to his public records request.  Although

Plaintiff's Third Amended Complaint  excised that particular allegation, that retaliatory

conduct was part of the instant lawsuit until April of this year.

Bardwell interned with the City in the Public Records Section of the Law Department.

He reviewed public records requests and prepared a research memorandum dealing with the

City's liability and exposure in responding to such requests.  Within a year, Bardwell became

employed with Plaintiff's counsel, the Chandra Firm; and thereafter, was put to work on the

DeCrane case.  The Court finds that there is a substantial relationship between the matter at

issue and the nature of Bardwell's prior internship with the City of Cleveland.

However, upon consideration of the testimony and evidence at the hearing and in the

post-hearing briefs, the Court must answer the *Green* court's second question in the negative.

That is, Defendants failed to present credible evidence that the nonattorney employee,

Bardwell, was exposed to confidential information in his former employment relating to the

matter at issue.  The matter at issue, in the Court's view, is more than the inner workings of

the City's public records process; rather, it is the specific request made by DeCrane and the

speed (or lack thereof) with which it was handled by the City.

The witnesses testifying under oath before the Court could not say, from personal

knowledge, that Bardwell obtained privileged or confidential information.  Roberson and

Crook admitted that much of the information contained in the Public Records Log that

Bardwell accessed was publicly available.  Moreover, Bardwell did not recall seeing anything

related to DeCrane in the files he reviewed.  The testimony revealed that DeCrane's request

was made on his behalf by his then-counsel, Craig Bashein.  So, Bardwell would not have

-12-

been made aware of DeCrane's identity at all as a public records requester.

Bardwell made a sworn declaration to the Court that he was assigned to work with public records files from 2014 and earlier.  That representation was shown to be false.  Nevertheless, his misstatements do not rise to the level justifying disqualification of Plaintiff's chosen counsel, the Chandra Law Firm LLC.

Defendants insist that Bardwell's conduct in interviewing former Chief Kelly runs afoul of the Ohio Rules of Professional Conduct.  In light of the fact that Kelly was unrepresented, Bardwell was obligated to make clear that the Chandra Firm represented Sean DeCrane and that DeCrane and Kelly's interests were adverse.  Defendants argue that Bardwell's warnings and instructions to witnesses like Kelly were bare-bones and wholly insufficient.  The Court agrees that Bardwell's notice to Kelly at the first contact and at the time of the recorded interview was sorely lacking.  That may have been due to the fact that he was only a law student and a novice at interviewing for purposes of litigation.  However, Kelly was not and is not a defendant in this case, and he volunteered to be interviewed.  Despite the subsequent "back and forth" regarding adding Kelly as a defendant in an amended pleading, the Court is not convinced that the declaration the Chandra Firm obtained from former Chief Kelly must be suppressed.  Kelly has had the opportunity and has, in fact, offered a second declaration to clarify his earlier testimony.

### III. CONCLUSION

The Court is mindful that disqualification of counsel is a drastic measure and is disfavored.  In light of the hearing testimony and the post-hearing briefs, the Court finds that disqualification of the Chandra Law Firm LLC is not warranted; the declaration of former

-13-

Chief Patrick Kelly obtained by the Chandra Firm will not be suppressed and the Magistrate

Judge's ruling (ECF DKT #85) is upheld as it is neither clearly erroneous nor contrary to law.


      **IT IS SO ORDERED.**


                                     **s/ Christopher A. Boyko**
                                     **CHRISTOPHER A. BOYKO**
                                     **United States District Judge**

**Dated:  July 17, 2019**