UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SEAN DeCRANE, | ) | CASE NO. 1:16CV2647 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| EDWARD J. ECKART, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #161) of Plaintiff Sean DeCrane for Reconsideration of May 13, 2020 Order and Opinion (ECF DKT #159). For the following reasons, the Motion is denied.

**I. BACKGROUND**

Plaintiff Sean DeCrane is a retired City of Cleveland Division of Fire Battalion Chief. Plaintiff initiated this lawsuit on October 31, 2016. The First Amended Complaint was filed on January 31, 2017. Plaintiff amended again on April 1, 2019 (ECF DKT #120). Plaintiff alleges that Defendants Edward J. Eckart, James Votypka, Christopher Chumita and others acting on behalf of the City of Cleveland repeatedly retaliated against him based on the mistaken belief that Plaintiff disclosed to a reporter that a previous fire chief, Daryl McGinnis, lacked the required continuing education hours to maintain his professional certification.

Defendants filed a Motion for Summary Judgment (ECF DKT #139) as to Plaintiff's Second Amended Complaint. On May 13, 2020, the Court issued an Opinion and Order

granting Defendants' Motion in part and denying Defendants' Motion in part. (ECF DKT #159). Defendants' Motion regarding Plaintiff's First Claim of First and Fourteenth Amendment Retaliation under 42 U.S.C. § 1983 was granted in favor of Defendants Votypka, Chumita and the City of Cleveland, and was denied as to Defendant Eckart. Defendant Eckart's Motion for Summary Judgment on Plaintiff's Second Claim for False Light Invasion of Privacy was granted. The Motion of Defendants Eckart, Votypka and Chumita on Plaintiff's Third and Fourth Claims for Intimidation under Ohio law was denied.

On May 22, 2020, Plaintiff filed the within Motion for Reconsideration of certain portions of the Court's Summary Judgment Opinion and Order. (ECF DKT #161). Plaintiff asserts that in its *Monell* analysis, the Court's Opinion and Order overlooked cited facts showing that Mayor Frank Jackson and Assistant Director of Public Safety Edward Eckart were policymakers and that they established a policy of First Amendment retaliation against the firefighter who notified the press of the fire chief's training deficiencies. In addition, Plaintiff contends that the Opinion and Order found in favor of Defendants Chumita and Votypka on retaliatory motive by improperly weighing evidence in the movants' favor and crediting self-serving declarations.

Plaintiff asks the Court to reconsider and resolve what he characterizes as clear errors.

## II. LAW AND ANALYSIS

**Motion to Reconsider**

"District courts possess the authority and discretion to reconsider and modify interlocutory judgments any time before final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F.App'x 949, 952 (6th Cir. 2004). *See also Moses H. Cone*

*Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge"). "District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez*, 89 F.App'x at 959. However, reconsideration is disfavored:

> Although motions to reconsider are not ill-founded step-children of the federal court's procedural arsenal, they are extraordinary in nature and, because they run contrary to notions of finality and repose, should be discouraged. To be sure, a court can always take a second look at a prior decision; but it need not and should not do so in the vast majority of instances, especially where such motions merely restyle or re-hash the initial issues.

*McConocha v. Blue Cross and Blue Shield Mutual of Ohio*, 930 F.Supp. 1182, 1184 (N.D.Ohio 1996) (internal citations and quotations omitted).

Motions for reconsideration "serve a limited purpose and should be granted for one of three reasons: (1) because of an intervening change in controlling law; (2) because evidence not previously available has become available; or (3) because it is necessary to correct a clear error of law or prevent manifest injustice." *Boler Co. v. Watson & Chalin Mfg. Inc.*, 372 F.Supp.2d 1013, 1024-25 (N.D.Ohio 2004), quoting *General Truck Drivers, Local No. 957 v. Dayton Newspapers, Inc.*, 190 F.3d 434, 445 (6th Cir. 1999) (Clay, J. dissenting), *cert. denied*, 528 U.S. 1137 (2000).

