UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SEAN DeCRANE, ) | CASE NO. 1:16CV2647 |
| ) | |
| Plaintiff, ) | SENIOR JUDGE |
| ) | CHRISTOPHER A. BOYKO |
| vs. ) | |
| ) | OPINION AND ORDER |
| EDWARD ECKART, et al., ) | |
| ) | |
| Defendants. ) | |

**CHRISTOPHER A. BOYKO, SR. J.**:

This matter comes before the Court upon the Motion (ECF DKT #177) of Defendants for Summary Judgment as to Plaintiff's Intimidation Claim and Ohio Rev. Code § 2307.60 Claim. For the following reasons, the Motion is granted.

**I. FACTUAL BACKGROUND**

Plaintiff Sean DeCrane is a retired City of Cleveland Division of Fire Battalion Chief. Plaintiff initiated this lawsuit on October 31, 2016. The First Amended Complaint was filed on January 31, 2017. Plaintiff amended again on February 16, 2018 (ECF DKT #46) and April 1, 2019 (ECF DKT #120). Plaintiff alleges that Defendants Edward J. Eckart, James Votypka, Christopher Chumita and others acting on behalf of the City of Cleveland

repeatedly retaliated against him based on the mistaken belief that Plaintiff disclosed to a reporter that a previous fire chief, Daryl McGinnis, lacked the required continuing education hours to maintain his professional certification. Eckart is the Assistant Safety Director for the City of Cleveland. Votypka is the former Manager of the City's Office of Integrity Control, Compliance and Employee Accountability ("OIC"). Chumita works as an investigator in the OIC.

The claimed instances of retaliation include: repeated denials of promotions; wrongful seizure of Fire Training Academy ("FTA") records while Plaintiff served as Director of Training; false allegations against Plaintiff about deficient record-keeping; concocting false administrative charges against Plaintiff and delaying a state audit that would have cleared him; relaying false information to the media in a press release; trying to outsource training activities from FTA to Cuyahoga Community College and to oust Plaintiff from his role at FTA; unjustifiably neglecting to dismiss unsubstantiated administrative charges; shutting down Plaintiff's "last-day" event and damaging his reputation in the international firefighting community and his career in the private sector.

Plaintiff also brought a claim for Intimidation pursuant to Ohio Revised Code ("R.C.") §2921.03(A) and (C). He alleges that Eckart, Votypka and Chumita created and/or used one or more materially false or fraudulent writings with malicious purpose and in bad faith to attempt to hinder a public servant in the discharge of his duty. In his Second Amended Complaint (ECF DKT #46 ), Plaintiff adds a related claim under R.C. § 2307.60 which creates a civil action for those damaged by a criminal act.

In early 2013, the Division of Fire conducted interviews for the position of Fire Chief.

Plaintiff, Daryl McGinnis and Patrick Kelly were interviewed for the promotion. On January 11, 2013, Eckart called and informed Plaintiff that McGinnis was selected. Plaintiff responded that he respected the decision, but added that he was concerned because McGinnis was deficient in the necessary training hours. Eckart and Mayor Frank Jackson followed up with McGinnis, who assured them both that he had the required continuing education training. McGinnis was sworn in as Fire Chief on January 18, 2013.

On July 16, 2013, a *cleveland.com* reporter made a public records request for "all of Fire Chief Daryl McGinnis' fire and EMT training records since 2000." When Eckart questioned McGinnis this time, McGinnis admitted the deficiency. McGinnis was removed as Chief and he retired shortly thereafter.

Following the McGinnis disclosure, Plaintiff alleges that the adverse treatment at the hands of the City, Eckart and others began.

In January of 2015, Lawrence Moore, a firefighter stationed at the FTA, filed a formal complaint. Moore complained about instances of race discrimination and additionally charged that Plaintiff, through Captain Patrick Corrigan, ordered Moore to record inaccurate training information into an FTA database. In response to Moore's complaint, Safety Director McGrath directed Eckart to institute an OIC investigation.

The OIC investigation did not corroborate Moore's discrimination charges but did reveal missing and incomplete training records at the FTA. On April 30, 2015, the OIC recommended administrative charges against Chief Kelly, Assistant Chief Frank Chontos, Captain Corrigan, Captain Charles Kelley and Plaintiff.

Chief Kelly reviewed the recommendation, interviewed Plaintiff and Corrigan, and

considered written materials submitted by Plaintiff. On July 16, 2015, Chief Kelly issued administrative charges against Plaintiff, Corrigan and himself. Chief Kelly also announced that he would be retiring to take a job in a suburban fire department.