**Municipal liability**

A city or municipality may only be held liable for the constitutional violations of its employees under 42 U.S.C. § 1983 if those actions are the result of a practice, policy, or custom of the municipality itself. *Monell v. Department of Social Services*, 436 U.S. 658

(1978). There are four types of municipal action that, if they cause the underlying constitutional violation, can establish liability under a *Monell* claim: 1) legislative enactments or official policy; 2) actions by officials with final decision-making authority; 3) a policy of inadequate training or supervision; or 4) a custom of tolerance of rights violations. *France v. Lucas*, No. 1:07CV3519, 2012 WL 5207555, at *12 (N.D. Ohio Oct. 22, 2012), aff'd, 836 F.3d 612 (6th Cir. 2016).

"Just as the existence of a constitutional right must be the threshold determination in any section 1983 claim, the finding of a custom or policy is the initial determination to be made in any municipal liability claim." *Doe v Claiborne County, Tenn.*, 103 F.3d 495, 509 (6th Cir. 1996).

A plaintiff need not establish a pattern of past misconduct where the defendant actor was a policymaker with final policymaking authority. *See Burgess v Fischer* 735 F.3d 462, 479 (6th Cir. 2013), citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–84 (1986); *Miller v. Calhoun County*, 408 F.3d 803, 816 (6th Cir.2005). Nonetheless, a plaintiff must demonstrate that a "deliberate choice to follow a course of action is made from among various alternatives by the official ... responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483. Final policy-making authority may be delegated, but "it is equally true that 'mere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials.'" *Miller v. Calhoun County*, 408 F.3d 803, 814 (6th Cir. 2005), quoting *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir.1993).

In any event, to recover from a municipality under 42 U.S.C. § 1983, a plaintiff must satisfy a "rigorous" standard of causation, *Board of Comm'rs of Bryan County. v. Brown*, 520 U.S. 397, 405 (1997); he must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." (*Id.* at 404).

Once Defendants pointed out in their Second Motion for Summary Judgment that Plaintiff lacked evidence of any municipal policy or custom and lacked evidence of any one of the four scenarios establishing *Monell* liability, Plaintiff had the burden of demonstrating that a genuine issue of disputed fact exists.

In its Opinion and Order, the Court quoted the entirety of Plaintiff's argument, which Plaintiff now contends reflected his effort "to comply with the Court's strict space [page] limitations." (ECF DKT #161 at 4). Plaintiff argued as follows:

> The City engaged in a years-long pattern of retaliation against DeCrane, fueled by Eckart's and Mayor Jackson's irritation with DeCrane's protected activity, both real and suspected. Jackson made clear his feelings about the McGinnis leak, leading Defendants to then act against DeCrane with impunity. The City's failure to train most officials on employees' First Amendment rights contributed to the retaliatory activity as well. And the retaliation's length – in terms of time and the measures taken – demonstrates the City's deliberate indifference to DeCrane's rights. (ECF DKT #151, p.27).

Aside from these declarations, Plaintiff offered no citations (not even in a footnote) to any previously-detailed facts to illustrate a policy, a final policy-maker (particularly as relates to Defendant Eckart), deficient training, nor tolerance of, or indifference to, constitutional violations.

The Court conducted a thorough review of all the evidence presented, including myriad depositions and documents, prior to issuing its lengthy comprehensive opinion; and the Court maintains that its role is not to "wade through" the record to find specific facts

which may support the nonmoving party's claims. *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993).

Upon reconsideration, the Court finds that Plaintiff failed to make the necessary showing in opposition to summary judgment on the elements of his *Monell* claim upon which he had the burden of proof. There is no reason for the Court to alter or amend its ruling.

**First Amendment Retaliation**

Plaintiff urges that the Court's ruling in favor of Defendants Chumita and Votypka on Plaintiff's prima facie case of First Amendment Retaliation impermissibly disregarded evidence and erroneously credited other evidence.