The City of Cleveland issued a press release on September 15, 2015, which read as follows:

> The City of Cleveland Department of Public Safety Office of Integrity Control announced that an investigation into continuing education within the Division of Fire Training Academy has concluded. The investigation was initiated after the Integrity Control Office received a complaint from a firefighter assigned to the Fire Training Academy alleging possible falsification of official records.
>
> The investigation focused on the validation of training records and compliance to Ohio Revised Code 4765-7-09. Upon completion of the investigation, the matter was reviewed by the Department of Law and no criminal conduct was identified. The Department of Public Safety forwarded the investigative findings and recommendations of administrative charges to Chief Patrick Kelly for review and recommendation.
>
> On June 25, 2015, Chief Patrick Kelly recommended administrative charges for Battalion Chief Sean DeCrane, Captain Patrick Corrigan and himself. That recommendation was accepted by Director of Public Safety Michael McGrath and administrative charges were served.

Ultimately, Chief Kelly received a written reprimand based upon his oversight responsibilities at the FTA. The City scheduled a joint pre-disciplinary hearing to be held on September 23, 2015, for Plaintiff and Captain Corrigan. When the City, Plaintiff, Corrigan and union representatives met, they agreed to postpone the hearing and to allow time for FTA records to be brought into compliance ahead of Ohio's upcoming audit. The City also agreed to the union's request to interview Plaintiff and Corrigan. Votypka and Eckart conducted the interviews.

Votypka turned the OIC investigative matter over to Eckart for final determination.

Eckart recommended to Safety Director McGrath that the City dismiss the administrative charges against Plaintiff and Corrigan.  McGrath agreed.  However, Eckart neglected to draft the letter for McGrath's signature formally dismissing the charges.

On January 15, 2016, Votypka sent Eckart an email with a spreadsheet highlighting that the administrative charges against Plaintiff were still pending.  (ECF DKT #142-33).

On December 7, 2016, Eckart withdrew the administrative charges against Plaintiff and notified Local 93, attaching a letter dated October 18, 2016.  Eckart attributed the delay to the threat and ultimate filing of Plaintiff's lawsuit.  Plaintiff's Complaint was filed on October 31, 2016.

In August 2016, Plaintiff received and accepted a $100,000 a year job with Underwriters Laboratories.  Plaintiff could no longer tolerate his treatment at the City Division of Fire; so, he notified the City that his last day would be September 11, 2016.  Plaintiff offered to return and teach courses at the Academy but his offer was turned down.

## II. LAW AND ANALYSIS

**Standard of Review**

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed.R.Civ.P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).  The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions,

interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." See Fed.R.Civ.P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record sua sponte for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n. v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### **R.C. § 2921.03 Intimidation**

(A) No person, knowingly and by force, by unlawful threat of harm to any person or property, or by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, shall attempt to influence, intimidate, or hinder a public servant, a party official, or an attorney or witness involved in a civil action or proceeding in the discharge of the duties of the public servant, party official, attorney, or witness.
(B) Whoever violates this section is guilty of intimidation, a felony of the third degree.
(C) A person who violates this section is liable in a civil action to any person harmed by the violation for injury, death, or loss to person or property incurred as a result of the commission of the offense and for reasonable attorney's fees, court costs, and other expenses incurred as a result of prosecuting the civil action commenced under this division. A civil action under this division is not the exclusive remedy of a person who incurs injury, death, or loss to person or property as a result of a violation of this section.

### **R.C. § 2307.60(A)(1) Person injured by criminal act has civil remedy**

(A)(1) Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code.

### **Statutory interpretation**

In *Buddenberg v. Weisdack*, 161 Ohio St.3d 160, 162 (2020), the Ohio Supreme Court recently provided guidance on the construction of statutory provisions:

{¶ 10} When a court interprets the meaning of a statute, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage," R.C. 1.42, and the court must give effect to all of the statute's words, *Bryan v. Hudson*, 77 Ohio St.3d 376, 380, 674 N.E.2d 678 (1997). "If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996). Additionally, a court must give effect " ' "to the natural and most obvious import of [a statute's] language, without resorting to subtle and forced

constructions." ' " *Lancaster v. Fairfield Cty. Budget Comm.*, 83 Ohio St.3d 242, 244, 699 N.E.2d 473 (1998), quoting *Slingluff v. Weaver*, 66 Ohio St. 621, 627, 64 N.E. 574 (1902), quoting *McCluskey v. Cromwell*, 11 N.Y. 593, 601 (1854); *see also Ohio Neighborhood Fin., Inc. v. Scott*, 139 Ohio St.3d 536, 2014-Ohio-2440, 13 N.E.3d 1115, ¶ 22.