"To establish a prima facie case, the employee must demonstrate that: (1) he was engaged in constitutionally protected speech or conduct; (2) he was subjected to an adverse employment action that would deter a person of ordinary firmness from continuing to engage in that speech or conduct; and (3) the protected speech was a substantial or motivating factor for the adverse employment action." *Stinebaugh v. City of Wapakoneta*, 630 F.App'x 522, 525 (6th Cir. 2015).

In this instance, the Court determined that Plaintiff failed to satisfy the second and third prongs of his prima facie burden against Chumita and Votypka. The Court found:

> They conducted OIC investigations at Eckart's direction. As Manager of the OIC and investigator for the OIC respectively, Votypka and Chumita were not authorized to issue charges, only recommendations. Moreover, the evidence demonstrates that Votypka, specifically, acted in a non-retaliatory manner toward Plaintiff. He reminded Eckart that administrative charges were pending against Plaintiff well after the time they should have been dismissed as being unsubstantiated. In their sworn Declarations, moreover, both Chumita (ECF DKT #139-22) and Votypka (ECF DKT #139-3) deny any intent to force Plaintiff out of the Division of Fire. (ECF DKT #159 at 16).

The Court also noted that Chumita and Votypka did not know that DeCrane was the "tipster;" so, they could not have been motivated by his exercise of protected speech.

> Votypka understood that Plaintiff was one of many with access but did not think Plaintiff was the source. (ECF DKT #142, p. 70). Chumita could speculate but he had no proof of the tipster's identity. (ECF DKT #147, p. 67).

(ECF DKT #159 at 17).

Plaintiff is critical of the Court for saying that Chumita and Votypka acted at Eckart's direction and for placing unjustified weight upon these Defendants' self-serving declarations. The Court disagrees with Plaintiff's characterization.

The Court did not rule against Plaintiff solely because Defendants Chumita and Votypka were "only following orders." The evidence shows that they were instructed by Eckart to conduct an investigation into possible falsification of records and improper logging of data regarding Academy training classes during the time that Plaintiff was the Director. It is undisputed, however, that Chumita and Votypka could not issue charges but could only make recommendations.

Chumita and Votypka testified under oath that they did not know who went to the media with Fire Chief McGinnis's training deficiencies. They denied having any intent to force Plaintiff out of the Division of Fire by conducting their investigation. Plaintiff failed to present countervailing evidence to satisfy his burden of showing these Defendants' actions were motivated to any degree by Plaintiff's protected speech.

In his reconsideration Motion, Plaintiff also complains that the Court unfairly credited the self-serving Declarations of Chumita and Votypka. In reality, the Court considered the Declarations as simply additional evidence bearing on the third element of Plaintiff's prima

facie case.  The Court was not required to automatically disregard the Declarations.  "A court may not disregard evidence merely because it serves the interests of the party introducing it."  *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010) (citing *Niemi v. NHK Spring Co.*, 543 F.3d 294, 300 (6th Cir.2008)).

In *Sherrod v. Enigma Software Group USA*, No. 2:13–cv–36, 2014 WL 4829648 (S.D.Ohio Sept. 29, 2014), the District Court for the Southern District of Ohio was persuaded by the First Circuit Court of Appeals' view:  "A party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment."  (*See Cadle Co. v. Hayes*, 116 F.3d 957, 961 n. 5 (1st Cir.1997)).

Therefore, the Court finds no basis for altering or amending its ruling in favor of Defendants Chumita and Votypka on Plaintiff's First Amendment Retaliation Claim.

### III. CONCLUSION

The Court finds no clear error and upon reconsideration, the Court adheres to its prior ruling.  For the foregoing reasons, the Motion (ECF DKT #161) of Plaintiff Sean DeCrane for Reconsideration of May 13, 2020 Order and Opinion is denied.

**IT IS SO ORDERED.**

**DATE: December 23, 2020**

 s/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**