In their Motion for Summary Judgment, Defendants argue that Plaintiff cannot establish liability for a criminal act under R.C. § 2921.01; and thus, cannot recover in this civil action pursuant to R.C. § 2307.60. Plaintiff counters that evidence and reasonable inferences drawn from that evidence demonstrate Defendants' liability under the Intimidation statute for hindering his work as Battalion Chief and forcing his premature retirement.

**<u>Materially false or fraudulent writing</u>**

Plaintiff relies upon three writings, which he claims are materially false or fraudulent and which he claims Defendants used to hinder DeCrane and influence other public servants.

First, Plaintiff points to Defendant Votypka's April 30, 2015 investigative memo (ECF DKT #179-1) requesting administrative charges against Plaintiff and other supervisory personnel in the Division of Fire following a review of the FTA training records. According to Votypka, the OIC review was conducted in response to firefighter Moore's complaint that he was illegally ordered by Captain Corrigan and Battalion Chief DeCrane to input inaccurate data into the FTA Master Class File. The OIC found that the information Moore was told to input regarding two training classes was indeed improper and inaccurate. The review also found that other records were inaccurately recorded and that there were many missing and incomplete records.

Plaintiff asserts that the memo falsely represented that the OIC made investigative findings. Rather, Plaintiff insists that no one investigated until October of 2015, when

Plaintiff was finally interviewed.

Defendant Chumita described the scope and the process of the OIC review at his deposition (ECF DKT #147 at 132):

> [Eckart] wanted us just to do a spot-checked audit, based upon the documentation the FTA gave us, not the master file by Larry Moore, and request sign-in sheets to see, what they provided on that day, it was accurately matched to the documents they provided.

Further, at pp.161-162 of the deposition, Chumita discusses interviewing Plaintiff:

**Q**. Do you think it was unfair that Mr. DeCrane was not provided that opportunity here?

**A**. I think, in this case, we were only investigating could records be produced upon that time period. So based upon the scope of the investigation, it was okay. If we were going to expand the scope, then interviews would have been needed.

**Q**. So based on how the investigation was defined, you did not need to -- you felt like you did not need to do an interview, correct?

**A**. Correct.

Defendants Votypka and Chumita questioned firefighter Moore and reviewed the FTA records for the relevant time period. The fact that they did not interview Plaintiff or Corrigan prior to requesting administrative charges does not mean that there was no investigation; and does not render the memo false or fraudulent within the meaning of R.C. § 2921.03. Plaintiff's argument is just that sort of "subtle" and "forced" construction that the *Buddenberg* court cautioned against.

Plaintiff further contends that the memo falsely asserted that the FTA Master Class

-9-

File was an official record. Plaintiff is in error. The plain wording of the Votypka memo (ECF DKT #179-1) never refers to the FTA Master Class File as an official record.

Plaintiff directs the Court's attention to a second writing – the July 14, 2015 administrative charges issued against him by Chief Patrick J. Kelly. (ECF DKT #179-3). Plaintiff contends that, by incorporating the OIC's findings on Moore's complaint, the administrative charges again falsely or fraudulently treated the FTA Master Class File as an official record.

Upon review of the charging document (ECF DKT #179-3), the Court ascertains that Plaintiff was charged with violations of the Ohio Administrative Code and Division of Fire Policy for improperly and inaccurately recording firefighter training records and for maintaining records with missing and incomplete documentation. The FTA Master Class File is never referenced as an official record within the meaning of the Code or Division Policy. Plaintiff's argument about the false or deceptive nature of the administrative charges is without merit.

The third writing relied upon by Plaintiff is the City of Cleveland's September 15, 2015 press release. (ECF DKT #179-4). Plaintiff contends that the press release was materially false in announcing that "an investigation into continuing education within the Division of Fire Training Academy has concluded." However, in its prior Opinion and Order (ECF DKT #159 at 26), the Court concluded:

> There was an investigation by the OIC and Plaintiff did face administrative charges as a result. At best, the statement that the OIC investigation concluded was misleading. That does not make it a false statement. *Serv. Emp. Int'l Union Dist. 1199 v. Ohio Elections Comm'n*, 158 Ohio App.3d 769, 822 N.E.2d 424, 430.

The Court sees no reason to depart from that determination.

In addition, Plaintiff objects to the reference in the press release to "falsification of official records." The Court finds that the use of the term "official" in the press release describes the allegations in Moore's complaint. It does not describe the FTA Master Class file as an official record. The Court concludes that the press release is not a materially false or fraudulent writing within the meaning of the relevant statute.

### **Hindered in the discharge of duties**

Plaintiff has not identified, with any specificity, what job duties were hindered by Defendants' alleged intimidation. Plaintiff indisputably was investigated and faced administrative charges. He never received any discipline. He continued his work with the Cleveland Division of Fire until September of 2016.

Plaintiff argues that his promotion chances were prejudiced and that he was forced to prematurely retire. Promotions are not job responsibilities nor benefits guaranteed to any employee. Moreover, there is no evidence that his acceptance of a position in the private sector was anything but voluntary.

### **Knowingly**

R.C. § 2901.22(B) defines "knowingly": "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

Even if the Court were to assume the three writings Plaintiff relies upon were false or fraudulent, Plaintiff points to no record evidence that Defendants Eckart, Chumita and

-11-

Votypka acted with the knowledge that their actions would hinder the discharge of Plaintiff's duties, so much as to force his early retirement. To the contrary, as the Court noted in an earlier opinion: Chumita's and Votypka's depositions are in the record. They testified under oath that they did not know who went to the media with Fire Chief McGinnis' training deficiencies. They denied having any intent to force Plaintiff out of the Division of Fire by conducting their investigation. (ECF DKT #175). Furthermore, all three Defendants submit declarations that they did not intend to compel Plaintiff to quit working for the City. (ECF DKT #117-11; ECF DKT #117-13; ECF DKT #117-15). And moreover, the facts show that Plaintiff voluntarily retired and accepted a higher paying position almost a year after the incidents of which he complains.

Genuine issues of fact as to knowledge and intent are absent; thus, Plaintiff cannot prevail on the elements of his Intimidation claim.

**With malicious purpose, in bad faith, or in a wanton or reckless manner**

Plaintiff contends that Defendants acted in bad faith by focusing their investigation on FTA record-keeping when that issue went beyond the scope of Moore's internal complaint. Yet, Plaintiff himself admits that the record-keeping needed improvement, as was established over multiple state audits. (DeCrane's Deposition, ECF DKT #149 at 99).

Plaintiff also asserts that it was malicious, in bad faith and reckless to issue the press release at a point in time that exacerbated its negative effects — that is, a day after Plaintiff interviewed for a job promotion. The Court finds that the Intimidation statute is very specific in highlighting an "attempt to influence, intimidate, or hinder a public servant . . .in the discharge of the person's the duties." Therefore, though the timing of Defendants' press

release may have had a deleterious impact on Plaintiff's promotion chances, the Court finds that fact is most relevant to Plaintiff's First Amendment Retaliation Claim and not to the application of R.C. § 2921.03 and R.C. § 2307.60.

Plaintiff insists that Defendants utilized the April 30, 2015 memo in bad fath, maliciously and recklessly because their investigation influenced Chief Kelly to initiate administrative charges against him and hindered Plaintiff in the exercise of his duties as battalion chief. The evidence does not bear that out.

Chief Kelly states in his Declaration (ECF DKT #177-4):

¶ 18. The decision as to whether or not to bring charges against Sean DeCrane and Pat Corrigan resided solely with me. It was solely my decision to charge Sean DeCrane and Pat Corrigan. No one influenced my decision to charge Sean DeCrane and Pat Corrigan or demanded that I do so. I also recommended charges against myself.

¶ 21. The charges against Sean DeCrane and Pat Corrigan were legitimate, and I am unaware of any scheme to bring false criminal or administrative charges against Sean DeCrane or Pat Corrigan related to the FTA's record keeping or the conduct that resulted in the charges.

¶23. If I did not put Sean DeCrane and Pat Corrigan up on charges I would not have been doing my job.

Plaintiff consistently expresses disagreement with the OIC's findings and with the manner in which the investigation was conducted. However, in the Court's view, this challenged conduct does not equate to a demonstration of malice, bad faith or wanton/reckless conduct on the part of Defendants.

Considering all the elements of a claim for Intimidation under R.C. § 2921.03, and viewing the facts and all inferences in the light most favorable to Plaintiff, the Court holds that there is no genuine dispute of material fact and Defendants are entitled to prevail as a

matter of law.

### III. CONCLUSION

For all these reasons, the Motion (ECF DKT #177) of Defendants Edward Eckart, James Votypka and Christopher Chumita for Summary Judgment as to Plaintiff's Intimidation Claim R.C. § 2921.03 and Plaintiff's corresponding R.C. § 2307.60(A)(1) Claim for Civil Remedy for Injury from Criminal Act is granted.

**IT IS SO ORDERED.**

**DATE: September 29, 2021**

                                                s/Christopher A. Boyko
                                               **CHRISTOPHER A. BOYKO**
                                               **Senior United States District Judge**